Doc. 64
Document Number Case Number
06-C-0199-S
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
12/20/2006 04:11:57 PM CST

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

HYPERPHRASE TECHNOLOGIES,
LLC and HYPERPHRASE, INC.

        Plaintiffs,

    v.

GOOGLE INC.,

        Defendant.

MEMORANDUM AND ORDER
06-C-199-S

---

Plaintiffs Hyperphrase Technologies, LLC and Hyperphrase, Inc. commenced this patent infringement action alleging that Defendant Google Inc.'s AutoLink and AdSense products infringe plaintiffs' United States Patents Nos. 5,903,889, ('889 patent) 6,434,567 ('567 patent), 6,526,321 ('321 patent) and 7,013,298 ('298 patent). The matter is presently before the Court on defendant's motions for summary judgment of non-infringement and invalidity and on plaintiffs' motion for summary judgment on defendant's inequitable conduct defense. Jurisdiction is based on 28 U.S.C. § 1338. The following facts are not disputed for purposes of the pending motions.

## FACTS

The patents in suit are related to one another as continuations in part of prior applications and all share inventor Carlos de la Huerga. The preferred embodiments of the patented inventions involve storage and retrieval of electronic medical

records.  The following is a summary of the patent abstracts, and the text of the claims for which plaintiffs assert infringement:

## The '889 patent

The '889 patent claims a system for retrieving, modifying and collecting data records on a computer network.  The invention detects types, relationships and classification of data records and modifies them to support interactive hypertext-linked display and organized access to the records.

Claim 1:

> A computer system with a plurality of data records on a plurality of databases, and a standardized format for addressing said data records, said computer system comprising:
> (a) a user interface having an interactive display program for requesting one of said data records and displaying a plurality of interface supported data formats;
> (b) means for receiving a reference to a first data record from said interactive display program;
> (c) means for retrieving said first data record;
> (d) means for parsing said first data record to identify a reference to a second data record;
> (e) means for modifying said reference to said second data record to create an address, said address being operable to retrieve said second data record; and
> (f) means for sending said modified first data record to said interactive display program.

<p style="text-align:center">*   *   *</p>

Claim 7:

> The computer system of claim 1, wherein said reference to said second data record comprises a keyword phrase.

The '567 Patent

The '567 patent claims a system for specifying and modifying database definitions and rules for formatting records and record addresses to insure system wide information compatibility.

Claim 35:

A method for use with at least one processing device (PD) and a database (DB), the DB for storing information records at DB addresses, each address characterized by an address format including at least one fixed field and at least one variable field, fixed fields requiring information which is common among all addresses having the address format and variable fields requiring information which may vary from record to record, the DB also storing a list of possible field types (FTs), the PD for receiving at least one initial record, identifying information required to form an address according to the address format, searching the segment to locate the required information, when the required information is located, using the required information to form a DB address having the address format and using the address to perform a DB function, the method for defining at least one address format for use by both the PD and the DB and comprising the steps of:
> specifying required address format fields;
> for each field, selecting a FT from the FT list; and
> providing the address format to the PD.

\*    \*    \*

Claim 46:

The method of claim 35 wherein the initial record is a second record, the PD is a DB literate processor and the DB function is to create a link between a first record and the second record wherein the first record is referenced in the second record by a data reference (DR), the DR corresponding to a specific address format, wherein the processor identifies a suitable address format by searching the second record for the DR and when the DR is identified, selecting the corresponding address format, the method further including the steps of:

3

for each address format defined, specifying a DR; and
providing the DR to the PD along with the address format.

\*   \*   \*

Claim 48

A method for use with at least one processing device (PD) and a database (DB), the DB for storing information records at DB addresses, each address characterized by an address format, the PD for receiving at least one initial record, identifying information required to form an address according to the address format, searching the initial record to locate the required information, when the required information is located, using the located information to form a DB address having the address format and using the address to perform a DB function, the method for defining at least one address format for use by both the PD and the DB and comprising the steps of:
    specifying required address format fields;
    for each field, defining information type as being either fixed or variable, fixed information being text which is common among all addresses having the address format and variable being information which may vary from segment to segment;
    for each field, defining an instantiation rule set (IRS) including a field format which comprises a character string used to instantiate each address field of the corresponding field type; and
    providing the address format and corresponding IRSs to the PD.

