IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HYPERPHRASE TECHNOLOGIES, LLC and
HYPERPHRASE INC.,

        Plaintiffs,

    v.                                              Civil Action No. 06 C 0199 S

GOOGLE INC.,

        Defendant.

---

**PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW
IN SUPPORT OF GOOGLE'S MOTIONS FOR SUMMARY JUDGMENT
REGARDING U.S. PATENT NOS. 5,903,889 AND 6,516,321**

Dockets.Justia.com

I.    **BACKGROUND**

   A.    **The Parties**

   1.      Plaintiff HyperPhrase Technologies, LLC is a Wisconsin limited liability corporation with places of business at 402 Gammon Place, Suite 300, Madison, Wisconsin 53719 and 10532 N. Port Washington Rd., Mequon, Wisconsin 53217.  [First Amended Complaint, Docket No. 5 ("Amended Complaint"), ¶ 2].

   2.      Plaintiff HyperPhrase, Inc. is a wholly-owned subsidiary of HyperPhrase Technologies, LLC.  [Amended Complaint, ¶ 2].

   3.      Plaintiffs HyperPhrase Technologies, LLC and HyperPhrase, Inc. are collectively referred to as "HyperPhrase."

   4.      Defendant Google Inc. ("Google") is a Delaware corporation with a principal place of business at 1600 Amphitheatre Parkway Mountain View, California 94043.  [Answer, Affirmative Defenses & Counterclaim, Docket No. 10 ("Answer"), ¶ 3].

   B.    **The Lawsuit**

   5.      On April 12, 2006, HyperPhrase filed a complaint alleging that Google infringed United States Patent Nos. 6,434,567 ((Dkt. No. 26) Woodford Decl. Ex. C, "the '567 Patent"), 6,516,321 ((Dkt. No. 26) Woodford Decl. Ex. E, "the '321 Patent"), and 5,903,889 ((Dkt. No. 26) Woodford Decl. Ex. A, "the '889 Patent").  [Complaint, Docket No. 2 ("Complaint"), ¶¶ 2, 7].

   6.      HyperPhrase also alleged infringement of United States Patent No. 6,507,837 [Complaint, ¶¶ 2, 7], but HyperPhrase is no longer pursuing an infringement claim with respect to this patent.  [Complaint, ¶¶ 2, 7.]

   7.      On May 31, 2006, HyperPhrase filed an amended complaint alleging that Google also infringed United States Patent No. 7,013,298 ((Dkt. No. 28) Woodford Decl. Ex. O, "the '298 Patent").  [Amended Complaint, ¶¶ 2, 7].

   8.      On December 21, 2006, Judge Shabaz granted Google's Motion for Summary Judgment of Non-infringement, denied all motions concerning invalidity as moot and dismissed

HyperPhrase's complaint and all claims contained therein with prejudice and costs. [(Dkt. No. 64) Order Granting Google's Motion for Summary Judgment of Non-infringement and Denying all pending motions concerning validity.]

9.      On December 27, 2006, HyperPhrase filed a Notice of Appeal to U.S. Court of Appeals for the Federal Circuit from the final judgment in favor of Google. [(Dkt No. 66) Notice of Appeal to the Federal Circuit by HyperPhrase].

10.      On December 26, 2007, the U.S. Court of Appeals for the Federal Circuit affirmed in part and vacated in part and remanded the case to the U.S. District Court for the District of Wisconsin, leaving infringement and validity of claims 1 and 7 of the '889 patent and 1, 24, 27 and 86 of the '321 patent to be determined by the District Court.

11.      On February 22, 2008,  the U.S. Court of Appeals for the Federal Circuit issued its judgment as a mandate.

12.      The remaining asserted patents after remand are the '321 and '889 collectively referred to as the "HyperPhrase patents" or "patents in suit."

13.      HyperPhrase alleges that Google's AutoLink Toolbar product infringes the HyperPhrase patents.  [HyperPhrase's First Suppl. Resp. to Google's Interrogatory No. 2, (Dkt No. 35) Woodford Decl. Ex. X, at 15].

**C.      Jurisdiction**

14.      HyperPhrase's complaint and Google's counterclaims arise under the Patent Act of the United States, as enacted under Title 35 of the United States Code, and the provisions of the Federal Declaratory Judgment Act, as enacted under Title 28 of the United States Code.  The jurisdiction of this Court is proper under 35 U.S.C. § 271 et seq. and 28 U.S.C. §§ 1331, 1338, and 2201-02.

**D.      Venue**

15.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## II.    THE HYPERPHRASE PATENTS

16.    All of the HyperPhrase patents are related to one another and belong to the same family of patents.  ['321 Patent, Woodford Decl. Ex. E; '889 Patent, Woodford Decl. Ex. A.]

17.    The application resulting in the '321 Patent was a continuation-in-part of the application resulting in the '567 Patent, which was a continuation-in-part of the application resulting in the '298 Patent, which was a continuation-in-part of the application resulting in the '889 Patent.  ['567 Patent, Woodford Decl. Ex. C; '321 Patent, Woodford Decl. Ex. E; '889 Patent, Woodford Decl. Ex. A; '298 Patent, Woodford Decl. Ex. O].

### A.    The '321 Patent

18.    The patent application (Serial No. 09/374,568) resulting in the '321 Patent was filed by applicant Carlos de la Huerga on August 13, 1999.  ['321 Patent, (Dkt. No. 26) Woodford Decl. Ex. E, Cover Page].

19.    The '321 Patent entitled "Method for Database Address Specification" issued on February 4, 2003.  ['321 Patent, (Dkt. No. 26) Woodford Decl. Ex. E, Cover Page].

