IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HYPERPHRASE TECHNOLOGIES, LLC and
HYPERPHRASE INC.,

    Plaintiffs,

v.

GOOGLE INC.,

    Defendant.

Civil Action No. 06 C 0199 S

**GOOGLE'S REPLY IN SUPPORT OF ITS MOTION FOR
LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIM**

    The Court need not even reach HyperPhrase's claims of alleged prejudice, because the parties' stipulation on its face permits the amendment Google proposes and allowing the amendment will not impact the Court's schedule in any manner. HyperPhrase's argument to the contrary, particularly its allegation of dire consequences for the trial schedule, is premised on speculation and is not supported by any concrete showing.

    If the Court considers HyperPhrase's alternative argument, that it has somehow been ambushed and therefore prejudiced by Google's attempt to add claims pertaining to HyperPhrase's patent license with Microsoft, the Court will see that HyperPhrase's surprise is feigned and its brief omits key facts. Most importantly, despite HyperPhrase's obligation to produce the license with Microsoft months earlier, HyperPhrase did not produce the license until December 1, 2006 -- after dispositive motions were filed, and less than three weeks before the Court entered summary judgment and dismissed the case for the first time.

    Given these facts and the liberal policy favoring amendment, Google should be allowed to amend. The inclusion of the proposed license-related defenses, which go to infringement and damages, will allow for a full adjudication of the issues between the parties. If HyperPhrase truly needs additional discovery to meet the license-related defenses, which Google disputes,

1

there is time to take that discovery, notwithstanding that HyperPhrase has taken no steps to do so in the three weeks since Google informed HyperPhrase of its intention to amend.[1]

## I.   ARGUMENT

### A.   The Plain Language Of The Parties' Stipulation Permits Google's Amendment

Google's motion should be granted because the stipulation signed by the parties and entered by this Court expressly grants Google the right to amend its pleadings to add "any" defense, not merely those previously dismissed to enable HyperPhrase's appeal:

> The parties stipulate and agree that should any of these patents be asserted against Google its customers or users in any other proceeding, or any remanded proceeding, <u>Google may assert any claim, defense, or counterclaim, including those dismissed by this agreement</u>.

(Dkt. No. 71 at 1 (emphasis added).)  Google's motion to amend is therefore in conformity with the stipulation entered by the Court.

In addition, the stipulation is not at odds with Fed.R.Civ.P. 15(a).  In construing the standard that applies to Rule 15(a), the Supreme Court has stated, "If the underlying facts or circumstances relied upon by a [defendant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. . . . leave sought should be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Notwithstanding HyperPhrase's claim of futility, which Google addresses below, the underlying facts and circumstances here relating to the license "may be a proper subject of relief" and, therefore, justify amendment.  That the parties **agreed** that any defense could be added, and that Google has timely and reasonably sought amendment by filing its motion two days before this court docketed the Federal Circuit's

---

[1] While no briefing schedule has been set, Court staff has indicated that a reply brief would be accepted for Google's motion.  In the event that a request for leave is required, Google hereby requests leave to file its reply brief for the reasons shown herein.

2

mandate and just two weeks after HyperPhrase disclosed its new theories of infringement, only underscore Google's compliance with the spirit and letter of Rule 15.

Any measure of timeliness of Google's amendment should be calculated from the date of production of the license agreement by HyperPhrase (December 1, 2006), and should not include the time after the Court first disposed of the case on summary judgment (December 21, 2006) and before the mandate was entered (February 29, 2008). It would have been pointless for Google to add a license defense to a case it already had won. It also would have been pointless for Google to try to amend its pleadings during the period this Court was divested of jurisdiction due to HyperPhrase's appeal. Therefore, even if Rule 15(a) applies, Google's request was timely because it notified HyperPhrase of Google's intent to amend its answer roughly three weeks from the date HyperPhrase first produced the license and before this Court formally regained jurisdiction.

