IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HYPERPHRASE TECHNOLOGIES, LLC and
HYPERPHRASE INC.,

      Plaintiffs,

  v.                                                                    Civil Action No. 06 C 0199 bbc

GOOGLE INC.,

      Defendant.

**GOOGLE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO FIND THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285 AND TO AWARD POST-REMAND ATTORNEYS' FEES AND EXPENSES**

## I. INTRODUCTION

Despite that the narrow remand, the settled claim construction, and the undisputed facts each pointed to one inevitable conclusion—that HyperPhrase had no good faith infringement position—HyperPhrase stubbornly pursued this case after remand. The Federal Circuit had rejected HyperPhrase's proposed construction of the key "data reference" term. HyperPhrase knew exactly how the accused AutoLink feature worked—indeed no further depositions of technical witnesses were required for the second round of summary judgment briefing. And HyperPhrase was well aware of the scores of prior art references Google found raising substantial challenges to the validity of the asserted patents. Yet instead of reasonably reassessing its case and cutting its losses, it doubled down. HyperPhrase ignored the facts and law and charged ahead fully understanding the insurmountable hurdles it faced. From that point forward, HyperPhrase engaged in a pattern of obfuscation and delay, on issues ranging from the routine to the pivotal. It reneged on prior stipulations. It equivocated on the settled claim construction. It persisted with allegations rendered baseless by clear and controlling authority. And to avoid the inevitable summary judgment, it sought to create factual disputes where there were none, unnecessarily multiplying the burdens on both Google and the Court.

These are the hallmarks of a litigant whose true interest is in using the burdens and uncertainties of the litigation process, and the risks inherent in a jury trial, to enhance its settlement leverage. There is a line of zealous advocacy, and HyperPhrase and its counsel crossed it here. This post-remand litigation conduct makes this case exceptional under 35 U.S.C. § 285, entitling Google to its reasonable attorney fees and expenses incurred in continuing to defend this case. "Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad

1

faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence."
*Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).

## II.   FACTUAL BACKGROUND

In 2006, Judge Shabaz granted summary judgment of noninfringement in favor of Google largely on his construction of the term "data reference."[1] (Dkt. No. 64.) HyperPhrase appealed that decision to the Federal Circuit, which largely affirmed. (Dkt. No. 109.) However, the Federal Circuit disagreed with a small portion of Judge Shabaz's specific application of the term "data reference" to the accused AutoLink feature, with regard to two of the five originally asserted patents, namely U.S. Patents Nos. 6,526,321 ("'321 patent") and 5,903,889 ("'889 patent"). (*Id*. at 10.)

This was far from a victory for HyperPhrase. Critically, the Federal Circuit rejected HyperPhrase's claim construction position on what "data reference" should mean. (Dkt. No. 125-02 (Federal Circuit slip. op.) at fn. 5.) Given the extensive record developed in the District Court, including in Google's earlier summary judgment filings, HyperPhrase knew exactly how the accused AutoLink technology worked and knew that, without its preferred construction, the remand simply delayed the inevitable.

With little of substance to go on, HyperPhrase chose a different path. As explained in detail below, when Google after remand sought to raise a defense that was plainly permitted by an earlier stipulation and order, HyperPhrase opposed. (*See* Dkt. Nos. 98, 110, 114, and 118.) After losing the issue in the first instance, it then re-litigated the issue when Google sought summary judgment on that same defense. (*See, e.g.,* Dkt. Nos. 127 at 1-4 and 136 at fn. 3.) That

---

[1]   Following Judge Shabaz's ruling, Google moved for attorney fees and expenses pursuant to Section 285. The motion was denied due to Judge Shabaz's opinion that Google placed too much weight on "hindsight reliance" predicated on his summary judgment determination. (*See* Dkt. No. 80.) In the current motion, Google seeks only the fees and expenses incurred since the remand from the Federal Circuit.

