IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HYPERPHRASE TECHNOLOGIES,       )
LLC, and HYPERPHRASE INC.,      )
                                )
            Plaintiffs,         )
                                )       Civil Action No. 06-C-0199-BBC
        v.                      )
                                )
GOOGLE INC.,                    )
                                )
            Defendant.          )

**HYPERPHRASE'S BRIEF IN OPPOSITION
TO GOOGLE'S "MOTION TO FIND THIS CASE EXCEPTIONAL
AND TO AWARD POST-REMAND ATTORNEYS' FEES AND EXPENSES"**

Dockets.Justia.com

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................... 1

II.     THE FEDERAL CIRCUIT'S DECISION
        AND SUBSEQUENT EVENTS IN THIS COURT ............................................. 2

        A.      The Federal Circuit Decided Only One Issue Of Claim Construction ....... 2

        B.      The Federal Circuit Did Not Decide The
                Fact Issues Of Infringement Of The '889 And '321 Patents ..................... 3

        C.      After Remand, Google Asserted A Four-Year-Old
                "License" Defense And Eight Claim Interpretation Issues ...................... 3

        D.      This Court Found Non-Infringement Based
                On Five New Claim Construction Holdings ............................................. 6

        E.      This Court Did Not Rule On Any Issues
                Relating To Invalidity, Prior Art, Willful Infringement
                Or The Viability Of Google's Newly-Asserted "License" Defense .......... 7

III.    TITLE 35 U.S.C. § 285 REQUIRES
        "CLEAR AND CONVINCING" PROOF, NOT SPECULATION ...................... 8

IV.     GOOGLE'S OWN ACTIONS BELIE ITS
        HINDSIGHT ARGUMENT THAT "NON-INFRINGEMENT
        WAS CLEAR" AFTER THE FEDERAL CIRCUIT'S DECISION ..................... 9

V.      GOOGLE'S ALLEGATIONS OF
        "OBFUSCATION AND DELAY" ARE UNFOUNDED .................................. 12

        A.      HyperPhrase Opposed Google's "License" Defense (Google Br. 5-6) .... 13

        B.      HyperPhrase Disputed Google's
                Proposed "Findings Of Fact" (Google Br. 6-8) ....................................... 14

        C.      HyperPhrase Allegedly "Rewrote"
                The Definition Of "Data Reference" (Google Br. 8-11) ......................... 15

        D.      HyperPhrase's Infringement Expert Supposedly
                Offered "Multiple Opinions" (Google Br. 11-12) ................................... 16

E.      HyperPhrase "Continued To Pursue Its
Willful Infringement Allegation" (Google Br. 12-13) ............................ 17

F.      Google's Accusations Do Not Add Up To An "Exceptional Case" ........ 17

VI.     THE CASES GOOGLE CITES DO NOT SUPPORT ITS POSITION .............. 19

VII.    CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

American Standard, Inc. v. York Int'l Corp.,
244 F.Supp.2d 990 (W.D. Wis. 2002) ............................................................ 21

Ardisam, Inc. v. Ameristep, Inc.,
2005 U.S. Dist. LEXIS 26865 (W.D. Wis. Nov. 3, 2005) ............................... 16

Becton Dickinson & Co. v. Syntron Bioresearch, Inc.,
1998 U.S. Dist. LEXIS 22082 (S.D. Cal. Dec. 19, 1998) ......................... 15, 16

Brooks Furniture Manufacturing Inc. v. Dutalier International, Inc.,
393 F.3d 1378 (Fed. Cir. 2005) ................................................................ 8, 18

Computer Docking Station Corp. v. Dell, Inc.,
519 F.3d 1366 (Fed. Cir. 2008) ................................................................ 8, 18

Computer Docking Station Corp. v. Dell, Inc.,
547 F. Supp. 2d 948 (W.D. Wis. 2007) .................................................... 11, 18

Cybor Corp. v. FAS Technologies, Inc.,
138 F.3d 1448 (Fed. Cir. 1998) ..................................................................... 11

Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,
534 F. Supp. 2d 224 (D. Mass. 2008) ............................................................ 20

Epcon Gas Systems, Inc. v. Bauer Compressors,
279 F.3d 1022 (Fed. Cir. 2002) ..................................................................... 20

HyperPhrase Technologies, LLC v. Google, Inc.,
260 Fed. Appx. 274 (Fed. Cir. 2007) ........................................ 2, 3, 4, 6, 9, 20

Frank's Casing Crew & Rental Tools, Inc. v. Weatherford International, Inc.,
389 F.3d 1370 (Fed. Cir. 2004) ..................................................................... 18

Johns Hopkins University v. Cellpro, Inc.,
152 F.3d 1342 (Fed. Cir. 1998) ..................................................................... 15

Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems GmbH,
2008 U.S. Dist. LEXIS 82934 (D. Colo. Sept. 30, 2008) ............................... 19

Rohm & Haas Co. v. Crystal Chemical Co.,
736 F.2d 688 (Fed. Cir. 1984) ...................................................................... 18

In re Seagate Technologies, LLC,
497 F.3d 1360 (Fed. Cir. 2007) ............................................................... 7, 17

Stephens v. Technology International,
393 F.3d 1269 (Fed. Cir. 2004) ...................................................................... 8