\*   \*   \*

Claim 53:

The method of claim 48 wherein the initial record is a second record, the PD is a DB literate processor and the DB function is to create a link between a first record and the second record wherein the first record is referenced in the second record by a data reference (DR), the DR corresponding to a specific address format, wherein the processor identifies a suitable address

4

format by searching the second record for the DR and when the DR is identified, selecting the corresponding address format, the method further including the steps of:

for each address format defined, specifying a DR; and
providing the DR to the PD along with the address format.

\*    \*    \*

Claim 56:

A method for use with at least one processing device (PD) and a database (DB), the DB for storing information records at DB addresses, each address characterized by an address format, the method for defining at least one address format for use by both the PD and the DB and for forming an address for a record wherein the formed address has the address format, the method comprising the steps of:
specifying address information required to form a database address according to an address format and the order of the address information in the address format;
providing the address format to the PD and the DB, thereafter, the PD:
receiving at least an initial record;
searching the initial record to determine if the initial record includes the required information;
if the initial record includes the required information, arranging the required information into a DB address having the address format; and
using the address to perform a DB function.

\*    \*    \*

Claim 63:

The method of claim 56 wherein the initial record is a second record, the PD is a DB literate processor and the DB function is to create a link between a first record and the second record wherein the first record is referenced in the second 'record by a data reference (DR), the DR corresponding to a specific address format, wherein the processor identifies a suitable address format by searching the second record for the DR and when

the DR is identified,, selecting the corresponding
address format, the method further including the steps
of:
> for each address format defined, specifying a DR;
> and
> providing the DR to the PD along with the address
> format.

The '321 Patent

⎯⎯⎯The '321 patent claims a method for automatically creating
hyperlinks between records in a record set which eliminates
ambiguity when record references overlap and inserts tags to
identify specific information within the records.

Claim 1:

> A method for identifying a referenced record referenced
> in a referencing record wherein the referenced record is
> referenced in the referencing record by at least a
> combination including a data reference (DR) and a
> modifier reference (MR), the method comprising the steps
> of:
>> (i) receiving the referencing record;
>> (ii) analyzing the referencing record to identify a
>> DR, when a DR is identified:
>>> (a) identifying an MR rule set (MRRS)
>>> specifying the relationship between an MR and
>>> the DR;
>>> (b) analyzing the referencing record in
>>> accordance with the MRRS to identify the
>>> existence of the MR and, when the MR is
>>> identified;
>>> (c) identifying the referenced record
>>> associated with the DR/MR combination.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯    *   *   *

Claim 24:

> The method of claim 1 further including the step of linking
> the record reference to the referenced record.

*   *   *

6

Claim 27:

    A method to be used with a rule set including subject matter specific tag pairs and corresponding search rules, a separate tag pair for each of a plurality of different information types and a separate search rule for each pair, each pair including a begin tag and an end tag, the method comprising the steps of:
        (a) receiving a record;
        (b) examining the record according to the search rules to identify record segments including information of each of the information types;
        (c) when a record segment is identified which is of a particular information type:
        accessing the tag pair associated with the information type; inserting the begin tag before the identified segment and inserting the end tag after the identified segment.

*   *   *

Claim 86:

    A method for use with an application wherein specifying references (SRs) in one record to other records which are selectable to access the other records are visually distinguished from other record information so as to indicate selectability, the method also for use with a system which enables a user to designate and also select SRs where designation comprises pointing to an SR without selection and, wherein a seemingly general SR is modified by other record information which renders the SR relatively specific, the method for indicating the specific nature of an SR prior to selection and comprising the steps of:
        when an SR is designated, indicating the specific nature of the SR.

*   *   *

Claim 91:

    An apparatus for identifying a referenced record referenced in a referencing record wherein the referenced record is referenced in the referencing record by at least a combination including a data reference (DR) and a modifier reference (MR), the apparatus comprising:

7

a processor running a pulse sequencing program to
perform the steps of:
(i) receiving the referencing record;
(ii) analyzing the referencing record to identify a
DR, when a DR is identified:
    (a) identifying an MR rule set (MRRS)
    specifying the relationship between an MR and
    the DR;
    (b) analyzing the referencing record in
    accordance with the MRRS to identify the
    existence of the MR and, when the MR is
    identified;
    (c) identifying the referenced record
    associated with the DRIMR combination.