20.    HyperPhrase has asserted the following claims of the '321 Patent against Google: claims 1, 24, 27, 86, 91, 182, and 190.  [HyperPhrase's First Suppl. Resp. to Google's Interrogatory No. 2, (Dkt. No. 35) Woodford Decl. Ex. X, at 15].

21.    Claim 1 of the '321 Patent recites:

> A method for identifying a referenced record referenced in a referencing record wherein the referenced record is referenced in the referencing record by at least a combination including a data reference (DR) and a modifier reference (MR), the method comprising the steps of:
> (i) receiving the referencing record;
>
> (ii) analyzing the referencing record to identify a DR, when a DR is identified:
>
> (a) identifying an MR rule set (MRRS) specifying the relationship between an MR and the DR;
>
> (b) analyzing the referencing record in accordance with the MRRS to identify the existence of the MR and, when the MR is identified;
>
> (c) identifying the referenced record associated with the DR/MR combination.

['321 Patent, (Dkt. No. 26) Woodford Decl. Ex. E, 32:12-25].

> 22.     Claim 24 of the '321 Patent recites:

> The method of claim 1 further including the step of linking the record reference to the referenced record.

['321 Patent, (Dkt. No. 26) Woodford Decl. Ex. E, 34:16-17].

> 23.     Claim 27 of the '321 Patent recites:

> A method to be used with a rule set including subject matter specific tag pairs and corresponding search rules, a separate tag pair for each of a plurality of different information types and a separate search rule for each pair, each pair including a begin tag and an end tag, the method comprising the steps of:

> (a) receiving a record;
> (b) examining the record according to the search rules to identify record segments including information of each of the information types;

> (c) when a record segment is identified which is of a particular information type:

> accessing the tag pair associated with the information type; inserting the begin tag before the identified segment and inserting the end tag after the identified segment.

['321 Patent, (Dkt. No. 26)  Woodford Decl. Ex. E, 34:25-41].

> 24.     Claim 86 of the '321 Patent recites:

> A method for use with an application wherein specifying references (SRs) in one record to other records which are selectable to access the other records are visually distinguished from other record information so as to indicate selectability, the method also for use with a system which enables a user to designate and also select SRs where designation comprises pointing to an SR without selection and, wherein a seemingly general SR is modified by other record information which renders the SR relatively specific, the method for indicating the specific nature of an SR prior to selection and comprising the steps of:

> when an SR is designated, indicating the specific nature of the SR.

['321 Patent, (Dkt. No. 26) Woodford Decl. Ex. E, 40:32-44].

> **B.     The '889 Patent**

> 25.     The patent application (Serial No. 08/871,818) resulting in the '889 Patent was filed by applicants Carlos de la Huerga and William Craig on June 9, 1997.  ['889 Patent, (Dkt. No. 26) Woodford Decl. Ex. A, Cover Page].

26.     The '889 Patent entitled "System and Method for Translating, Collecting and Archiving Patient Records" issued on May 11, 1999.  ['889 Patent, (Dkt. No. 26) Woodford Decl. Ex. A, Cover Page].

27.     HyperPhrase has asserted claims 1 and 7 of the '889 Patent against Google. [HyperPhrase's First Suppl. Resp. to Google's Interrogatory No. 2, (Dkt. No. 35) Woodford Decl. Ex. X, at 15].

28.     Claim 1 of the '889 Patent recites:

> A computer system with a plurality of data records on a plurality of databases, and a standardized format for addressing said data records, said computer system comprising:
>
> > (a) a user interface having an interactive display program for requesting one of said data records and displaying a plurality of interface supported data formats;
> >
> > (b) means for receiving a reference to a first data record from said interactive display program;
> >
> > (c) means for retrieving said first data record;
> >
> > (d) means for parsing said first data record to identify a reference to a second data record;
> >
> > (e) means for modifying said reference to said second data record to create an address, said address being operable to retrieve said second data record; and
> >
> > (f) means for sending said modified first data record to said interactive display program.

['889 Patent, (Dkt. No. 26) Woodford Decl. Ex. A, 16:61-17:10].

29.     Claim 7 of the '889 Patent recites:

> The computer system of claim 1, wherein said reference to said second data record comprises a keyword phrase.

['889 Patent, (Dkt. No. 26) Woodford Decl. Ex. A, 17:25-26].

## III.     PREVIOUS LITIGATION INVOLVING HYPERPHRASE

30.     In a previous litigation before this Court, HyperPhrase asserted several patents, including the '321 Patent, against Microsoft.  The caption of that case was *HyperPhrase Technologies, LLC and HyperPhrase Inc. v. Microsoft Corporation*.  [Opinion and Order of June 18, 2003, (Dkt. No. 26) Woodford Decl. Ex. S ("Claim Construction Order"), at 1].

31.     In the Microsoft case, Judge Crabb construed certain claim terms from U.S. Patent Nos. 5,895,461 and 6,272,505 as well as certain claim terms from the '321 Patent. [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 1].

32.     Applying the claim constructions from the Claim Construction Order, the Court granted Microsoft's motion for summary judgment of non-infringement. [Opinion and Order of September 24, 2003, (Dkt. No. 35) Woodford Decl. Ex. W, at 1-2].

A.      **Constructions of Claim Terms in the '321 Patent**

33.     In the Microsoft case, Judge Crabb construed some of the asserted claim terms from the '321 Patent as a matter of law. [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 2, 19-20].

34.     The terms "link" and "linking" in claim 83 of the '321 Patent were construed to mean "creating a hypertext link or address association." [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 19].