      **B.**    **HyperPhrase Should Not Profit From Failing To Timely Respond To Google's Discovery Requests**

On June 7, 2006, one week after HyperPhrase filed its first amended complaint, Google served its First Set of Requests for Production of Documents and Things. (*See* Exhibit 6 (excerpts from Google's First Set of Request for Production of Documents and Things).) Request for production no. 65 called for the production of all patent licenses pertaining to the patents-in-suit:

> REQUEST FOR PRODUCTION NO. 65:
>
> All documents that relate to licenses, distribution agreements, broker agreements, franchise agreements, quitclaims, conveyances, negotiations to license or convey, offers to license or convey, or other transfers of rights to or from Plaintiffs relating to any invention disclosed, described, or claimed by any of the patents-in-suit and any other documents relating to Plaintiffs' consent or permission to third parties to use any technology relating to any invention disclosed, described, or claimed by any of the patents-in-suit.

(*Id.* at 17).

HyperPhrase responded that it would produce all non-privileged documents subject to its objections. But HyperPhrase did not in fact produce the Microsoft license until December 1, 2006, which was just three weeks before this Court granted Google's motion for summary judgment of noninfringement, and just four weeks before the original close of discovery. (*See* Exhibit 7 (December 1, 2006 letter to Jason Wolff from Katy Dickman producing the Microsoft patent license agreement (H023167-H023186)).) In fact, perhaps the only reason HyperPhrase produced the license at all is because Google requested it *again* after HyperPhrase's damages expert, Joseph Gemini, referred to it in his expert report.

HyperPhrase should not be rewarded for these failings, especially while trying to paint Google as the party who deliberately overlooked the existence of the license.[2] Prior knowledge of the agreement by Google's lawyers, which they gained through representation of another client (Microsoft), is irrelevant. Surely HyperPhrase is not suggesting that Google should be penalized because counsel maintained their duty of confidentiality to their client Microsoft.[3]

---

[2] HyperPhrase can only accuse Google of "concealment" of the license by attaching to its opposition a copy of the license that Google produced on February 22, 2008, rather than the copy that HyperPhase first produced to Google near the close of discovery in 2006.

[3] Substantial portions of the license are confidential. HyperPhrase itself pointed this out in explaining to Google's in-house counsel, prior to the litigation, why it could not provide a copy all licenses under the patents as Google requested. (Dkt. No. 73, Exhibit H-4 (October 3, 2005 email to Catherine Lacavera from Wil Flachsbart stating the terms of the prior license were confidential).)

4

With over eleven weeks remaining before trial, which is nearly twice as long as the six weeks remaining to trial when HyperPhrase finally produced the license in the first place, Google timely notified HyperPhrase of its intent to add the license-related defenses. Therefore, granting the amendment would not prejudice HyperPhrase, but denying it would prejudice Google and allow HyperPhrase to profit from its failure to satisfy its discovery obligations. HyperPhrase should not be allowed to simultaneously use the license to bolster its own case while preventing Google from fully defending itself with the same document.

### C. Google's Amendment Is Not Futile

HyperPhrase admits and Google agrees that Microsoft products and Microsoft product users are licensed to the '321 patent. As stated in HyperPhrase's papers, "The [HyperPhrase/Microsoft patent] license arguably protects individual consumers who use Microsoft Internet Explorer to access the Internet from patent infringement suits based on the '321 patent."[4] (Dkt. No. 110 at 13.) The Microsoft license encompasses "the Asserted HyperPhrase Patents," which includes the '321 patent because the '321 was one of the patents asserted in the Microsoft litigation. (*Id*., Exhibit B at ¶¶1 and 4 and Exhibit D). Google's license defense is therefore admittedly not futile with regard to the '321 patent, especially given the new "joint infringement" theory HyperPhrase added on February 11, 2008.

With regard to the '889 patent, HyperPhrase misreads the license -- it clearly **does** include the '889. Paragraph 4 of the license defines what "The Licensed Patents and Applications" means:

> [A]ll United States and foreign patents that issue from an
> application . . . that is, that is based on, <u>that claims the subject
> matter of, or that includes as part of its priority claim or list of
> related applications, any patent application that issued as, or that is</u>

---

[4] HyperPhrase further agrees that "individual [Microsoft] customers may be immune from suit," (Dkt. No. 110 at 14.).