2

was only a part of HyperPhrase's strategy to avoid the merits on summary judgment. As to the issues on which it ultimately lost, HyperPhrase sought to obfuscate the key facts, and unnecessarily multiply the burdens on Google and the Court, by baselessly disputing Google's proposed findings of fact and offering hundreds of largely unnecessary "facts" of its own. (*See* Dkt. Nos. 131, 132, 137 and 138.) It likewise persisted in pressing theories that not only differed from or misapplied the Federal Circuit's settled construction, but which made its infringement and validity positions irreconcilable. (*Compare, e.g*. Dkt. No. 127 at 39 (modifying the hidden file infringes) to Dkt. No. 130-2 at 173 of 307 (prior art does not anticipate because it modifies hidden file).) So too did it refuse to drop its allegation of willful infringement despite clear and controlling authority from the Federal Circuit and this Court stripping this allegation of any colorable viability. (*See* Dkt. Nos. 101, 126 and 135.)

### III. ARGUMENT

#### A. The Standards for Finding an Exceptional Case Are Straightforward, Discretionary, and Fully Applicable to this Case

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." To determine whether an award of fees under this statute is appropriate, (1) the court determines whether there is clear and convincing evidence that the case is "exceptional"; and (2) if so, the court then determines whether an award of attorney fees to the prevailing party is warranted. *Cybor Corp. v. FAS Techs*., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (*en banc*); *see also Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1370 (Fed. Cir. 1999). The award of such fees is discretionary, and courts may "weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Nat'l Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996).

What constitutes an "exceptional" case is a factual, but subjective, determination:

> The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement. Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves to make a case exceptional. . . . Inadequacy of pre-filing preparation may [also] be relevant to the "exceptional" case question.

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034-35 (Fed. Cir. 2002) (citations omitted); *see e.g., Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 967 (W.D. Wis. 2008) ("Factors relevant to determining whether a case is 'exceptional' include 'closeness of the question, pre-filing investigation and discussions with defendant, and litigation behavior'"); *Brooks Furniture Mfg. v. Dutailier Int'l., Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) ("A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as . . . misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions."). In particular, where a case has been pursued in bad faith which results in extending or expanding the litigation, a case may be found exceptional. *See Taurus IP*, 559 F. Supp. 2d at 967 ("a case may be exceptional where the losing party has 'prolong[ed] litigation in bad faith.'"). The pertinent inquiry under Section 285 is whether the plaintiff knew or should have known that its claims were baseless but pursued them anyway. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1330 (Fed. Cir. 2003).

A district court must examine all of the evidence of misconduct and bad faith in order to make the appropriate determination under Section 285. *See Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000) ("In assessing whether a case qualifies as

4

exceptional, the district court must look at the totality of the circumstances."); *accord Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1357-1358 (Fed. Cir. 2008).

    **B.    HyperPhrase's Actions Post-Remand Reflect A Pattern Of Conduct Of Obfuscation And Vexatious Multiplication Of Proceedings, Which Amounts To Bad Faith Litigation Misconduct**

        **1.    HyperPhrase's Baseless Opposition To Google's Efforts to Amend the Pleadings**

Almost from the outset of the post-remand proceedings, HyperPhrase and its counsel embarked on a pattern of obfuscation and vexatious multiplication of proceedings. Illustrative of this is what Google faced when it sought to add its license defense after the mandate issued.[2] (*See* Dkt. No. 98 at 4 and Dkt. No. 114 at 3-4.) This should have been a routine and ministerial process, given that HyperPhrase had previously stipulated—as a condition to putting the case in a procedural posture that would allow it to appeal Judge Shabaz's summary judgment determination—that if the case were remanded, Google could amend the pleadings to add "any" new claims. (Dkt. No. 71.) Judge Shabaz entered that stipulation, and dismissed the case.