Taurus IP, LLC v. Daimlerchrysler Corp.,
559 F. Supp. 2d 947 (W.D. Wis. 2008) ...................................................... 20

Third Wave Technologies, Inc. v. Stratagene Corp.,
405 F. Supp. 2d 991 (W.D. Wis. 2005) ...................................................... 21

Vehicle IP, LLC v. General Motors Corp.,
2008 U.S. Dist. LEXIS 43426 (W.D. Wis. June 2, 2008) .................. 11, 12, 19

## FEDERAL STATUTES

35 U.S.C. § 285 .................................................................. 8, 11, 12, 13

## MISCELLANEOUS

"Empirical Analysis of the Federal Circuit's Claim Construction Trends,"
16 Berkeley Technology LJ. 1075 (2001) ...................................................... 11

# I.     **INTRODUCTION**

Virtually ignoring the December 26, 2007 holding of the Federal Circuit that disputed issues of fact remained for decision, Google begins by adopting the slang of a Las Vegas casino to unleash a torrent of invective, complaining that HyperPhrase "doubled down" instead of "cutting its losses" (Google Br. 1).   Google accuses HyperPhrase of "ignor[ing] the facts and law and charg[ing] ahead fully understanding the insurmountable hurdles it faced" and "multiplying the burdens on both Google and the Court" (Google Br. 1)   At the same time, according to Google, HyperPhrase was "engag[ing] in a pattern of obfuscation and delay" (Id.).  Despite the December 26, 2007 decision of the Federal Circuit finding that material issues of fact existed concerning infringement under the Federal Circuit's claim construction, according to Google, "non-infringement was clear"  (Google Br. 11).    HyperPhrase's "true desire [according to Google] was to 'get to the jury at all costs' by unduly, unnecessarily, and unreasonably complicating the record and issues that the Court had to address on summary judgment" (Br. 13).

Google's attorney argument falls far short of clear and convincing evidence that HyperPhrase's infringement claims under the '889 and '321 patents were "objectively baseless," or that HyperPhrase somehow "engaged in a pattern of obfuscation and delay" while simultaneously "charg[ing] fully ahead" – a neat trick in itself.  As shown below, Google's assertion that "non-infringement was clear" despite the Federal Circuit's *rejection* of Google's proffered claim interpretation is belied by Google's own actions following the Federal Circuit's decision.   And Google's litany of complaints about alleged vexatious litigation conduct are premised not on what this Court actually held in

1

its 31-page summary judgment decision on September 30, 2008 (Document 141, Exhibit 1), but rather on Google's ideas of what this Court should have decided – rulings this Court never made.

## II.     THE FEDERAL CIRCUIT'S DECISION AND SUBSEQUENT EVENTS IN THIS COURT

Google denigrates the Federal Circuit's December 26, 2007 decision which began this new round of litigation as "far from a victory for HyperPhrase" (Google Br. 2). Indeed, to read HyperPhrase's brief, one would think that the Federal Circuit's decision was a triumph for Google, after which nothing remained for HyperPhrase but to "cut its losses," in Google's phrase, and give up. That is not so.

### A.     The Federal Circuit Decided Only One Issue Of Claim Construction

In fact, the Federal Circuit considered only one claim term definition. HyperPhrase Technologies, LLC v. Google, Inc., 260 Fed. Appx. 274, 278, 2007 U.S. App. LEXIS 29796, *10 (Fed. Cir. 2007) (unpublished). After extensive analysis, the Federal Circuit *rejected* Google's proffered claim interpretation (which was the same as this Court's initial interpretation). 260 Fed. Appx. at 280, 2007 U.S. App. LEXIS 29796 at *15. The Federal Circuit went on to devise its own claim interpretation, different from those suggested by either party. Id. Turning to the issue of infringement, the Federal Circuit held that "the district court erred in its infringement analysis by finding that AutoLink does not use data references ..." 260 Fed. Appx. at 281, 2007 U.S. App. LEXIS 29796 at *17. "Since tokens may refer to multiple possible records but still be 'data references' under the correct claim construction, [the district court's] error is not harmless." 260 Fed. Appx. at 281, 2007 U.S. App. LEXIS 29796 at *18.

**B.      The Federal Circuit Did Not Decide The
            Fact Issues Of Infringement Of The '889 And '321 Patents**

Turning to the issue of infringement, the Federal Circuit next rejected Google's non-infringement argument that its tokens could not be "data references," holding instead that AutoLink "tokens *are* 'data references' within the meaning of the asserted claims." 260 Fed. Appx. at 281, 2007 U.S. App. LEXIS 29796 at *19 (emphasis in original).  The Federal Circuit then remanded the case to this Court with the following instruction:

> [T]he issue of whether AutoLink infringes the asserted claims of the '889 and '321 patents must be remanded to the district court.  It is unclear from the record on appeal whether AutoLink meets all of the remaining elements of any of the asserted claims of these patents because the "data reference" limitation was the only limitation that the district court discussed in its infringement analysis and the only limitation discussed in detail in the parties' briefing on appeal.  We thus cannot determine if AutoLink does not infringe because it does not meet other limitations of the claims.  Therefore, ***we must remand so the district court can evaluate whether AutoLink infringes the asserted claims of the '889 and '321 patents under the correct claim construction of "data reference."***