*   *   *

Claim 182:

An apparatus for identifying a referenced record
referenced in a referencing record wherein the referenced
record is referenced in the referencing record by at
least a data reference (DR), the apparatus comprising:
    a processor running a pulse sequencing program to
    perform the steps of:
        (i) receiving the referencing record;
        (ii) analyzing the referencing record to
        identify a DR;
        (iii) when a DR is identified, associating the
        DR and the referenced record;
    wherein a modifier reference (MR) can be used in
    conjunction with a DR to reference a record and at
    least one record is referenced by a DWMR
    combination and the processor further performs the
    steps of:
    after identifying the DR and prior to associating
    the DR, examining the record for an MR and, when an
    MR is identified, associating the DWMR combination
    with the referenced record.

*   *   *

Claim 190:

A method for identifying a referenced record referenced
in a referencing record wherein the referenced record is
referenced in the referencing record by at least a data
reference (DR), the method comprising the steps of:

8

(i) receiving the referencing record;
(ii) analyzing the referencing record to identify a DR;
(iii) when a DR is identified, associating the DR and the referenced record; and
(iv) wherein a modifier reference (MR) can be used in conjunction with a DR to reference a record and at least one record is referenced by a DR/MR combination and the method further includes the steps of:
after identifying the DR and prior to associating the DR, examining the record for an MR and, when an MR is identified, associating the DR/MR combination with the referenced record.


The '298 Patent

The '298 patent claims a system for creating links between records on a database based on references within the records, by use of keywords and phrases and the creation of corresponding address formats.

Claim 1:
A system for linking first record references to a first record wherein the references are in a second record, the system comprising:
(a) a database (DB) including: at least one address format specifying an address format of the first record address; and
(b) a processor linked to the DB and running a pulse sequencing program to perform the steps of:
(i) receiving the second record;
(ii) analyzing the second record to identify references to the first record; and
(iii) when a first record reference is identified, using information from the second record to form the address of the first record as specified by the address format.


*   *   *

9

Claim 26:

> A method for linking first record references to a first
> record wherein the references are in a second record, the
> method used with a database (DB) including at least one
> address format specifying an address format of the first
> record address, the method comprising the steps of:
>> (i) receiving the second record;
>> (ii) analyzing the second record to identify
>> references to the first record; and
>> (iii) when a first record reference is identified,
>> using information from the second record to form
>> the address of the first record as specified by the
>> address format.

## AutoLink

Defendant sells a toolbar program which can be added to an
internet browser. AutoLink is a toolbar feature that is used to
identify additional sources of information for certain types of
information in a pre-existing Web page. Among the various types of
information that the AutoLink feature tries to recognize are
International Standard Book Numbers ("ISBNs"), vehicle
identification numbers ("VINs"), package tracking numbers (e.g.,
FedEx, UPS, USPS, etc.), and postal addresses. If one of the
information types is found in the document AutoLink creates an
anchor tag containing a computer generated Uniform Resource Locator
("URL") that points to the path of a Google server. When the
anchor tag (which appears in blue and underlined on the web page)
is selected by the browser user the Google server generates a
second URL which points to second server and retrieves information
which is presented to the user.

More specifically, AutoLink software scans the web page for patterns of consecutive strings of characters (for example, a 10 digit string, a 19 digit string, etc.) referred to as tokens. AutoLink also scans the page for key words known as triggers. If a token is found, the token is assumed to be of the type of information associated with its format. For example, a 10 digit number is assumed to be an ISBN, and a 19 digit string is assumed to be a UPS tracking number. A heuristic is applied on the token to verify that the token conforms with the known format (e.g., the last digit in an ISBN number is called a "check digit," which is used to mathematically compute whether the ISBN number itself is properly formatted). The token is not tested to confirm whether it does in fact correspond to additional information stored somewhere else.

The presence of a trigger and a properly formatted token causes the AutoLink button on the toolbar to become selectable. If the user selects the AutoLink button, then the AutoLink software converts the token into a URL and formats it for the browser as a blue highlighted and underlined text supported by the underlying anchor tag which has the format: <A HREF="[URL]">[token]</A>. If the user selects the blue text defendant's server generates and directs a second URL to either a third party server (e.g amazon.com, fedex.com, carfax.com) or in the case of a street address initiates a process to retrieve a map from one of several possible providers.

AdSense

Defendant provides various products for use in connection with the world wide web. One such product, AdSense, facilitates the placement of advertisements on web pages by assessing a relationship between page content and advertisement content. Web publishers enroll in the AdSense program and insert defendant's javascript programming commands into web pages on which ads will appear. Advertisers provide defendant with prepared advertisements, keywords associated with each ad, prices they are willing to pay and other parameters concerning the display and selection of the ad.