35.     The term "when a DR is identified, associating the DR and the referenced record" in the '321 Patent was construed to have to occur in real time. [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 20].

36.     As support for the construction of "when a DR is identified, associating the DR and the referenced record," Judge Crabb relied upon an amendment made by the inventor and statements made by the patent examiner during prosecution of the '321 Patent. [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 14-15; '321 Patent File History, (Dkt. No. 27) Woodford Decl. Ex. F].

37.     The term "identifying the reference record" in claims 1 and 83 of the '321 Patent was construed to mean "locating or finding the record." [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 20].

38.     The term "associating the DR and the referenced record" in claims 47, 185, 190, and 193 of the '321 Patent was construed to mean creating "a relationship that is broader than 'linking.'" [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 20].

7

39.     As support for the construction of "associating the DR and the reference record," Judge Crabb relied generally upon the '321 Patent specification and a dictionary definition for the term "associate."  [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 16].

**B.     Constructions of Claim Terms in Patents Related to the Patents at Issue**

40.     In the Microsoft case, Judge Crabb also construed claim terms from other patents that are not at issue in this case, but that are related to the patents at issue here.  [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 2, 19-20].

41.     Judge Crabb construed claim terms from U.S. Patent No. 5,895,461, which issued from application Serial No. 08/727,293 ("the '293 application").  The '321 Patent is related to the '293 application through a series of continuation-in-part applications.  ['321 Patent, (Dkt. No. 26) Woodford Decl. Ex. E, Certificate of Correction Correcting the Related U.S. Application Data].  The '889 Patent is related to the '293 application through a series of continuation-in-part applications.  ['889 Patent, (Dkt. No. 26) Woodford Decl. Ex. A, Related U.S. Application Data].

42.     Judge Crabb construed claim terms from U.S. Patent No. 6,272,505, which issued from application Serial No. 09/112,062 ("the '062 application").  The '321 Patent is a continuation-in-part of the '062 application.  ['321 Patent, (Dkt. No. 26) Woodford Decl. Ex. E, Certificate of Correction correcting the Related U.S. Application Data].

43.     The terms "record" and "data record" in claims 49 and 53 of the '461 patent were construed to mean "components of a database composed of fields arranged in a particular predefined structure."  [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 19].

44.     As support for the construction of "record" and data record," Judge Crabb relied generally upon the '461 patent specification.  [Claim Construction Order, (Dkt. No. 35) Woodford Decl. Ex. S, at 5-7].

45.     RESERVED.

46.     RESERVED.

47.     RESERVED.

48.     RESERVED.

49.    RESERVED.

## IV.    NON-INFRINGEMENT

50.    The Google Toolbar is software that can be installed with a Web browser, such as Microsoft Internet Explorer.  The Toolbar, which includes the AutoLink feature, requires a browsers to operate.  [Djabarov Decl. ¶ 2; Dkt No. 44 (HyperPhrase's Response to Google's Proposed Findings of Fact and Conclusions of Law in Support of Its Motion for Summary Judgment and Statement of Proposed Additional Findings of Fact and Conclusions of Law), at 42, nos. 103-104]

51.    The AutoLink feature has two components, a client component, which is located with the browser, and a server component which is located on a computer at Google.  [Djabarov Decl. ¶¶ 6 and 11]

52.    The AutoLink client can recognizes certain types of information or tokens, such as ISBNs, VINs, package tracking numbers, or postal addresses from a Web page.  When such a token is found, it is assumed to by that type of information.  [Djabarov Decl. ¶ 6; Dkt. No. 44, at 46-47, no. 114.]

53.    The AutoLink client also recognizes triggers, such as "book," "car," and "fedex." These triggers serve two functions, first, they used to throw out tokens as false positives, and if present with a token cause the AutoLink button to turn on.  [Djabarov Decl. ¶ 6; Dkt. No. 44 at 47, no. 115.]

54.    If the AutoLink button is manually selected by the browser user, then the AutoLink client can add an anchor tag obtained from the browser, this anchor tag includes a first URL that points to a process on the AutoLink server.  [Djabarov Decl. ¶ 8; Dkt No. 44 at 47-48, no. 117, and 51, no. 126.]

55.    AutoLink inserts the anchor tag into what is called a DOM representation of the web page created by the browser, not the web page itself, and not the web page located on any server.  [Dkt. No. 38 (Greenspoon Decl.), Exhibit F (Djabarov Depo. Transcript) at 30:15-21;

Declaration of Jason W. Wolff ISO Google's Motions for Summary Judgment Regarding U.S. Patent Nos. 5,903,889 and 6,516,321 ("Wolff Decl."), Exhibits K-1, K-2, L-1, L-2 and ¶¶ 11-13.]

56.     However, if the browser user does not select the AutoLink button, then nothing further happens and neither a first URL nor an anchor tag is created.  [Djabarov Decl. ¶ 7; Dkt. No. 44 at 47, no. 116.]

57.     If the browser user manually selects on the anchor tag created by the AutoLink client, then the browser sends the first URL to the AutoLink server.  [Djabarov Decl. ¶ 11.]

58.     The AutoLink server processes first URL and runs a "redir" command from the first URL, which causes the server to select one of over twenty different URL formats to return to the browser as a second URL.  [Djabarov Decl. ¶¶ 4(a), 10, 12, 14(a); Dkt No. 37 (HyperPhrase Br. in Opp'n to Google's Mtn for SJ of AutoLink Noninfringement) at 15 ("AutoLink has about twenty different possible templates.")]