>    included in the priority claim or list of related applications of, the
>    Asserted HyperPhrase Patents . . ."

(Dkt. No. 110, Exhibit B at ¶4(c) (emphasis added).)  Therefore, if the '889 patent or the application from which it issued is included in the list of related applications of any of the "Asserted HyperPhrase Patents", the '889 is licensed.

      This is precisely the case.  The '321 patent lists as a related application Ser. No. 08/871,818.  (Dkt. No. 2, Exhibit 4 at 1:19-20 ('321 patent)).  The '889 patent issued from that application.  (Dkt. No. 2, Exhibit 1 at cover page ('889 patent)).  In fact, until counsel argued otherwise in its opposition to Google's motion, it was undisputed that the '889 was licensed.  HyperPhrase's managing member and the inventor of the '889 and '321 patents admitted as much when he said: "[a]s reflected in column 1 of the '321 patent, I claimed priority to both the '461 patent and the '889 patent."  (*See* Dkt. No. 46 at ¶8 (Declaration of Carlos de la Huerga).)  Furthermore, paragraph 12 of the license, which HyperPhrase attached to its opposition, states that HyperPhrase releases its claims, and covenants not to sue Microsoft or its customers (i.e., third parties who purchase or use Microsoft software) for infringement, "premised on the patents and applications listed in Exhibit D".  Exhibit D identifies both the '321 and '889 patents.  (Dkt. No. 110, Exhibit B.)  Thus, a correct reading of the license clearly demonstrates that both the '321 and '889 patents are licensed to Microsoft and its customers.

      Finally, HyperPhrase's infringement contentions for the '321 and '889 patents, including its new "joint infringement" theory first revealed nine days before Google informed HyperPhrase that it intended to add the license defense, are based upon a consumer's use of computers running Microsoft software.  The analysis of HyperPhrase's infringement expert (Dr. Paul Thompson) specifically relies on the use and operation of web browser software not made by Google, and specifically Microsoft Internet Explorer web browser software.  For example, Dr.

6

Thompson identifies Internet Explorer as the claimed "interactive display program" in claim 1 of the '889 patent:



(*See e.g.*, Exhibit 8 at 6 (excerpts from infringement charts dated February 11, 2008 attached to Supp. Expert Report of Paul Thompson, PhD) (emphasis added)); *see also* Dkt. No. 106, Exhibit N.)  In fact, Dr. Thompson alleges that multiple steps of the '889 and '321 patents are performed by Microsoft Internet Explorer or the "browser." (*Id*. at *passim*.)  The use and operation of Microsoft software products is therefore directly implicated both by HyperPhrase's new "joint infringement theory" and its own detailed infringement contentions.[5]  (*Id*.)  Thus, Google's license defense is not futile.

        **D.**    **There Is No Prejudice To HyperPhrase, and Denying the Motion would Prejudice Google**

HyperPhrase's assertions of prejudice are baseless.  It is HyperPhrase, a party to both the present suit and the Microsoft suit and resultant patent license, which was in possession of that license from the inception of this case.  Despite its obligation to produce the license in response to Google's discovery requests at the outset of the case, HyperPhrase waited until after dispositive motions were filed in 2006, and only after Google specifically requested the clearly

---

[5] HyperPhrase tries in its opposition to recast its case as being about Google's **own** use of AutoLink.  But the attempt fails because: (1) HyperPhrase has never previously made such an allegation or disclosed any analysis (expert or otherwise) in support of it and (2) HyperPhrase's damages theory is premised solely on use by Google customers, more than 95% of whom use Microsoft software.

responsive license, to produce it. And HyperPhrase freely entered the stipulation allowing Google's amendment. Thus any possible prejudice is of HyperPhrase's own making. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1211 (10th Cir. 2006) ("Whatever harm befalls [non-movant] as a result of entering into the Joint Stipulation is of its own making, and therefore does not qualify as prejudice under Rule 15(a).").