Instead, HyperPhrase opposed. Its position was specious. HyperPhrase contended that Google had delayed unnecessarily in raising this defense. But the defense was based on a license agreement that HyperPhrase had failed to produce to Google until just days before Judge Shabaz threw the case out in 2006. According to HyperPhrase, notwithstanding the express stipulation permitting Google to raise "any" new defenses after remand, and notwithstanding that Judge

---

[2]     Google's amended pleadings added a license defense in view of the combination of the alleged infringing Google Toolbar and Microsoft's Internet Explorer web browser, which was implicated in HyperPhrase's infringement contentions (HyperPhrase had licensed the patents to Microsoft). HyperPhrase did not timely produce the license in this litigation and had a significant financial interest in not only delaying its production but keeping the license defense out of the case. This is because data Google produced showed that such a license would have reduced HyperPhrase's damages claims by at least 90%. (*See* Dkt. No. 103 at 31-32 (HyperPhrase's infringement contentions and damages claims) and Dkt. No. 114 (timing).) It was also manifestly unfair for HyperPhrase to seek a royalty on the combination of the Google and Microsoft technology where an allegedly necessary step in HyperPhrase's infringement contentions was performed by Microsoft technology HyperPhrase had already licensed. (*See* Dkt. No. 114 at 6-7 and Exhibit 8 (highlighting HyperPhrase's "browser" infringement theory.)

Shabaz had dismissed HyperPhrase's case, Google should have raised its new license defense during the pendency of HyperPhrase's appeal. HyperPhrase's position was completely without merit. The issue went to a contested motion, and HyperPhrase lost on the basis of the stipulation. (Dkt. No. 118)

That should have been the end of the matter, but it was not. When Google then sought summary judgment on the basis of this defense (Dkt. No. 103 at 29-32), HyperPhrase sought to re-litigate the issue. This time HyperPhrase relied on the "mandate rule."[3] This argument was not only far too late, but it lacked merit for the same reason as HyperPhrase's other arguments in that HyperPhrase persisted in ignoring the dispositive nature of the earlier stipulation— suggesting that Google was free to add a defense upon which the court was not permitted to make a merits determination. (*See* Dkt. Nos. 127 at 1-4 (HyperPhrase opposition), 136 at fn. 3 (Google reply), and 141 at 11 (Court opinion: "This position is meritless.").)

Where as here a party's litigation conduct results in needless expense by its adversary or requires its adversary to re-litigate issues already decided, attorneys' fees should be awarded. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 968 (W.D. Wis. 2008) (awarding fees to an accused infringer where plaintiff breached a prior settlement agreement and filed repetitive motions on the same arguments); *see also Serrano v. Tellular Corp.*, 111 F.3d 1578, 1585 (Fed. Cir. 1997).

> **2. HyperPhrase Sought to Obfuscate Agreed-to Facts by Disputing All of Google's Findings and by Offering Extensive and Needless Findings of Its Own**

HyperPhrase and its counsel's efforts to obfuscate and unnecessarily and vexatiously multiply the proceedings extended also to the merits, as reflected in its baseless disputing of

---

[3] The "mandate rule" limits the scope of issues that may be litigated on remand by the appellant (here HyperPhrase). It is discussed in the parties' earlier briefing. *See, e.g.*, Dkt. No. 136 at fn. 3 (citing *Engel Indus. Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382-83 (Fed. Cir. 1999)).

nearly all of Google's noninfringement and invalidity proposed findings of fact, coupled with its presentation of 399 of its own findings. (*See* Dkt. No. 132 (nos. 7-156 concerned infringement).) HyperPhrase's Additional Statement of Proposed Findings of Fact and Conclusions of Law ("APFOF") were plainly designed to create the impression of disputes where there were none, and were in many cases in violation of the Court's procedure. (*See* Dkt. Nos. 9 at 5-6, 132 and 138.) These additional findings were completely unwarranted since they: (1) raised no genuine issues of material fact, (2) reflected HyperPhrase's failure to respond to Google's proposed findings, and (3) were largely unsubstantiated. In fact, HyperPhrase's summary judgment oppositions did not contain a single cite to its APFOF, yet Google and the Court were put to the meaningless and incredibly time-consuming and complex burden of sorting through and responding to all 399 them, as well as to HyperPhrase's largely unfounded objections to Google's. (*See* Dkt. Nos. 126-128.) Moreover, HyperPhrase's APFOF often either disputed or merely responded to Google's proposed findings by rewriting them with objectionable claim language or made up terms. For instance, in HyperPhrase's APFOF offered multiple constructions of "data reference" after the Federal Circuit had explicitly construed the term. (*Id.*, *e.g.*, HyperPhrase proposed finding nos. 171 ("a 'data reference' is a 'unique phrase or word'"), 199 (correct definition for data reference), 266 ("a 'data reference' is a unique phrase or word' which is meant to be read to understand the record"), 267 ("data references" do not "encompass hidden programming codes").)