260 Fed. Appx. at 281, 2007 U.S. App. LEXIS 29796 at *19 (emphasis added).

**C.      After Remand, Google Asserted A Four-Year-Old
            "License" Defense And Eight Claim Interpretation Issues**

Faced with the Federal Circuit's ruling that "tokens *are* 'data references' within the meaning of the asserted claims" and evidently alarmed by the Federal Circuit's rejection of its non-infringement argument based on the alleged absence of "data references," after remand Google first moved this Court to amend its answer and counterclaims to add a "license" defense based on a license granted more than four years earlier by Google to Microsoft.  Although not asserted until Google's February 27, 2008 motion to amend its answer and counterclaims (Document 98), this defense was nothing new to Google's counsel.  In fact, Google's own attorneys in this case, Frank

Scherkenbach and Kurt Glitzenstein of Fish & Richardson, were the attorneys who negotiated the license on behalf of Microsoft (Exhibit 2 – letters, December 18 and 29, 2003). HyperPhrase opposed the motion, arguing that the belated appearance of such a new defense would be prejudicial. This Court held: "***Plaintiffs' argument [opposing amendment] would be compelling*** were it not for the fact that the trial date has been continued until March 16, 2009" (3/25/08 Order, p. 2, Document 118, Exhibit 3) (emphasis added). Thus, Google's license defense was rescued from being untimely only by this Court's rescheduling of discovery and trial.

Apparently not sure that its "license" defense would be permitted in this case, at the end of February 2008 (a month ***before*** this Court permitted addition of the "license" defense on March 25, 2008), Google filed a motion for summary judgment of non-infringement, supported by a 42 page long opening brief, a 34 page long reply brief, and 932 pages of declarations and other materials, including a list of 199 allegedly "uncontested" facts (Documents 100, 102, 103, 106, 107, 108, 136, 137 and 138). Google's non-infringement motion did not argue that the Federal Circuit's definition of "data reference" required a holding of non-infringement. Indeed, the Federal Circuit had already rejected that argument of Google when it held that "tokens ***are*** 'data references' within the meaning of the asserted claims." 260 Fed. Appx. at 281, 2007 U.S. App. LEXIS 29796 at *19 (emphasis in original). Instead, Google proffered eight claim construction arguments in its February 29, 2008 motion for summary judgment of non-infringement. Those arguments were as follows:

(1)     "standardized format for addressing" requires "a computer system with a number of records, on a number of databases, and a standard way to format the addresses

4

of those records in the databases" (Google's non-infringement brief, pp. 8-10, Document 103).

(2)     the "address" being "the address of the referenced record" (<u>Id.</u> pp. 11-12).

(3)     "modifying said references to said second data record to create an address" requires "that the first data record be modified to create the address of the second, referenced record" (Google's reply non-infringement brief, pp. 10-12, Document 136).

(4)     "first data record" refers to "one of the plurality of data records stored in the plurality of databases" and not "some other data record" (Google's non-infringement brief, pp. 12-15, Document 103).

(5)     "modifier reference" means "a word or phrase that further specifies a specific record or record segment" (<u>Id.</u> pp. 16-17).

(6)     the term "when" is a limitation that "requires real-time processing and precludes user intervention" (<u>Id.</u> pp. 18-25).

(7)     "subject matter tag pair" means "two matching tags, each identifying a specific subject matter"(<u>Id.</u> pp. 25-27).

(8)     "specifying reference" means "a combination of a first DR, a second DR, and a MR, or it is a combination of a DR, a first MR, and second MR" (<u>Id.</u> pp. 27-29).

Critically, Google had not presented any of these eight proposed claim interpretations to the Federal Circuit in the appeal, even though it had proposed some variations of these interpretations before the appeal. The December 21, 2006 summary judgment opinion of this Court (Document 64) which led to the appeal did not decide any of the eight

proposed interpretations, but instead was premised on the definition of "data reference," leading to the holding the Federal Circuit vacated on appeal.[1].

### D.    This Court Found Non-Infringement Based On Five New Claim Construction Holdings

Following the appeal, this Court on September 30, 2008 found non-infringement based on five new claim construction holdings defining the following claim terms:

(1)    "standardized format for addressing" (9/30/08 Order, pp. 13-16, Document 141, Exhibit 1).

(2)    "means for modifying said reference to said second data record to create an address" (Id. pp. 16-18).

(3)    "said address being operable to retrieve said second data record" (Id. pp. 18-22).

(4)    "modifier reference" (Id. pp. 23-27)

(5)    "seemingly general SR is modified by other record information which renders the SR relatively specific" (Id. pp. 27-30).

These holdings were based on variants of Google's claim interpretation arguments (though this Court did not accept all of Google's arguments wholesale. See, e.g., 9/30/08 Order, p. 27, Document 141, Exhibit 1: "The first premise of [Google's] argument is erroneous.").

---

[1]    The Federal Circuit held: "We here only review the district court's construction of the term 'data reference.'  The parties do not raise on appeal any other claim construction issue ..."  260 Fed. Appx. at 279, 2007 U.S. App. LEXIS 29796 at *10.

**E.    This Court Did Not Rule On Any Issues
         Relating To Invalidity, Prior Art, Willful Infringement
         Or The Viability Of Google's Newly-Asserted "License" Defense**

Having held that Google's AutoLink does not infringe the '889 and '321 patents because of the absence of the five specific claim elements listed directly above (9/30/08 Order, pp. 13-30, Document 141, Exhibit 1), *this Court did not rule on any of the following motions and arguments made by Google:*

(1)    Google's invalidity contentions and its arguments about prior art.