The AdSense program identifies statistically significant clusters of topics within a web page which are identified by number. The AdSence program also identifies statistically significant clusters of targeting information for the advertisements. Each time a web user accesses a web page AdSense compares the web page topic clusters to the ad targeting information clusters to identify a set of candidate advertisements. The particular advertisement placed on the page is determined by a real time auction system involving multiple candidate advertisers. AdSense statistically determines advertisements most likely to maximize revenue. The result of this process is that different advertisements will be displayed on a web page even though the content of that page does not change.

MEMORANDUM

Defendant contends that its AutoLink and Adsense products lack several elements common to plaintiffs' asserted patent claims. Plaintiffs maintain that when the patent claims are properly construed, factual questions concerning the operation of defendant's products preclude summary judgment of non-infringement. Defendant also contends that various patent claims are invalid or unenforceable because they were anticipated by prior art, indefinite or were procured by inequitable conduct. Defendant seeks summary judgment on the first two invalidity defenses and plaintiff seeks summary judgment on the third.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P. A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder, applying the appropriate evidentiary standard of proof, could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Under Rule 56(e) it is the obligation of the

nonmoving party to set forth specific facts showing that there is a genuine issue for trial.

Patent infringement analysis consists of two steps. First, the patent claims must be interpreted or construed to determine their meaning and scope. Second, the properly construed claims are compared to the process or product accused of infringing. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). The first step of this analysis, claim construction, is a matter of law exclusively for the court. Id. at 970-71. To establish infringement plaintiff must prove that each claim element is present in the accused product, either literally or by equivalence. Dawn Equipment Co. v. Kentucky Farms Inc., 140 F.3d 1009, 1015 (Fed. Cir. 1998). Conversely, defendants can prevail by demonstrating that at least one element of the asserted claim is absent in their product or process.

The well established process for claim construction begins with examination of the claims language. The language is given its ordinary meaning as it would be understood by one of ordinary skill in the relevant art, given its context and the other patent claims. Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001). This initial construction is then considered in light of the specification to determine whether the inventor expressed a different meaning for the language, whether the preferred embodiment is consistent with the initial interpretation and

14

whether the inventor specifically disclaimed certain subject matter. Id. at 1342-43. The specification takes on a more important role if the claims language is particularly ambiguous, id., or if the inventor invoked the means plus function language of 35 U.S.C. § 112, ¶ 6 thereby incorporating the specification's embodiment into the claims by reference. Finally, the interpretation is examined for consistency with the patent's prosecution history and any disclaimers made therein. 274 F.3d at 1343.

Assuming one or more elements is literally absent from the accused device, it must be determined whether device infringes under the doctrine of equivalents. The Supreme Court offered the following guidance for assessing whether an element is present by equivalents:

> Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention? ... A focus on individual elements and a special vigilance against allowing the concept of equivalence to eliminate completely any such elements should reduce considerably the imprecision of whatever language is used. An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.

Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 40 (1997).

<u>Infringement-Autolink</u>

Plaintiff asserts that AutoLink infringes claims 1 and 7 of the '889 patent, claims 35, 46, 48, 56 and 63 of the '567 patent, and claims 1, 24, 27 and 86 of the '321 patent. Defendant argues, among other things, that AutoLink does not infringe these claims because its process does not involve references to second records and does not involve common address formats as required by the patent claims. The Court now concludes that when the claims are properly construed AutoLink does not infringe.

At the core of the inventions described in the '889 and '321 patents is the identification of a specific related record or record segment which is referenced in a first record, and a process for linking to the records. Most of the claims at issue include elements defining the limitation that a first record make a reference specific and individual second record. Claim 1 of the '889 patent (from which claim 7 depends) claims a "reference to a second data record" and "means for modifying said reference to create and address, said address being operable to retrieve said second data record." Similarly, the preamble to claim 1 of the '321 patent (from which claim 24 depends) claims "a method for identifying a referenced record referenced in a referencing record." Many of the claims also employ the terms "record reference" and "data reference (DR)." The parties agree that in addition to the claims discussed above, claims 27 and 86 of the

16

'321 patent and claims 46, 53, and 63 of the '567 patent include "data reference" limitations.  <u>See</u> plaintiffs' response to defendant's proposed finding of fact 134.