59.     There are no records located at the AutoLink server.  [Djabarov Decl. ¶¶ 13 and 14; Dkt. No. 44 at 50, no. 124.]

60.     Upon receipt by the browser, the browser can forward second URL as an HTTP request to yet another server, which will process the second URL and may return information. [Djabarov Decl. ¶¶ 11 and 14]

61.     The Google Toolbar for Internet Explorer uses the Microsoft DOM API software to operate.  [Dkt. No. 38 (Greenspoon Decl.), Exhibit F (11/16/2006 Deposition Transcript of Gueorgui Djabarov) at 30:15-21.]

62.     Microsoft's products, systems, users, are licensed to use the '889 and '321 patents.  [Wolff Decl. Exhibit I (HyperPhrase Patent License Agreement with Microsoft).]

## V.     INVALIDITY

### A.     Priority

63.     Claim 1 of the '889 patent is not entitled to a priority date prior to the June 9, 1997 filing date of the '889 patent.  [*See generally* '889 patent (Dkt. No. 26) Woodford Decl.,

Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I; (Dkt No. 46) de la Huerga Decl., at ¶¶5-7, 9.]

64.     Claim 7 of the '889 patent is not entitled to a priority date prior to the June 9, 1997 filing date of the '889 patent.  [*See generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I; (Dkt. No. 46) de la Huerga Decl., at ¶¶3, 5-9 and Ex. 2.]

65.     Claim 1 of the '321 patent is not entitled to a priority date prior to the August 13, 1999 filing date of the '321 patent.  ['321 patent (cover page) and 1:1-29; s*ee generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶¶23-24; (Dkt. No. 46) de la Huerga Decl., at ¶¶4, 8-10 and Ex. 2.]

66.     Claim 24 of the '321 patent is not entitled to a priority date prior to the August 13, 1999 filing date of the '321 patent.  ['321 patent (cover page) and 1:1-29; s*ee generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶¶23-24; (Dkt. No. 46) de la Huerga Decl., at ¶¶4, 8-10 and Ex. 2.]

67.     Claim 27 of the '321 patent is not entitled to a priority date prior to the August 13, 1999 filing date of the '321 patent.  ['321 patent (cover page) and 1:1-29; s*ee generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I. (Dkt. No. 46) de la Huerga Decl., at ¶2.]

68.     Claim 86 of the '321 patent is not entitled to a priority date prior to the August 13, 1999 filing date of the '321 patent.  ['321 patent (cover page) and 1:1-29; s*ee generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I. (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶22; (Dkt. No. 46) de la Huerga Decl., at ¶2.]

**B.     Date of Invention**

69.     Claim 1 of the '889 patent is not entitled to a date of invention prior to the June 9, 1997 filing date of the '889 patent.  [*See generally* '889 patent (Dkt. No. 26) Woodford Decl.,

Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I.; (Dkt. No. 46) de la Huerga Decl., at ¶¶3, 5-9 and Ex. 2.]

70.     Claim 7 of the '889 patent is not entitled to a date of invention prior to the June 9, 1997 filing date of the '889 patent.  [*See generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I.; (Dkt. No. 46) de la Huerga Decl., at ¶¶3, 5-9 and Ex. 2.]

71.     Claim 1 of the '321 patent is not entitled to a date of invention prior to the August 13, 1999 filing date of the '321 patent.  ['321 patent (cover page) and 1:1-29; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶¶23-24; *see generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent Woodford Decl., Ex. I; (Dkt. No. 46) de la Huerga Decl., at ¶¶4, 8-10 and Ex. 2.]

72.     Claim 24 of the '321 patent is not entitled to a date of invention prior to the August 13, 1999 filing date of the '321 patent.  ['321 patent (cover page) and 1:1-29; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶¶23-24; *see generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I; (Dkt. No. 46) de la Huerga Decl., at ¶¶4, 8-10 and Ex. 2.]

73.     Claim 27 of the '321 patent is not entitled to a date of invention prior to the August, 13, 1999 filing date of the '321 patent.  ['321 patent (cover page) and 1:1-29; *see generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex I.; (Dkt. No. 46) de la Huerga Decl., at ¶2.]

74.     Claim 86 of the '321 patent is not entitled to a date of invention prior to the August 13, 1999 filing date of the '321 patent.  ['321 patent (cover page) and 1:1-29; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶22; *see generally* '889 patent (Dkt. No. 26) Woodford Decl., Ex. A and '461 patent (Dkt. No. 27) Woodford Decl., Ex. I.; (Dkt. No. 46) de la Huerga Decl., at ¶2.]

C.    **Prior Art References**

   i.    **Thistlewaite's "Automatic Construction and Management of Large Open Webs" ("PasTime")**

75.    PasTime was a publicly available printed publication by no later than March 22, 1997.  [(Dkt. No. 32) Kirk Decl., Ex. B at GOOG074992.]

76.    PasTime contains an enabling disclosure.  [(Dkt. No. 32) Kirk Decl., Ex. B at 161; Abstract; 171 at n.22; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20, 25-28 and Ex. 2(d).]