Moreover, the issues raised by the Microsoft license defense turn on legal questions, specifically contract interpretation, and HyperPhrase's own infringement contentions, so they can be no surprise to HyperPhrase and little or no discovery is necessary to address them. HyperPhrase is not only in possession of the license, and has been since 2004, but it has and has had all of the additional documents (*e.g.*, the licensed patents and applications) relevant to the license issues. Furthermore, as noted above, if HyperPhrase were indeed concerned about potential prejudice, it would have actively sought discovery from Microsoft or any other party it deems necessary concerning the license, rather than burning precious time fighting this motion. Even so, there remains ample time to take whatever unidentified discovery HyperPhrase claims to need.

Furthermore, given HyperPhrase's additional new "joint infringement" theory and corresponding damages theories, denying amendment would prejudice Google. HyperPhrase's new infringement theory, first raised on February 11, 2008 in Dr. Thompson's infringement report, is that "Google is a 'joint infringer' of … the claims of the '321 patent." (*See* Exhibit 9 at 16-17 (excerpt from February 11, 2008 Supp. Expert Report of Paul Thompson, PhD)). A joint infringer requires another infringer. ("Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.") *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007) citing with approval the jury instruction from *On Demand Machine Corp.*

*v. Ingram Industries*, *Inc.*, 442 F.3d 1331, 1345 (Fed. Cir. 2006). HyperPhrase says that other infringer is a "user" and a "user's computer" containing browser software such as Microsoft Internet Explorer. (Exhibit 9 at 17.) This new theory thus directly contradicts the license because, as noted above and as admitted by HyperPhrase with respect to at least the '321 patent, users of Internet Explorer are protected by the license.

In addition, HyperPhrase's damages expert in his February 11, 2008 supplemental report explicitly distinguishes the Microsoft license in order to disavow its impact on the determination of a reasonable royalty, and then fails to take into account any possibility that a license protecting Microsoft users could impact his damages calculus. (*See generally* Exhibit 10 (February 11, 2008 Supp. Expert Report of Joseph Gemini)). The license will therefore be central to the cross-examination of HyperPhrase's experts at any trial, regardless of whether Google is allowed to add defenses based on the license in order to meet the new opinions of these gentlemen.

**II.   CONCLUSION**

For the reasons stated above, Google's motion for leave should be granted.

Dated: March 11, 2008                    GODFREY & KAHN, S.C.

                                         By: */s/ James D. Peterson*
                                             James A. Friedman
                                             James D. Peterson
                                             One East Main Street, Suite 500
                                             P.O. Box 2719
                                             Madison, WI 53701-2719
                                             Phone: (608) 257-3911

                                             Facsimile: (608) 257-0609

*Of Counsel:*

| | |
|---|---|
| Frank E. Scherkenbach | Jason W. Wolff |
| Kurt L. Glitzenstein | Fish & Richardson P.C. |
| Christopher R. Dillon | 12390 El Camino Real |
| Peter J. Kirk | San Diego, CA 92130 |
| Fish & Richardson P.C. | Telephone: (858) 678-5070 |
| 225 Franklin Street | Facsimile: (858) 678-5099 |
| Boston, MA 02110 | |
| Telephone: (617) 542-5070 | |
| Facsimile: (617) 542-8906 | |

***Attorneys for Defendant GOOGLE INC.***

3011174_2

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March 2008, a true and correct copy of the following document was filed with the Clerk of the Court using the ECF filing system which will send notification of such filing to the following:

- **GOOGLE'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIM**

Attorneys for Plaintiffs
HYPERPHRASE TECHNOLOGIES, LLC and
HYPERPHRASE INC.

Kim Grimmer, Esq.
Jennifer L. Amundsen, Esq.
Solheim Billing & Grimmer, S.C.
One South Pinckney Street
Suite 301
Madison, WI 53703
kgrimmer@sbglaw.com
jamundsen@sbglaw.com

Attorneys for Plaintiffs
HYPERPHRASE TECHNOLOGIES, LLC
and HYPERPHRASE INC.

Raymond Niro, Esq.
Niro, Scavone, Haller & Niro
181 West Madison Street, Suite 4600
Chicago, IL 60602
rniro@nshn.com


*s/Nicole Talbott Settle*
Nicole Talbott Settle

3003144_1