In *Third Wave Techs., Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991, 1015-18 (W.D. Wis. 2005), this Court awarded fees due *inter alia* to frivolous responses to findings of fact and opposing counsel's "disregard for professionalism, civility and simple courtesy." *See also Am. Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 996-997 (W.D. Wis. 2002) (fees granted

7

to accused infringer for plaintiffs' "dilatory tactics" and inadequate discovery responses). These attempts to obfuscate the record, rather than genuinely dispute it, to survive summary judgment was litigation misconduct.

### 3. HyperPhrase Rewrote The Federal Circuit's Settled Claim Construction of "Data Reference"

So too did HyperPhrase and its counsel persist on remand in muddying the waters on the key "data reference" claim term. (*See, e.g.,* Dkt. No. 125-19 (Niro Decl. Ex. R) at 18.) The term "data reference" was a centerpiece of HyperPhrase's appeal. However, the Federal Circuit declined to adopt HyperPhrase's proposed construction. (Dkt. No. 125-05 at fn. 5.) That should have been the end of it, but it was not. On remand, HyperPhrase continued to shade and spin this construction, and its application, in order to avoid the substantial invalidity problems presented by the Federal Circuit's construction. Ironically, HyperPhrase's appeal to the Federal Circuit regarding Judge Shabaz's construction of "data reference" was that it was too narrow and it imported limitations into the claims. (*See, e.g.,* Exhibit 1 (HyperPhrase Appeal Reply Br.) at 4-7 (arguing the construction was too narrow); *see also id*. at 19 (complaining about importing limitations into the claims).) Yet once HyperPhrase got what it asked for (a broader construction) and was forced to deal with the inevitable invalidity issues on remand it back peddled. HyperPhrase had no choice but to *narrow* the broad construction it received by "interpreting" it so that it would not cover operation on text hidden from a user—which, unfortunately for HyperPhrase's infringement position, is exactly how Google's accused product

AutoLink operates and which was another ground upon which this court could have independently thrown the entire case out. (*See* Dkt. No. 136 at 4-6.)[4]

| Term: | Construction: | HyperPhrase's Various Constructions: |
|---|---|---|
| "data reference" | Federal Circuit: A unique phrase or word used in a record to refer to another record or record segment and that a data reference may refer to one or more than one record. | **February 11, 2008 (Thompson Suppl. Rpt. served after remand and uses three different constructions):** Under any claim construction, the ISBN number itself in AutoLink qualifies as a DR or data reference. First, under the plain words of the patent claims, the ISBN number is a "reference" to "data"-just like in the patents, it is a string that becomes hyperlinked as anchor text in an anchor tag. Second, it is "a unique phrase or word used in a record to refer to another record or record segment" (Google's construction) and it is a "key word or phrase that may be parsed from a record, temporarily stored, and used in the process of creating a link to another record (HyperPhrase's construction). (Dkt. No. 129-04 at 20 of 37.) **April 11, 2008 (after Google summary judgment motion filed and uses a fourth construction**): This term has been defined by the Federal Circuit in this case as follows: A unique phrase or word which may be used in a record to refer to another record or record segment, and a data reference may refer to one or more than one record. *See* Niro Decl., Ex. [A], U.S. Court of Appeals for the Federal Circuit Opinion, Dec. 26, 2007, p. 10. **Consistent with the Federal Circuit's opinion, HyperPhrase believes that a "data reference" is the text in a record normally displayed for a typical user to read and not hidden computer codes**. (Niro Decl. Ex. R (Dkt. No. 125-19) at 18 (emphasis added).) |

These tactics put Google to the burden of addressing and debunking every attempted end-runs around the Federal Circuit. Indeed, it is remarkable that HyperPhrase would treat the Federal Circuit's construction so cavalierly given its strident (and incorrect) view that the

---

[4] The Court found that Google did not infringe the '889 patent for every one of the three independent bases Google advanced in its opening brief, (Dkt. No. 103 at 8-15) including for the reason that AutoLink operated on the separate, hidden DOM (Dkt. No. 141 at 18). Though this opinion was based on another claim term, HyperPhrase should have known it was equally not satisfied under HyperPhrase's new "data reference" construction.