(2)    Google's argument that it is protected by HyperPhrase's license to Microsoft.

(3)    Google's assertion that "a license would have reduced HyperPhrase's damages claims by at least 90%" (Google Br. p. 5 n.2).

(4)    HyperPhrase's argument that Google's "license" argument is outside the mandate from the Federal Circuit.[2]

(5)    Google's argument that there could be no "willful infringement" because of the decision in In re Seagate Technologies, LLC, 497 F.3d 1360 (Fed. Cir. 2007).[3]

Although Google's attorney fee brief treats the foregoing issues as though this Court had decided them adversely to HyperPhrase, that is not so.

_____

[2]    This Court's March 25, 2008 Order permitting Google to amend its answer to add a "license" defense deals only with HyperPhrase's argument that belated addition of that defense would be prejudicial (3/25/08 Order, Document 118, Exhibit 3). It says nothing whatever about the scope of the Federal Circuit's mandate. This Court's only ruling concerning the scope of the mandate was that Google's non-infringement arguments were within the scope of the mandate (9/30/08 Opinion, p. 11, Document 141, Exhibit 1).

[3]    Since this Court ruled there is no infringement based on the five new claim term definitions in this Court's September 30, 2008 Order, as matters now stand there can be no "willful" infringement regardless of In re Seagate.

**III.    TITLE 35 U.S.C. § 285 REQUIRES
         "CLEAR AND CONVINCING" PROOF, NOT SPECULATION**

Under 35 U.S.C. § 285 (the only statutory basis for attorney fees asserted by Google), "exceptional" means something that is so far different than the norm that it evidences bad faith or willful, wanton and reckless misconduct. "There is a presumption that the assertion of infringement of a duly granted patent is made in good faith. Thus, the underlying improper conduct and the characterization of the case as exceptional must be established by clear and convincing evidence." Brooks Furniture Mfg. Inc. v. Dutalier International, Inc., 393 F.3d 1378, 1382 (Fed. Cir. 2005) (citations omitted). And "an exceptional case finding *is not to be based on speculation or conjecture* but upon clear and convincing evidence." Stephens v. Tech International, 393 F.3d 1269, 1276 (Fed. Cir. 2004) (emphasis added; reversing district court's "exceptional case" holding).

"When the accused infringer prevails in the underlying action, factors relevant to the inquiry include the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior." Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1379 (Fed. Cir. 2008). Here, Google does not challenge the adequacy of HyperPhrase's prefiling investigation – indeed, it could not, inasmuch as this Court denied Google's initial attempt to obtain attorney fees under 35 U.S.C. §285 (Order, 2/15/07, Document No. 80, Exhibit 4). Instead, Google complains about "litigation behavior" – but its gripes are predicated, for the most part, on speculation about what it wishes this Court had decided, rather than what this Court actually did. And Google's assertion that "non-infringement was clear" (Google Br. 11) is squarely contradicted by Google's own actions.

8

**IV. GOOGLE'S OWN ACTIONS BELIE ITS
HINDSIGHT ARGUMENT THAT "NON-INFRINGEMENT
WAS CLEAR" AFTER THE FEDERAL CIRCUIT'S DECISION**

Google now insists that after the Federal Circuit's decision, "non-infringement was clear" because "HyperPhrase had no good faith infringement position" (Google Br. 1). But, any such conclusion is belied by Google's own actions.

After the decision of the Federal Circuit rejecting Google's proffered interpretation of the claim term "data reference" and remanding the case "so the district court can evaluate whether AutoLink infringes the asserted claims of the '889 and '321 patents under the correct claim construction of 'data reference'" (260 Fed. Appx. 274, 281, 2007 U.S. App. LEXIS 29796, *19), Google asserted for the first time a "license" defense its counsel had known about for four years. Google also filed a summary judgment brief including almost a thousand pages of materials that relied on eight claim interpretation arguments on which no court had yet ruled (see Section II-C, above). Along with that summary judgment brief, Google also filed another elaborate summary judgment motion attacking the validity of the asserted claims of the '889 and '321 patents reflecting what Google now boasts were "scores of prior art references" (Google Br. 1). ("Scores of references" hardly expresses what Google actually did; in fact, Google cited a total of *2,610 prior art references* in its August 9, 2006 interrogatory response alone.) Google also argued on summary judgment that, if there was infringement, it was excused by a license granted years ago by HyperPhrase to Microsoft.

If "non-infringement was clear" after the Federal Circuit's decision, as Google now argues (Google Br. 11), there would have been no need for the Federal Circuit to remand the case for a decision on infringement at all. Google would not have needed to

proffer for the first time a "license" defense its counsel had known about for years. Nor would there have been any need for Google to press eight claim construction arguments relating to various other claim terms after the Federal Circuit's decision. Google's motion for summary judgment of invalidity, which invoked a selection of what it now calls "scores of prior art references" (actually *2,610* such references), and which involved 1,014 pages of argument and supporting materials, would have been equally unnecessary. The only reasonable conclusion is that Google itself was far from certain, after the Federal Circuit's rejection of Google's proffered interpretation of the '889 and '321 patent claims, that "non-infringement was clear," as it now insists.