The initial step in the infringement analysis is to construe these terms.  The language, specification and prosecution history of the patents in suit are all consistent in informing the meaning of the terms.  A "record" is a collection of information in some relatively permanent form.  In the context of these patents, the record is in electronic form.  This meaning is confirmed by the preferred embodiments of the patents, which are concerned with medical records retained as electronic documents.  A "record reference" is something appearing in one record that refers to a second record.

A "data reference," is a term of art in the patents which the inventor defines and explains in the '321 patent specification at column 8, ln. 30-39:

> DR column 30 includes a list of DRs.  A DR is a unique phrase or word which may be used in a record to refer to another record or record segment.  In the context of a medical facility an exemplary DR may be as simple as "medication given", "ECG report", or "Admission NMR heartbeat".  As explained in more detail below, when a processor linking feature is selected, processor 14 searches for DRs in a specified record and, when a DR is identified, links the DR to a record or record segment associated with the DR via a hyperlink or other mechanism.

It is apparent that this definition is intended to generally define

17

"data reference" as the term is used throughout the patents in suit.

The unmistakable meaning of these terms is that there be a reference to a single, specific record which the created link retrieves. In each case the claim element includes the singular form – "a second data record" – clearly implying only one such record. The phrase retrieving "said record" suggests that there is a particular record to be retrieved. '321 patent claim 1, subpart (ii)(c) requires "identifying <u>the</u> referenced record," further confirming that the intent to claim a reference to one particular second record.

The patent specifications unequivocally confirm the inventor's intent to limit the claims in this manner. Every example in the preferred embodiments involves the use of data references (or a data reference in conjunction with modifying references) to identify a single medical record (or record segment) for a particular patient. For example, at col. 16, ln. 28-54, describes the referencing and retrieving of the particular patient's "Admission ECG," clearly a single specific record. Column 8, ln. 34 of the '321 patent, refers to exemplary DRs "medication given", "ECG report", or "Admission NMR heartbeat" which, in the context of a medical record with patient identification numbers and dates, point to one particular record. Column 10, ln. 32-34 explains how the invention "constructs an address identifying the referenced

record and links the address to the identified DR," leaving no doubt of the requirement that one and only one record is retrievable by use of the DR.

AutoLink's tokens are fundamentally different from the data references of the patent claims. They are not references to a particular data record but are references to things about which there may be many data records. A street address, for example, is not a reference to a data record at all, but a reference to a place. For each street address token there are many data records, including tax records, utility records, telephone listings, maps, etc. Autolink does not link to a street address, rather it processes the street address to retrieve a particular map from a predetermined data base. The same is true of the other tokens which, rather than identifying a particular data record as in the patent claims, identify a car, package, or book[1] about which there may be numerous data records. It is Autolink's process of identifying a particular data base, not any unique data reference in the web page, which results in a single record being identified and retrieved. It is the subsequent process at the Google server and not information from the analyzed web page, which enables the URL to be directed to a particular record.

---

[1] A book is a data record and an ISBN references a book, suggesting that the ISBN number could be used to refer to a particular data record. However, the ISBN token in AutoLink is not used to locate a record of the book, but rather to reference one of many potential records about the book. As a result, this line of reasoning is a red herring.

The tokens of defendant's AutoLink are akin to a patient identification number in the patents' preferred embodiments. However, a patient identification number would never be used as a data reference in the patent claims because it is far too broad. Indeed, the preferred embodiments start from the premise that the patient is known and sets about identifying and retrieving individually identified records pertaining to that patient. In terms of the claims language Autolink's tokens are not data references because they do not, even in conjunction with the triggers reference a particular data record. Nor does AutoLink examine web pages to identify a "referenced record."

There is no basis to argue that the AutoLink process uses the equivalent of data references to locate referenced records. Rather, AutoLink performs a completely different function in a different way to achieve a different result. It uses references to physical locations or things to identify unspecified related references which it surmises might be of interest to the web page reader. There is no attempt to identify a record specifically referenced in the web page and link to it as in the patent claims. Furthermore, it constructs a link not by assembling information components from the web page, but by imposing a predetermined process to access related records in various separately identified data bases which are not referenced in the web pages. Accordingly, there is no basis to suggest that these elements are present by equivalence.