77.    PasTime discloses "A computer system with a plurality of data records on a plurality of databases . . ."  ['889 Claim 1; (Dkt. No. 32) (Dkt. No. 34) Kirk Decl., Ex. B at 170, 171 n.22; Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

78.    PasTime discloses: "and a standardized format for addressing said data records, said computer system comprising: . . ."  ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 171; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

79.    PasTime discloses: "(a) a user interface having an interactive display program for requesting one of said data records and displaying a plurality of interface supported data formats; . . ."  ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 170-171; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

80.    PasTime discloses: "(b) means for receiving a reference to a first data record from said interactive display program; . . ."  ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 166; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

81.    PasTime discloses: "(c) means for retrieving said first data record; . . ."  ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 166, 171; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

82.    PasTime discloses: "(d) means for parsing said first data record to identify a reference to a second data record; . . ."  ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 167-

169, 171; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

83.     PasTime discloses: "(e) means for modifying said reference to said second data record to create an address, said address being operable to retrieve said second data record; . . ." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 166-169, 171; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

84.     PasTime discloses:  "and (f) means for sending said modified first data record to said interactive display program." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 171; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

85.     PasTime discloses: "The computer system of claim 1, wherein said reference to said second data record comprises a keyword phrase." ['889 Claim 7; (Dkt. No. 32) Kirk Decl., Ex. B at 168; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶17-20 and Ex. 2(d).]

86.     PasTime discloses:  "A method for identifying a referenced record referenced in a referencing record wherein the referenced record is referenced in the referencing record by at least a combination including a data reference (DR) and a modifier reference (MR), the method comprising the steps of: . . ."  ['321 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 170, 172; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶25-28 and Ex. 2(d).]

87.     PasTime discloses: "(i) receiving the referencing record; . . ."  ['321 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 166, 171; Second Croft Decl., Ex. 1 at ¶¶25-28 and Ex. 2(d).]

88.     PasTime discloses:  "(ii) analyzing the referencing record to identify a DR, when a DR is identified: . . ."  ['321 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 167-168, 171-172; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶25-28 and Ex. 2(d).]

89.    PasTime discloses: "(a) identifying an MR rule set (MRRS) specifying the relationship between an MR and the DR; . . ." ['321 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 170, 172; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶25-28 and Ex. 2(d).]

90.    PasTime discloses: "(b) analyzing the referencing record in accordance with the MRRS to identify the existence of the MR and, when the MR is identified; . . ." ['321 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 170, 172; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶25-29 and Ex. 2(d).]

91.    PasTime discloses: "(c) identifying the referenced record associated with the DR/MR combination." ['321 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. B at 170, 172; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶25-29 and Ex. 2(d).]

92.    PasTime discloses: "The method of claim 1 further including the step of linking the record reference to the referenced record." ['321 Claim 24; (Dkt. No. 32) Kirk Decl., Ex. B at 161; Abstract, 168, 171; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶37; n.3 and Ex. 2(c); Second Croft Decl., Ex. 1 at ¶¶25-29 and Ex. 2(d).]

### ii.    U.S. Patent No. 5,815,830 ("Anthony")

93.    Anthony was filed by December 18, 1995.  [(Dkt. No. 32) Kirk Decl., Ex. A (cover page).]

94.    Anthony contains an enabling reference.  [(Dkt. No. 32) Kirk Decl., Ex. A at 1:6-8; 3:36-42; 4:11-27; 6:21-36; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

95.    Anthony discloses: "A computer system with a plurality of data records on a plurality of databases, . . ." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. A at 3:36-42; 3:45-48; 4:29-33; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

96.    Anthony discloses: "and a standardized format for addressing said data records, said computer system comprising: . . ." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. A at 2:1-3; 5:14-18; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

97.    Anthony discloses: "(a) a user interface having an interactive display program for requesting one of said data records and displaying a plurality of interface supported data formats; . . ." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. A at 3:57-61; 4:53-60; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

98.    Anthony discloses: "(b) means for receiving a reference to a first data record from said interactive display program; . . ." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. A at 4:53-54; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

99.    Anthony discloses: "(c) means for retrieving said first data record; . . ." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. A at 4:61-63; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

100.    Anthony discloses: "(d) means for parsing said first data record to identify a reference to a second data record; . . ." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. A at 3:2-6;4:61-5:3; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

101.    Anthony discloses: "(e) means for modifying said reference to said second data record to create an address, said address being operable to retrieve said second data record; and . . ." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. A at 4:61-5:3; 5:5-18; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

102.    Anthony discloses: "(f) means for sending said modified first data record to said interactive display program." ['889 Claim 1; (Dkt. No. 32) Kirk Decl., Ex. A at 5:19-20; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

103.    Anthony discloses: "The computer system of claim 1, wherein said reference to said second data record comprises a keyword phrase." ['889 Claim 7; (Dkt. No. 32) Kirk Decl., Ex. A at 6:1-10; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶29 and Ex. 2(b).]

### iii.    Graham's "HTML Sourcebook: A Complete Guide to HTML" ("Graham")

104.    Graham was a publicly available printed publication by no later than March 14, 1995.  [Graham Decl., at ¶5 and Exs. A-E]

16

105.    Graham contains an enabling disclosure.  [Graham Decl., Exs. A-E; (Dkt. No. 34) First Croft Decl., Ex. 1 ¶30 and Ex. 2(a); Second Croft Decl., Ex. 2(b).]

106.    Graham discloses: "A method for identifying a referenced record referenced in a referencing record wherein the referenced record is referenced in the referencing record by at least a combination including a data reference (DR) and a modifier reference (MR), the method comprising the steps of: . . ."  ['321 Claim 1; Graham Decl., Ex. A at 86-88; 167-68; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶30 and Ex. 2(a); Second Croft Decl., Ex. 2(b).]

107.    Graham discloses: "(i) receiving the referencing record; . . ."  ['321 Claim 1; Graham Decl., Ex. A at xii; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶30 and Ex. 2(a); Second Croft Decl., Ex. 2(b).]

108.    Graham discloses: "(ii) analyzing the referencing record to identify a DR, when a DR is identified: . . ."  ['321 Claim 1; Graham Decl., Ex. A at 167; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶30 and Ex. 2(a); Second Croft Decl., Ex. 2(b).]