"mandate rule" precluded Google's license defense. *See* Dkt. No. 127 (HyperPhrase Opp. to Google's SJ motion) at 3, citing *Engel Indus.*, 166 F.3d at 1382-83 and *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008). "[A] case may be exceptional where the losing party has 'prolong[ed] litigation in bad faith.'" *Taurus IP*, 559 F. Supp. 2d at 967. Presenting new claim constructions after the Federal Circuit has construed the key term and shifting both infringement and validity positions based on these modified constructions justifies finding a case exceptional. *See e.g.*, *Am. Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 996-997 (W.D. Wis. 2002); and *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 534 F. Supp. 2d 224, 226-227 (D. Mass. 2008) (finding that the failure to accept the Federal Circuit's claim construction governing the case can lead to a finding of exceptional case).

Increasingly, courts have found a case exceptional when one party refuses to apply the Court's construction of a relevant term. For instance, in *Medtronic Navigation, Inc. v. BrainLab Medizinische Computersystems GmbH*, the district court found the case exceptional under 35 U.S.C. § 285 when the patentee failed to make an objective assessment of its case in view of the court's claim constructions and counsel instead chose to press on and pursue a strategy of distorting those settled claim constructions. No. 78-CV-01072, 2008 U.S. Dist. LEXIS 13483, at *18-19 (D. Colo. Feb. 12, 2008). In *Medtronic*, the court even made the patentee and its lawyers liable for fees. *Id*. at *34. When a party and its counsel continually shift positions and prolongs litigation by seeking to distort settled claim constructions, a finding that the case is exceptional is warranted. *Id*. at *30-31. This is particularly true where the construction at issue has been appealed to and settled by the Federal Circuit, and even more egregious, as is explained below, because given what HyperPhrase knew about how AutoLink operated (i.e., on "hidden text"), if its somehow validity saving construction was correct, then Google could not infringe the patents,

which is no doubt why HyperPhrase took inconsistent claim construction positions in the summary judgment briefing—a narrow one for validity and broader one for infringement.

### 4. HyperPhrase's Infringement Expert Offered Multiple Opinions, Some Late in the Litigation, Each Containing New Theories

HyperPhrase's shifting positions regarding claim construction were reflected in the numerous and inconsistent positions it took on infringement and validity. This increased Google's legal expenses following remand, and needlessly complicated the summary judgment briefing both on noninfringement and invalidity.

HyperPhrase's opposition filings totaled 1200 pages, nearly half of which were devoted to expert declarations. A set of issues that had already been addressed once on summary judgment, and once by the Federal Circuit, does not warrant this sort of deluge. The issues had been crystallized, and non-infringement was clear.

For example, in Dr. Thompson's timely 2008 supplemental expert report (his third report, filed after remand) he failed to address Google's noninfringement argument regarding AutoLink's operation on hidden text (the DOM file -- a basis for the Court's ultimate determination of noninfringement), even though Google had made this argument in 2006. (Dkt. No. 129-4 (Thompson 2008 report; the word "DOM" does not even appear).) HyperPhrase and Dr. Thompson instead waited until after Google filed its post-remand summary judgment motion to address this issue, when they should have assessed the viability of HyperPhrase's infringement claims upon remand, and certainly by Dr. Thompson's third expert report. Furthermore, HyperPhrase's final infringement position conflicted with its sole employee, named inventor, and substitute validity expert Carlos de la Huerga's opinion that the claims could not cover modifying hidden computer codes (*compare* Dkt. No. 127 at 39 (modifying the hidden DOM codes in the accused product infringes) to Dkt. No. 130-2 at 173 of 307 (prior art does not

anticipate because it modifies hidden computer codes—as like AutoLink operates on the hidden DOM codes).)