Maybe non-infringement is now clear, after this Court's September 30, 2008 31-page summary judgment decision finding non-infringement on the basis of new interpretations of five other terms of the patent claims (Document 141, Exhibit 1). Surely it was not clear before then; if non-infringement was a foregone conclusion there would have been no need for this Court to write a 31-page Opinion interpreting not just one, but five claim terms for the first time on September 30, 2008, and then applying those definitions to find non-infringement.

Google's own actions testify far more clearly than the words of its attorney fee motion that non-infringement was very far from "clear" to Google before that summary judgment decision. How could non-infringement have been "clear," to use Google's word, before this Court's decision interpreting for the first time five additional claim terms?

The fact is that claim interpretation is notoriously difficult and unpredictable: even judges of the Federal Circuit frequently disagree on the proper interpretation of

patent claims. As a result, in patent infringement cases disposed of on summary judgment, the rate of reversal of district court claim interpretations is high. During the period between January 1, 1998 through April 30, 2000, "the Federal Circuit has changed the lower court's claim construction in 51% of summary judgment cases involving an express review of claim construction." Christian Chu, "Empirical Analysis of the Federal Circuit's Claim Construction Trends," 16 Berkeley Technology L.J. 1075, 1112, 1131-33 (2001); see also, Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1475-76 (Fed. Cir. 1998) ("[O]ne study shows that the plenary standard of review has produced reversal, in whole or in part, of almost 40% of all claim constructions since *Markman I.* ... [T]his reversal rate, hovering near 50%, is the worst possible.*") (Rader, J., dissenting; emphasis added). To award attorney fees based on assertion of an erroneous claim construction subsequently rejected by a district court would be unjust in light of the unpredictability of the interpretation process, because it would be an improper exercise of hindsight in the face of substantial uncertainty.

As this Court held recently in denying a motion under 35 U.S.C. § 285 for attorney fees:

> In hindsight, plaintiff's contention that laptop computers could infringe the claims of the '645 patent seems more the product of wishful thinking than a fully considered decision. ***However, hindsight is not the vantage point from which to evaluate the legitimacy of a particular litigation strategy.*** Although it seems plain now that the '645 patent does not cover the accused laptop devices in light of plaintiff's representations in the patent itself and its statements to the patent office during the application process, it did not seem self-evident at the beginning of the claim construction analysis.

Computer Docking Station Corp. v. Dell, Inc., 547 F.Supp.2d 948, 953 (W.D. Wis. 2007) (emphasis added), aff'd, 519 F.3d 1366 (Fed. Cir. 2008). See also, Vehicle IP, LLC v.

General Motors Corp., 2008 U.S. Dist. LEXIS 43426, *9-*10 (W.D. Wis. June 2, 2008) ("Defendants' exceptional case contention is based entirely on the hindsight adoption of this court' s construction of the '743 patent.  More than this is required to prove by clear and convincing evidence that plaintiff pursued this litigation in bad faith.").  This principle is even more apparent in this case, where the Federal Circuit had just changed the only claim construction definition it reviewed, substituting its own definition for the definition this Court initially established.

## V.     GOOGLE'S ALLEGATIONS OF "OBFUSCATION AND DELAY" ARE UNFOUNDED

Conspicuously absent from Google's fuming about "obfuscation and delay" (Google Br. 1) is any discussion or even acknowledgment of the actual bases on which this Court entered summary judgment of non-infringement.  On September 30, 2008, this Court's 31-page summary judgment Opinion and Order (Document No. 141, Exhibit 1) dismissed HyperPhrase's complaint for infringement of the '889 and '321 patents.  Most of that Opinion – which Google did not attach to its brief seeking attorney fees – was devoted to a series of five new legal rulings on clam construction (discussed in Section II-D, above), which were made in response to eight claim interpretation arguments never before decided by any court (see Section II-C, above).  Google made these eight arguments to this Court because they dealt with issues the Federal Circuit did ***not*** resolve in its December 26, 2007 decision.

Not one of Google's eight claim construction arguments – variants of which formed the basis for this Court's September 30, 2008 summary judgment ruling – features in its motion asking this Court to find that this case was "exceptional" under 35

U.S.C. § 285. Instead, Google now insists that it is entitled to "approximately $500,000" in attorney fees (Google Br. 14) based on arguments that do not even reflect this Court's summary judgment decision.

A.   **HyperPhrase Opposed Google's "License" Defense (Google Br. 5-6)**

Although Google attacks HyperPhrase for refusing to agree to the addition of this defense more than four years after Google's attorneys knew of the license, Google ignores this Court's statement that "***Plaintiffs' argument [opposing amendment] would be compelling*** were it not for the fact that the trial date has been continued until March 16, 2009" (3/25/08 Order, p. 2, Document 118, Exhibit 3) (emphasis added). Thus, Google's license defense was rescued from being untimely only by the court's rescheduling of discovery and trial.