The parties agree that of the asserted claims, only claims 35, 48 and 56 of the '567 patent lack the data reference elements found absent above.  However, each of those claims (as well as several which also include data reference elements) include elements which are also lacking in the AutoLink process.  Claims 35 and 48 require "A method for use with at least one processing device (PD) and a database (DB), the DB for storing information records at DB addresses, each address characterized by an address format ..." and "the PD for receiving at least one initial record, identifying information required to form an address according to the address format, searching the initial record to locate the required information, when the required information is located, using the located information to form a DB address having the address format."  Similarly, claim 56 requires: "A method for use with at least one processing device (PD) and a database (DB), the DB for storing information records at DB addresses, each address characterized by an address format, the method for defining at least one address format for use by both the PD and the DB and for forming an address for a record wherein the formed address has the address format."

These elements, which go to the core of the '567 invention, require that the processing device (the users computer) and the data base where records are stored and accessed share common address formats so that records are consistently stored with the

21

known address format thereby enhancing storage of and linking to the records.

The following excerpt from the summary of the invention at col. 4, ln. 57-62 of the '567 patent confirms the intended meaning of these elements:

> The invention includes both a method and apparatus for specifying enterprise wide address formats for use by all processing devices for address generating purposes.

The meaning of these elements is further succinctly stated at col. 18, ln. 60-65:

> It should be noted that the tools and methods for specifying rule sets, although important, are not at the heart of the present invention. Instead the invention is meant to cover the general concept of specifying DB structures, address and record formats and corresponding IRSs once for use by an entire information system and reusing the specified information time and again in a repetitive fashion to streamline DB definition and maintenance.

AutoLink lacks these elements entirely.  There is no common address format known to the user's computer and the data bases from which records are extracted.  There is no common address format among the numerous data bases used by the system.  In fact, many of the data bases – e.g, carfax.com, amazon.com, fedex.com – are owned and controlled by third parties and therefore the configuration of record addresses are uncontrollable by AutoLink.  Contrary to the elements of the patented invention, AutoLink uses a separate server which receives the information from a user's processing device,

reconfigures and redirects it to the appropriate data base in accordance with its content to retrieve the desired information. The user's computer creates a URL address in a particular prescribed format, but that address is not in the format of the data base record address to which the request will be directed. Instead, defendant's server analyzes the URL request and reformats it to match one of some twenty different address format templates associated with the data base likely to contain information relevant to the content of the original URL. The AutoLink process does not use a common address format between data base and processing device, the elements at the heart of the '567 patent claims.

The AutoLink process works by reconfiguring the information received in a common format from the user's computer into the numerous different address formats in various accessed data bases. There is no equivalent to the elements requiring that the user's computer form an address in the format common to the data base record address format. AutoLink imposes a separate reformatting step which, rather than depending upon common address formats, accounts for an overcomes the fact that the address formats are different. This achieves the result of record retrieval in an entirely distinct and substantially different way from that claimed in the '567 patent.

Infringement – AdSense

Plaintiff asserts that AdSense infringes claims 1, 24, 91 and 182 of the '321 patent and claims 1 and 26 of the '298 patent. The '321 claims each include as elements a "referencing record" and a "referenced record" and the use of a "data reference" to identify the referenced record in the referencing record. The '298 claims both include the linking of "first record references" to the records to which they refer. These terms have been construed above in the AutoLink infringement analysis. Defendant's motion for summary judgment is based on the position that AdSense does not identify or link to any referenced record during the AdSense process.

Considering the AdSense product, there are two records involved in the process: the web page and the advertisement. However, to suggest that either of these records "refers" to the other is nonsense. Web advertisements are prepared in isolation from and, in most instances, prior to the web articles are written. It is inconceivable that the advertisement would contain a "reference" to the article. It is equally inconceivable that the web page would contain a reference to the advertisement. To make out a case for infringement one would have to ignore the core elements and premise of the invention – the facilitation of a link between one record and a second record which is referred to in the first. Defendant's AdSense product involves connecting two records

which the AdSense statistically predicts hold a common interest for the reader.  It has nothing whatever to do with a reference in one record to a second record.

Of course, it is equally apparent that there is no equivalent to the various elements requiring a reference in one of the records to the other.  The AdSense product describes an entirely different process which achieves an entirely different result in an entirely different way than the patents-in-suit.  There is no reasonable argument that the AdSense product infringes any of the asserted claims.


ORDER

IT IS ORDERED that defendant's motion for summary judgment of non-infringement is GRANTED.

IT IS FURTHER ORDERED that all pending motions concerning patent validity are denied as moot.

IT IS FURTHER ORDERED that judgment be entered dismissing plaintiffs' complaint and all claims contained therein with prejudice and costs.

Entered this 20th day of December, 2006.

BY THE COURT:


S/
_____
JOHN C. SHABAZ
District Judge