109.    Graham discloses: "(a) identifying an MR rule set (MRRS) specifying the relationship between an MR and the DR; . . ."  ['321 Claim 1; Graham Decl., Ex. A at 167-68; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶30 and Ex. 2(a); Second Croft Decl., Ex. 2(b).]

110.    Graham discloses: "(b) analyzing the referencing record in accordance with the MRRS to identify the existence of the MR and, when the MR is identified; . . ."  ['321 Claim 1; Graham Decl., Ex. A at 167-68; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶30 and Ex. 2(a); Second Croft Decl., Ex. 2(b).]

111.    Graham discloses: "(c) identifying the referenced record associated with the DR/MR combination."  ['321 Claim 1; Graham Decl., Ex. A at 167-68; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶30 and Ex. 2(a); Second Croft Decl., Ex. 2(b).]

112.    Graham discloses: "The method of claim 1 further including the step of linking the record reference to the referenced record."  ['321 Claim 24; Graham Decl., Ex. A at 167-68; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶30 and Ex. 2(a); Second Croft Decl., Ex. 2(b).]

### iv. MUC-6 Named Entity Task Definition ("MUC-6 Task Definition")

113.    MUC-6 Task Definition was published by June 2, 1995.  [Wolff Decl., Ex. B.]

114.    MUC-6 Task Definition contains an enabling disclosure.  [Wolff Decl., Ex. B; Second Croft Decl., at ¶¶32-34 and Ex. 2(e).]

115.    MUC-6 Task Definition discloses: "A method to be used with a rule set including subject matter specific tag pairs and corresponding search rules, . . ."  ['321 Claim 27; Wolff Decl., Ex. B; Second Croft Decl., Ex. 1 at ¶¶32-34 and Ex. 2(e).]

116.    MUC-6 Task Definition discloses: "a separate tag pair for each of a plurality of different information types and a separate search rule for each pair, . . ."  ['321 Claim 27; Wolff Decl., Ex. B; Second Croft Decl., Ex. 1 at ¶¶32-34 and Ex. 2(e).]

117.    MUC-6 Task Definition discloses: "each pair including a begin tag and an end tag, the method comprising the steps of: . . ."  ['321 Claim 27; Wolff Decl., Ex. B; Second Croft Decl., Ex. 1 at ¶¶32-34 and Ex. 2(e).]

118.    MUC-6 Task Definition discloses:  "(a) receiving a record; . . ."  ['321 Claim 27; Wolff Decl., Ex. B; Second Croft Decl., Ex. 1 at ¶¶32-34 and Ex. 2(e).]

119.    MUC-6 Task Definition discloses: "(b) examining the record according to the search rules to identify record segments including  information of each of the information types; . . ."  ['321 Claim 27; Wolff Decl., Ex. B; Second Croft Decl., Ex. 1 at ¶¶32-34 and Ex. 2(e).]

120.    MUC-6 Task Definition discloses: "(c) when a record segment is identified which is of a particular information type: accessing the tag pair associated with the information type; inserting the begin tag before the identified segment and inserting the end tag after the identified segment."  ['321 Claim 27; Wolff Decl., Ex. B; Second Croft Decl., Ex. 1 at ¶¶32-34 and Ex. 2(e).]

### v. Aberdeen's "MITRE: Description of the Alembic System Used for MUC-6" ("Aberdeen")

121.    Aberdeen was a publicly available printed publication by no later than November 19, 1996.  [Wolff Decl., Ex. C.]

122.    Aberdeen contains an enabling reference.  [Wolff Decl., Ex. C; Second Croft Decl., at ¶¶35-36 and Ex. 2(f).]

123.    Aberdeen discloses: "A method to be used with a rule set including subject matter specific tag pairs and corresponding search rules, . . ."  ['321 Claim 27; Wolff Decl., Ex. C at 141, 144-45; Second Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(f).]

124.    Aberdeen discloses: "a separate tag pair for each of a plurality of different information types and a separate search rule for each pair, . . ."  ['321 Claim 27; Wolff Decl., Ex. C at 145; Second Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(f).]

125.    Aberdeen discloses: "each pair including a begin tag and an end tag, the method comprising the steps of: . . ."  ['321 Claim 27; Wolff Decl., Ex. C; Second Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(f).]

126.    Aberdeen discloses: "(a) receiving a record; . . ."  ['321 Claim 27; Wolff Decl., Ex. C at 142; Second Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(f).]

127.    Aberdeen discloses: "(b) examining the record according to the search rules to identify record segments including information of each of the information types; . . ."  ['321 Claim 27; Wolff Decl., Ex. C at 142, 144; Second Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(f).]

128.    Aberdeen discloses: "(c) when a record segment is identified which is of a particular information type: accessing the tag pair associated with the information type; inserting the begin tag before the identified segment and inserting the end tag after the identified segment."  ['321 Claim 27; Wolff Decl., Ex. C at 142; Second Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(f).]

### vi.    U.S. Patent 5,742,765 ("Gennaro")

129.    Gennaro was filed by August 13, 1999.  [Wolff Decl., Ex. A.]

130.    Gennaro contains an enabling disclosure.  [Wolff Decl., Ex. A; Second Croft Decl., at ¶¶44-47and Ex. 2(a).]

131.    Gennaro discloses: "A method for use with an application wherein specifying references (SRs) in one record to other records which are selectable to access the other records

are visually distinguished from other record information so as to indicate selectability, . . ." ['321 Claim 86; Wolff Decl., Ex. A at FIGS. 2A and 2B; Second Croft Decl., Ex. 1 at ¶¶44-47 and Ex. 2(a).]