A plaintiff that continually shifts theories, or that maintains multiple inconsistent positions at the same time, particularly on claim constructions that are the law of the case, and who needlessly multiplies its infringement theories in order to maintain its case, acts in bad faith. *Taurus IP* at 967, citing *Eltech*, 903 F.2d at 809-10 ("A plaintiff asserting patent infringement while remaining 'manifestly unreasonable in assessing infringement' acts in bad faith that may be grounds for finding a case to be 'exceptional.'").

### 5. HyperPhrase Continued to Pursue Its Willful Infringement Allegation After Changes in Law Foreclosed Such A Finding

HyperPhrase also steadfastly maintained its untenable willful infringement allegation after remand. During pendency of the appeal in this case, the Federal Circuit in a landmark decision overruled 20+ years of authority on willful infringement and imposed on the patentee a significantly heightened two-part test for willfulness requiring clear and convincing evidence if "objective recklessness" and that this objectively-defined risk "was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech, LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007). There is no way HyperPhrase could meet that standard here, particularly where Google prevailed on summary judgment of noninfringement in a strongly worded opinion by an Article III judge. Indeed, on very similar facts, Judge Shabaz applied *In re Seagate* in rejecting a willfulness allegation after summary judgment had been granted but was later overturned by the Federal Circuit. *Franklin Elec. Co. v. Dover Corp.*, No. 05-CV-598, 2007 U.S. Dist. LEXIS 84588 (W.D. Wis. Nov. 15, 2007).

Google approached HyperPhrase prior to filing its summary judgment motions and informed it that Google would be filing a summary judgment of willfulness unless the

willfulness claims were withdrawn. HyperPhrase offered no response.[5] This forced Google to seek summary judgment on this issue as well. (*See, e.g.,* Dkt. Nos. 102 (Google brief), 126 (HyperPhrase opp.) and 135 (Google reply).) While HyperPhrase's true motives are known only to it, when one looks at its refusal to drop this issue, coupled with it prolix opposition to Google's other summary judgment motions, one could fairly conclude that its true desire was to "get to the jury at all costs" by unduly, unnecessarily, and unreasonably complicating the record and issues that the Court had to address on summary judgment. *See Medtronic Navigation*, 2008 U.S. Dist. LEXIS 13483, at *30-33 (sanctioning plaintiff and its counsel for failing to reassess its case in view of settled law).

### C. The Court Should Exercise Its Discretion and Award Google Its Reasonable Attorneys' Fees and Expenses

When determining whether a case is exceptional "the district court must look at the totality of the circumstances." *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000); *see also Nilssen* 528 F.3d at 1357-1358. District Courts have wide discretion to assess attorneys' fees as a sanction when a party acts in bad faith, vexatiously, wantonly or for oppressive reasons. *Id.*; *see also Mathis v. Spears*, 857 F.2d 749, 757-58 (Fed. Cir. 1988). HyperPhrase's post-remand actions, when considered under "the totality of circumstances" standard and path and pattern of conduct identified above, are litigation misconduct that make both the case exceptional and warrant exercise of the Court's discretion to award fees.

---

[5] HyperPhrase's counsel was well aware of this change in the law because over seven weeks before Google filed its summary judgment motion of no willfulness, lead counsel for HyperPhrase lost a portion of a Federal Circuit decision that took pains to note this change in the law, and remanded for a redetermination of willfulness under the new standard should liability be found. *See Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. Appx. 284, 291 (Fed. Cir. 2008).

The underlying goals of Section 285, which include the prevention of injustice, deterrence and compensation, would all be satisfied here if fees were awarded, and doing so would protect future defendants in this Court from similar litigation misconduct. Upon a finding that Google is entitled to fees and expenses, Google will submit a detailed accounting of the relevant fees and expenses, which Google estimates to be approximately $500,000.

## IV. CONCLUSION

For the reasons provided above, Google respectfully requests that this Court find this case exceptional and enter an order awarding Google its attorneys' fees and expenses pursuant to 35 U.S.C. § 285.

Dated: January 23, 2009

By:    *s/James D. Peterson*
James A. Friedman
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: (608) 257-3911

Facsimile: (608) 257-0609

*Of counsel:*
Jason W. Wolff
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Frank E. Scherkenbach
Kurt L. Glitzenstein
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

*Attorneys for Defendant Google, Inc.*