Moreover, the legal viability of Google's "license" defense was never decided. After granting Google leave to assert that defense ***the Court never ruled on Google's summary judgment arguments about its alleged "license"*** in view of the non-infringement decision (see Document 124, Order postponing discovery and briefing concerning "license" until "the day after the court issues its summary judgment decision on invalidity and non-infringement," Exhibit 5). Tellingly, ***Google itself*** stipulated that "as HyperPhrase's motion notes, there is no need for the Court to reach the license issue if it finds the two remaining patents either invalid or not infringed." (Google's 4/7/08 response to HyperPhrase's motion for a new schedule for summary judgment on Google's license defense, Document 123, p. 1, Exhibit 6). Thus, ***no determination has been made*** as to whether any part of Google's activities was "licensed" and certainly no ruling on Google's assertion (which it presents as though it were settled fact) that the

13

license would have reduced damages by 90% (Google Br. p. 5 n.2)  Google's argument that the case is "exceptional" because of its "license" defense is based not on any theory on which Google prevailed, but rather upon one which was never decided.  That is far from "clear and convincing" evidence that this case is exceptional.

**B.  HyperPhrase Disputed Google's
Proposed "Findings Of Fact" (Google Br. 6-8)**

Google professes outrage that HyperPhrase dared to contest "nearly all" of Google's proposed facts and even had the temerity to present "399 of its own findings" (Google Br. 7).  But, for all its invective, Google cites ***only one*** single, solitary proposed "additional finding of fact" (proposed fact no. 171) which, according to Google, was objectionable because it supposedly "offered multiple constructions of 'data reference' after the Federal Circuit had explicitly construed the term" (Google Br. 7).  But, "data reference" was not one of the eight arguments Google proffered in its February 29, 2008 opening brief seeking summary judgment of non-infringement (See Section II-C, above). And this Court's decision does not turn on the definition of "data reference" anyway, but rather on five other, new claim interpretation holdings (see Section II-D, above).  Finally, Google's assertion that HyperPhrase's brief did not cite any additional proposed facts (Br. 7) is disingenuous: HyperPhrase's summary judgment response cited extensively and directly to the factual evidence underlying those findings (through citations to the Niro, Thompson and de la Huerga declarations and to specific documents) – just as Google's summary judgment brief did.

## C. HyperPhrase Allegedly "Rewrote" The Definition Of "Data Reference" (Google Br. 8-11)

Google next accuses HyperPhrase of "muddying the waters on the key 'data reference' claim term" (Google Br. 8). Far from being a "key claim term," however, "data reference" is not even among the five claim terms addressed in this Court's summary judgment decision (see Section II-D, above). Google's assertion that it does not infringe because it supposedly uses a "separate, hidden DOM" or "hidden text" (Google Br. 9 n.4, 11) was not accepted by this Court; the summary judgment decision says nothing whatever about "hidden DOM" or "hidden text." Google's argument magically transmutes "we should have won on this issue" to "we did win on this issue."

What HyperPhrase did with respect to "data reference" was simply to suggest applications of the Federal Circuit's definition to aspects of the infringement dispute in this case – applications which turned out not to matter, because the Court entered summary judgment of non-infringement based on other limitations of the patent claims. There was nothing improper about HyperPhrase's suggestions. Changes in a party's infringement contentions following a claim construction ruling are nothing out of the ordinary. See, e.g., <u>Becton Dickinson & Co.</u> v. <u>Syntron Bioresearch, Inc.</u>, 1998 U.S. Dist. LEXIS 22082, *46 (S.D. Cal. Dec. 19, 1998):

> *This court notes that there is nothing improper in Becton Dickinson's choice to amend the infringement contentions subsequent to the order construing the patent claims*, issued on August 11, 1998. Becton Dickinson cites *Johns Hopkins University v. Cellpro, Inc., 152 F.3d 1342, 1357 (Fed. Cir. 1998)* as standing for the proposition that after a court has construed the claims in a patent case, the "rules of the game" change, thereby allowing for amendment of the arguments in the case. In *Cellpro*, the Federal Circuit held that claims that were not argued, or relevant, prior to claim construction may well become relevant after the patent claims have been construed. See *id. at 1357.* After a jury verdict

had been rendered for the defendant in *Cellpro*, the judge construed the terms of the patent claims and granted a motion for a new trial. The Federal Circuit ruled that the District Court's decision to preclude a new argument at the second trial was error because it did not allow defendant to respond to the changes in the case brought about by the claim construction. See *id.* Further, the Federal Circuit held that even a pre-trial order did not control what issues could be later argued, or had been waived by the parties, where the claim construction made new arguments relevant. See *id.*

Becton Dickinson, 1998 U.S. Dist. LEXIS 22082, at *45-*46.

The clincher is that Google did the same thing it now berates HyperPhrase for doing: Google proposed eight definitions in support of its summary judgment motion following the Federal Circuit's December 26, 2007 decision.

### D. HyperPhrase's Infringement Expert Supposedly Offered "Multiple Opinions" (Google Br. 11-12)

Google berates HyperPhrase's expert Dr. Thompson for offering "new theories" of infringement (Google Br. 11). But, "[l]ike changes in claim construction, changes in infringement analysis are standard features of patent litigation." Ardisam, Inc. v. Ameristep, Inc., 2005 U.S. Dist. LEXIS 26865, *6 (W.D. Wis. Nov. 3, 2005). Such changes do not support an "exceptional case" finding. Id. at *6-*7.