132.    Gennaro discloses: "the method also for use with a system which enables a user to designate and also select SRs where designation comprises pointing to an SR without selection and, . . ." ['321 Claim 86; Wolff Decl., Ex. A at 2:47-53; 6:7-10; FIG. 2B; Second Croft Decl., Ex. 1 at ¶¶44-47 and Ex. 2(a).]

133.    Gennaro discloses: "wherein a seemingly general SR is modified by other record information which renders the SR relatively specific, . . ." ['321 Claim 86; Wolff Decl., Ex. A; Second Croft Decl., Ex. 1 at ¶¶44-47 and Ex. 2(a).]

134.    Gennaro discloses: "the method for indicating the specific nature of an SR prior to selection and comprising the steps of: . . ." ['321 Claim 86; Wolff Decl., Ex. A; Second Croft Decl., Ex. 1 at ¶¶44-47 and Ex. 2(a).]

135.    Gennaro discloses: "when an SR is designated, indicating the specific nature of the SR." ['321 Claim 86; Wolff Decl., Ex. A; Second Croft Decl., Ex. 1 at ¶¶44-47 and Ex. 2(a).]

vii.    **Myka's "Automatic Hypertext Conversion of Paper Document Collections" ("Myka")**

136.    Myka was a publicly available printed publication by at least as early as July 16, 1995.  [(Dkt. No. 32) Kirk Decl., Ex. D at GOOG075115.]

137.    Myka contains an enabling disclosure.  [(Dkt. No. 32) Kirk Decl., Ex. D at Abstract, §1; §3.1.3; §3.2.1; §3.2.3; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(e); Second Croft Decl., at ¶¶50-51 and Ex. 2(c).]

138.    Myka discloses: "A method for use with an application wherein specifying references (SRs) in one record to other records which are selectable to access the other records are visually distinguished from other record information so as to indicate selectability, . . ."

20

['321 Claim 86; (Dkt. No. 32) Kirk Decl., Ex. D at 86; FIG. 6.9; (Dkt. No. 34) First Croft Decl.,
Ex. 1 at ¶¶35-36 and Ex. 2(e); Second Croft Decl., Ex. 1 at ¶¶50-51 and Ex. 2(c).]

139. Myka discloses: "the method also for use with a system which enables a user to
designate and also select SRs where designation comprises pointing to an SR without selection
and, . . ."  ['321 Claim 86; (Dkt. No. 32) Kirk Decl., Ex. D at 86; (Dkt. No. 34) First Croft Decl.,
Ex. 1 at ¶¶35-36 and Ex. 2(e); Second Croft Decl., Ex. 1 at ¶¶50-51 and Ex. 2(c).]

140. Myka discloses: "wherein a seemingly general SR is modified by other record
information which renders the SR relatively specific, . . ."  ['321 Claim 86; (Dkt. No. 32) Kirk
Decl., Ex. D at 86; (Dkt. No. 34) First Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(e); Second Croft
Decl., Ex. 1 at ¶¶50-51 and Ex. 2(c).]

141. Myka discloses: "the method for indicating the specific nature of an SR prior to
selection and comprising the steps of: . . ."  ['321 Claim 86; (Dkt. No. 32) Kirk Decl., Ex. D;
(Dkt. No. 34) First Croft Decl., Ex. 1 at ¶¶35-36 and Ex. 2(e); Second Croft Decl., Ex. 1 at ¶¶50-
51 and Ex. 2(c).]

142. Myka discloses: "when an SR is designated, indicating the specific nature of the
SR."  ['321 Claim 86; (Dkt. No. 32) Kirk Decl., Ex. D at 86; (Dkt. No. 34) First Croft Decl., Ex.
1 at ¶¶35-36 and Ex. 2(e); Second Croft Decl., Ex. 1 at ¶¶50-51 and Ex. 2(c).]

## VI.    CONCLUSIONS OF LAW

### A.    Regarding the '889 patent:

143. The preamble of claim 1 of the '889 patent limits the claim.

144. The term "standardized format for addressing said records" in claim 1 of the '889
patent means the addresses for the records all have a standard or common format.

145. The term "address" in claim 1 of the '889 patent refers to the address of the
referenced record.

146. The term "first data record" in claim 1 of the '889 patent means one of the
plurality of records stored in the plurality of databases.

21

147.    The term "database" in claim 1 of the '889 patent means a group of related records.

148.    The term "user interface" in claim 1 of the '889 patent means a screen displayed to a user on a computer monitor.

149.    The term "interactive display program for requesting one of said data records and displaying a plurality of interface supported data formats" in claim 1 of the '889 patent means a computer program that can request a data record and display different types of data on the user interface; browsers such as Internet Explorer and Netscape Navigator are common examples of such programs.

150.    Claim element 1(b) in the '889 patent is construed in accordance with 35 U.S.C. § 112, 6.

151.    The corresponding structure for claim element 1(b) in the '889 patent is a web browser, and in particular the field that allows a user to type in a URL to request an HTML file (a first data record).  *See* '889 patent, col. 2, ll. 50-57.

152.    Claim element 1(c) in the '889 patent is construed in accordance with 35 U.S.C. §112, 6.

153.    The corresponding structure for claim element 1(c) in the '889 patent is a web browser, and in particular the capability to make requests for HTML files located at a URL.  See '889 patent, col. 3, ll. 44-54.

154.    Claim element 1(d) in the '889 patent is construed in accordance with 35 U.S.C. §112, 6.

155.    The corresponding structure for claim element 1(d) in the '889 patent is not adequately disclosed in the specification under 35 U.S.C. §112, 2.