According to Google, even though "non-infringement was clear" (at least in Google's view), there was inconsistency between Dr. Thompson's infringement analysis and Mr. de la Huerga's invalidity analysis on the subject of AutoLink's alleged "operat[ion] on the hidden DOM codes" (Google Br. 11-12). Again, however, Google's argument reflects not what this Court actually did in granting summary judgment, but rather what Google thinks it should have done. This Court never reached any issues relating to validity (9/30/08 summary judgment order, p. 30 Document No. 141, Exhibit

16

1). There was no ruling about any claim interpretation relating to prior art. Nor was there ever any ruling about "hidden DOM" or "hidden text" as it might relate to either infringement or validity.

### E. HyperPhrase "Continued To Pursue Its Willful Infringement Allegation" (Google Br. 12-13)

Google's final argument is yet another variant on "we think we should have won, therefore we did win." Google berates HyperPhrase for "steadfastly maintain[ing] its untenable willful infringement allegation after remand" (Google Br. 12). Citing <u>In re Seagate Technology, Inc.</u>, 497 F.3d 1360 (Fed. Cir. 2007), Google asserts that "[t]here is no way HyperPhrase could meet that standard here" (<u>Id.</u>). Google does not even try to explain why that is so; and this Court never decided the "willfulness" issue, because it found non-infringement. Again, Google seeks an "exceptional case" finding based on an issue on which it did not even prevail.

### F. Google's Accusations Do Not Add Up To An "Exceptional Case"

In short, Google prevailed on the merits on just one issue: non-infringement. And it did so by suggesting eight claim construction arguments (see Section II-C, above), which it never presented to the Federal Circuit and which remained uncertain until this Court's September 30, 2008 summary judgment decision (Document 141, Exhibit 1). The '889 and '321 patents are not infringed by AutoLink under this Court's decision, but those claims remain valid notwithstanding Google's attack on them. Nor is there any finding that Google's actions are covered by any license.

Google's request for a finding that this case is "exceptional," therefore, is only peripherally related to this Court's actual findings, which are that five specific claim

elements defined for the first time by this Court in its September 30, 2008 Opinion are not present in AutoLink (see Section II-D, above). For the most part, Google's argument is that it should have prevailed on other issues which this Court did ***not*** decide (see Section II-E, above), and that it is therefore entitled to half a million dollars in attorney fees. But, as this Court has held,

> the Federal Circuit has made it plain that the term "exceptional" means just that. It does not apply to miscalculation about the chances of prevailing or run-of-the-mill litigation problems. *See Rohm & Haas, 736 F.2d at 690-91* (Congress did not intend award of attorney fees to be ordinary consequence in patent suits).

Computer Docking Station Corp. v. Dell, Inc., 547 F.Supp.2d at 954, aff'd, 519 F.3d 1366 (Fed. Cir. 2008).

Moreover, when Google's inflammatory rhetoric has been stripped away, little or nothing more than a finding of non-infringement remains, and that finding is based on the construction of five claim terms by this Court on September 30, 2008. Such a holding is not sufficient to support a finding of "exceptional circumstances," still less an award of attorney fees following such a finding. "Infringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith." Brooks Furniture, 393 F.3d at 1384 (vacating district court's award of attorney fees and "exceptional case" finding); Frank's Casing Crew & Rental Tools, Inc. v. Weatherford International, Inc., 389 F.3d 1370, 1379 (Fed. Cir. 2004) (no fee award even though patent owner "persist[ed] in offering arguments dismissed by the district court's ... *Markman* Order").

These principles are particularly important here, because this Court's summary judgment decision dealt primarily with claim construction, a notoriously unpredictable topic, as this Court has held in terms equally applicable here:

> The resolution of this case turned on the court's construction of claim terms in the '743 patent. Although the construction entitled defendants to prevail, and I continue to believe that the construction was correct, the constructions were not the only plausible ones. Plaintiff's expert disagreed with the court's construction and provided reasoning for his own plausible construction. Although I found plaintiff's expert's construction unpersuasive, I do not believe it was objectively baseless.
>
> Furthermore, construction of the term "notification region" was disputed throughout this lawsuit. Construction of the term required combining the claim language and specification as well as interpreting the prosecution history of the '743 patent. If the court of appeals were to find that this court erred in its construction of a "notification region," plaintiff may yet prevail on its infringement claim.
>
> Defendants' exceptional case contention is based entirely on the hindsight adoption of this court's construction of the '743 patent. More than this is required to prove by clear and convincing evidence that plaintiff pursued this litigation in bad faith.

Vehicle IP, LLC, 2008 U.S. Dist. LEXIS 43426, at *9-*10.

## VI. THE CASES GOOGLE CITES DO NOT SUPPORT ITS POSITION

Google places primary reliance on a recent decision from the District of Colorado in Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems GmbH, 2008 U.S. Dist. LEXIS 82934 (D. Colo. Sept. 30, 2008). Fees were imposed in Medtronic because the patent owner's counsel made arguments to the jury at trial which allegedly caused the jury to disregard the district court's claim construction and "blatantly present[ed] the jury with a product to product comparison contrary to established law and the Court's cautionary instructions." Id. at *18-*19. Here, there was no jury and no "product to product comparison." Aside from not being controlling

authority here, this decision is inapposite. Moreover, it is now on appeal to the Federal Circuit (Appeal No. 2009-1058) and therefore can hardly be regarded as settled, even in the Tenth Circuit.