156.    Claim element 1(e) in the '889 patent is construed in accordance with 35 U.S.C. §112, 6.

157.    The corresponding structure for claim element 1(e) in the '889 patent is not adequately disclosed in the specification under 35 U.S.C. §112, 2.

158.    Claim element 1(f) in the '889 patent is construed in accordance with 35 U.S.C. §112, 6.

159.    The corresponding structure for claim element 1(f) in the '889 patent is not adequately disclosed in the specification under 35 U.S.C. §112, 2.

160.    The term "keyword phrase" means a predefined multi-word phrase.

161.    Claims 1 and 7 of the 889 patent are not infringed by AutoLink.

162.    Claim 1 of the 889 patent is invalid under 35 U.S.C. §112, 2.

163.    Claim 1 of the 889 patent is invalid in view of PasTime under 35 U.S.C. §102(a).

164.    Claim 7 of the 889 patent is invalid in view of PasTime under 35 U.S.C. §102(a).

165.    Claim 1 of the 889 patent is invalid in view of Anthony under 35 U.S.C. §102(e).

166.    Claim 7 of the '889 patent is invalid in view of Anthony under 35 U.S.C. §102(e).

**B.    Regarding the '321 patent**

167.    The preamble of claim 1 of the '321 patent limits the claim.

168.    The preamble of claim 27 of the '321 patent limits the claim.

169.    The preamble of claim 86 of the '321 patent limits the claim.

170.    The term "modifier reference" means a word or phrase that further specifies a specific record or record segment referred to by a data reference.

171.    The term "when" between steps means the steps are performed automatically in real-time.

172.    The term "subject matter specific tag pair" means two matching tags, each identifying a specific subject matter.

173.    The term "specifying reference" means (1) a combination of a first data reference, a second data reference, and a modifier reference, or (2) a combination of a data reference, a first modifier reference, and a second modifier reference.

174.    The term "referenced record" means a record referenced in another record.

175.    The term "referencing record" means a record that refers to a referenced record.

176.    The term "MR rule set" means one or more rules that relate a modifier reference to a data reference.

177.    The term "identifying the referenced record" means looking up or otherwise determining the address, location, or other identifier of the referenced record.

178.    The term "record reference" in claim 24 of the '321 patent is indefinite.

179.    The term "a separate tag pair for each of a plurality of information types" means each tag pair corresponds to a different type of information.

180.    The terms "selectable" and "selectability" mean a user can access other records referred to by a specifying reference.

181.    The terms "designate" and "designation" mean point to text on a display screen without actually taking an affirmative step to select the text.

182.    The term "seemingly general" is indefinite under 35 U.S.C. §112, 2.

183.    The term "relatively specific" is indefinite under 35 U.S.C. §112, 2.

184.    The term "indicating the specific nature of an SR" means displaying other information concerning the SR.

185.    Claims 1 and 24 of the '321 patent are not infringed by AutoLink.

186.    Claim 27 is not infringed by AutoLink.

187.    Claim 86 is not infringed by AutoLink.

188.    Claim 24 of the '321 patent is invalid under 35 U.S.C. §112, 2.

189.    Claim 86 of the '321 patent is invalid under 35 U.S.C. §112, 2.

190.    Claim 1 is invalid in view of PasTime under 35 U.S.C. §102(b).

191.    Claim 24 is invalid in view of PasTime under 35 U.S.C. §102(b).

192.    Claim 1 is invalid in view of the HTML Sourcebook under 35 U.S.C. §102(b).

193.    Claim 24 is invalid in view of the HTML Sourcebook under 35 U.S.C. §102(b).

194.    Claim 27 is invalid in view of the MUC-6 Named Entity Task Definition under 35 U.S.C. §102(b).

195.    Claim 27 is invalid in view of Aberdeen under 35 U.S.C. §102(a).

24

196.    Claim 86 is invalid in view of Gennaro under 35 U.S.C. §102(b).

197.    Claim 86 is invalid in view of Myka under 35 U.S.C. §102(b).

**C.      Regarding License/Exhaustion of the '889 and '321 patents**

198.    There is no infringement by the Google Toolbar as used with Microsoft systems

or software or by licensed Microsoft systems or software users.

199.    There is no liability for Google by the Google Toolbar as used with Microsoft

systems or software or by Microsoft's licensed systems or users.


Dated:  February 29, 2008                          GODFREY & KAHN, S.C.

                                                   By: */s/ James D. Peterson*
                                                        James A. Friedman
                                                        James D. Peterson
                                                        One East Main Street, Suite 500
                                                        P.O. Box 2719
                                                        Madison, WI  53701-2719
                                                        Phone:  (608) 257-3911

                                                        Facsimile:  (608) 257-0609

*Of Counsel:*


| | | |
|---|---|---|
| Frank E. Scherkenbach | Michael J. Kane | Jason W. Wolff |
| Kurt L. Glitzenstein | William R. Woodford | Fish & Richardson P.C. |
| Christopher R. Dillon | Fish & Richardson P.C. | 12390 El Camino Real |
| Peter J. Kirk | 3300 Dain Rauscher Plaza | San Diego, CA  92130 |
| Fish & Richardson P.C. | 60 South Sixth Street | Telephone:  (858) 678-5070 |
| 225 Franklin Street | Minneapolis, MN  55402 | Facsimile:  (858) 678-5099 |
| Boston, MA  02110 | Telephone:  (612) 335-5070 | |
| Telephone:  (617) 542-5070 | Facsimile:  (612) 288-9696 | |
| Facsimile:  (617) 542-8906 | | |

*Attorneys for Defendant GOOGLE INC.*

3005004_1

25