Google's characterization of <u>Depuy Spine, Inc.</u> v. <u>Medtronic Sofamor Danek, Inc.</u>, 534 F.Supp.2d 224 (D. Mass. 2008) is also misguided. Under <u>Depuy Spine</u>, sanctions were imposed on the defendant after defendant's counsel made arguments to the jury at trial encouraging the jury to adopt an interpretation of the patent claims that was contrary to the construction mandated by the Federal Circuit. Again, there was no jury here nor any similar fear of one party seeking to improperly influence the jury or "take advantage of the technical and legal complexities inherent in this case." <u>Id.</u> at 227.

Google also makes much of <u>Taurus IP, LLC</u> v. <u>Daimlerchrysler Corp.</u>, 559 F.Supp.2d. 947 (W.D. Wis. 2008). But in that case, the patent owner's prefiling investigation was deficient (<u>id.</u> at 967) whereas here, Google makes no such claim (nor could it, inasmuch as the Federal Circuit has already held that as of 2007, genuinely disputed issues of material fact precluded entry of summary judgment. See Section II-B, above, quoting <u>HyperPhrase</u>, 260 Fed. Appx. at 281, 2007 U.S. App. LEXIS 29796 at *19. In <u>Taurus</u>, there was also witness tampering, and the plaintiff set up a company in Wisconsin purely for "jurisdictional reasons." 559 F.Supp.2d at 968. Again, Google makes no such accusations here.

Moreover, the <u>Epcon</u> case relied on by Google is likewise inapposite. <u>Epcon Gas Systems, Inc.</u> v. <u>Bauer Compressors</u>, 279 F.3d 1022 (Fed. Cir. 2002). In <u>Epcon</u>, the Federal Circuit affirmed the district court's decision denying the defendant's motion to declare the case exceptional under § 285 when defendant's argument were based almost

entirely on allegations that the patent licensee failed to perform an adequate prefiling investigation. Again, Google has made no such argument. Like <u>Epcon</u>, this Court should use its discretion to deny Google's motion.

The other cases Google cites are no more helpful to its position. In <u>Third Wave Technologies, Inc.</u> v. <u>Stratagene Corp.</u>, 405 F.Supp.2d 991 (W.D. Wis. 2005), the court assessed attorney fees against an infringer (not against a patent owner), finding that the infringer had disobeyed court orders requiring production of documents, violated a protective order by disclosing confidential materials, proffered a "meritless challenge to plaintiff's ownership of the patents in issue," and submitted an exhibit list that showed disregard for civility and courtesy. <u>Id.</u> at 1017. No such charges are made by Google here.

Furthermore, Google's reliance on <u>American Standard, Inc.</u> v. <u>York Int'l Corp.</u> is not persuasive. 244 F. Supp. 2d 990 (W.D. Wis. 2002). This Court declared <u>American Standard</u> an exceptional case based on a jury verdict finding both non-infringement and invalidity, evasive discovery tactics on the part of the plaintiffs as well as a finding that plaintiffs failed to conduct an adequate prefiling investigation. <u>Id.</u> at 997. HyperPhrase submits that the present case is entirely factually distinct. There was no jury trial. There was no finding of invalidity here. The claims of the '889 and '321 patents, though not infringed, remain valid. There are no allegations of evasive discovery tactics on the part of HyperPhrase that would support Google's argument that this is an exceptional case. Further, there are no allegations, let alone any finding by this court, that HyperPhrase failed to conduct an adequate prefiling investigation. On these facts, there is no basis to grant Google's motion to find this case exceptional under § 285.

## VII.   <u>CONCLUSION</u>

Google's motion for attorney fees should be denied.  Google has failed to prove by clear and convincing evidence that this case was "exceptional" – indeed, its arguments rest primarily on impermissible hindsight.  And Google has offered no reasons why this Court should exercise its discretion to award fees even if this were an "exceptional" case.

Respectfully submitted,

/s/ Raymond P. Niro
Raymond P. Niro
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois  60602
(312) 236-0733
Fax: (312) 236-3137


Kim Grimmer
Jennifer L. Amundsen
SOLHEIM BILLING & GRIMMER, SC
U.S. Bank Plaza, Suite 301
One South Pinckney Street
Madison, Wisconsin  53701-1644
(608) 282-1200
Fax: (608) 282-1218


**Attorneys for HyperPhrase
Technologies, LLC and HyperPhrase, Inc.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing **HYPERPHRASE'S BRIEF IN OPPOSITION TO GOOGLE'S "MOTION TO FIND THIS CASE EXCEPTIONAL AND TO AWARD POST-REMAND ATTORNEYS' FEES AND EXPENSES"** was served and filed with the Clerk of the Court using CM/ECF system who will provide notice to the counsel listed below:

Frank E. Scherkenbach
Kurt L. Glitzenstein
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, Massachusetts 02110-2804
(858) 678-5070
Fax: (858) 678-5099
scherkenbach@fr.com
glitzenstein@fr.com

James A. Friedman
James D. Peterson
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, Wisconsin 53701-2719
(608) 257-3911
Fax: (608) 257-0609
jfriedma@gklaw.com
jpeterson@gklaw.com

Michael J. Kane
William R. Woodford
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
(612) 335-5070
Fax: (612) 288-9696
kane@fr.com
woodford@fr.com

Jason W. Wolff
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
(858) 678-5070
Fax: (858) 678-5099
wolff@fr.com

**Attorneys for Google, Inc.**

on this 13th day of February, 2009.

/s/Raymond P. Niro