IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HYPERPHRASE TECHNOLOGIES, LLC and
HYPERPHRASE INC.,

        Plaintiffs,

    v.

GOOGLE INC.,

        Defendant.

Civil Action No. 06 C 0199 bbc

**REPLY IN SUPPORT OF GOOGLE'S MOTION TO FIND THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285 AND TO AWARD POST-REMAND ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

I. SUMMARY OF REPLY ..................................................................................1

II. ARGUMENT ...................................................................................................2

    A. HyperPhrase's Willful Infringement Allegations Were Baseless.........................2

    B. HyperPhrase Neither Denies Nor Justifies Twice Litigating the Motion to Amend the Pleadings ........................................................................3

    C. HyperPhrase Obfuscated the Proposed Findings of Fact......................................4

    D. HyperPhrase Offers No Legitimate Excuse For Its Attempts to Rewrite the Federal Circuit's Settled Claim Construction of "Data Reference" ................................................................................................5

    E. HyperPhrase's Infringement Arguments Were Built Entirely on Baseless Claim Construction Positions................................................................7

    F. Google's Case Law Underscores the Relevance of HyperPhrase's Conduct To Finding this Case Exceptional.................................8

    G. The Numerous Additional Grounds of Non-infringement Further Strengthen Google's Assertion that Non-infringement Was Clear, and the Federal Circuit's Decision Does Nothing to Weaken It ...............................................................................................................9

III. CONCLUSION................................................................................................10

## I. SUMMARY OF REPLY

HyperPhrase defends its litigation tactics and the lack of merit of its positions by arguing that the Court had not yet rejected those positions and therefore, according to HyperPhrase, those positions were not frivolous. HyperPhrase cites no authority for its novel defense and there is none. HyperPhrase and its attorneys bear the responsibility for assessing its claims and not presenting or pursuing frivolous theories. Instead, HyperPhrase engaged in a pattern of litigation misconduct by maintaining its baseless willful infringement allegations, disregarding a settled claim construction, seeking to obfuscate and delay analysis of dispositive issues, and needlessly multiplying and complicating the proceedings wherever it could.

Patent cases, HyperPhrase argues, are hard, with claim construction issues reversed nearly 50% of the time. While this may be true—and perhaps due in no small part to the types of tactics HyperPhrase employed here—it hardly justifies the litigation strategy pursued by HyperPhrase on remand where the undisputed operation of the accused product and the law of the case should have counseled a different path. Simply put, HyperPhrase had no legal or good faith basis for attempting to redraft the Federal Circuit's settled construction of "data reference," not only in view of the law of the case and the mandate rule—a marquee issue in its summary judgment opposition (and not even addressed in HyperPhrase's opposition here)—but also because infringement was an impossibility under HyperPhrase's construction in view of the undisputed fact that AutoLink operated on the hidden and separate DOM file. These issues and those detailed in Google's opening brief and below, warrant an award of Google's post-remand attorneys' fees and expenses.

## II. ARGUMENT

### A. HyperPhrase's Willful Infringement Allegations Were Baseless

HyperPhrase does not dispute that *Seagate* changed the standard for proving willfulness nor does it dispute that it knew of this change in the law. And because HyperPhrase cannot justify its pursuit of a willfulness claim against Google under *Seagate*'s heightened standard for willfulness, it argues that since the Court found no infringement, the Court did not have to reach willfulness, thus it does not matter that HyperPhrase's position had no merit. Under this reasoning, the most meritless of willful infringement allegations are immunized against an exceptional case finding since there would *never* be reason for a court to determine willfulness if there is no infringement.

HyperPhrase chose to ignore in its opposition the law in this very court where Judge Shabaz granted summary judgment on this same issue and nearly identical facts. *See Franklin Elec. Co. v. Dover Corp.*, No. 05-CV-598-S, 2007 U.S. Dist. LEXIS 84588 (W.D. Wis. Nov. 15, 2007). HyperPhrase cannot justify why it continued to press its claim despite its counsel having previously lost a portion of a Federal Circuit decision that noted both this change in the law, and that "legitimate defenses to infringement claims and credible invalidity arguments" demonstrated the lack of an objectively high likelihood that a party willfully infringed. *Black & Decker, Inc. v. Robert Bosch Tool Corp*, 260 Fed. Appx. 284, 291 (Fed. Cir. 2008) ("As we stated in *Seagate*, the patentee must prove the 'infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.' Under this objective standard, both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent.") (cites omitted). It is difficult to imagine a more reasonable "legitimate defense" to willfulness than Google's non-infringement arguments, which were identified to HyperPhrase before it filed

suit,[1] and which were later adopted by an Article III judge who granted summary judgment of non-infringement in Google's favor on the same grounds. (Dkt. No. 64.) Moreover, the fact that HyperPhrase had to rewrite the settled construction of "data reference" on remand to try to survive Google's summary judgment of invalidity speaks volumes to the substantial challenge to the validity of the patents that Google raised. Despite all of this, HyperPhrase forced Google to dispose of this baseless allegation through an expensive and unnecessary summary judgment motion. (*See, e.g.*, Dkt. Nos. 101 (Google brief), 126, (HyP opp.) and 135 (Google reply).)

### B. HyperPhrase Neither Denies Nor Justifies Twice Litigating the Motion to Amend the Pleadings

HyperPhrase's response to why it litigated a procedural issue twice, after the Court found HyperPhrase's position "meritless" in the first instance, is that one of the failed arguments it used in its first attempt *might* have been compelling—if only the facts were different than they really were. Regardless of the alleged merit of HyperPhrase's original opposition to Google's motion for leave to amend, however, nothing justifies wasting time litigating this issue a second time *after* the Court decided that Google's license defense could be plead, nor does it justify raising new grounds to frivolously fight this procedural issue yet again.

Instead of justifying its conduct, HyperPhrase asserts that forcing Google to re-litigate this issue is not sufficiently "clear and convincing" evidence of an exceptional case if the Court did not ultimately decide the underlying license defense. (HyP Br. (Dkt. No. 152) at 14.) Whether the Court reached a final disposition of the license defense has nothing to do with

---

[1] *See, e.g.*, Dkt. No. 73 (Greenspoon Declaration), Exhibit H (Flachsbart Declaration) at ¶ 10 (admitting that Google informed HyperPhrase that Google did not satisfy the "data references" prior to HyperPhrase filing suit); *accord* Dkt. No. 69 (Lacavera Declaration) at ¶ 3.

whether HyperPhrase should have continued its opposition to Google's right to bring the defense, and HyperPhrase tellingly cites no case to the contrary.[2]

## C. HyperPhrase Obfuscated the Proposed Findings of Fact

The relevant point regarding HyperPhrase's 399 "Additional Proposed Findings of Fact and Conclusions of Law" was that they were designed to create the impression of disputes where none existed. HyperPhrase's opposition does not even attempt to deny this tactic, nor does it deny that the additional findings were unwarranted busy work and raised no genuine issues of material fact. Instead, HyperPhrase quibbles over how many of their findings were in fact objectionable. (HyP Br. at 14.) HyperPhrase's attempt to survive summary judgment by obfuscating the record, rather than genuinely disputing it, was litigation misconduct.

For example, there was no dispute that AutoLink operates on the DOM, and not on the web pages themselves, which was an issue of importance in the Court's summary judgment ruling. (Dkt. No. 141 at 18.) Yet HyperPhrase's response to Google PFOF No. 55 ("AutoLink inserts the anchor tag into what is called a DOM representation of the web page created by the browser, not the web page itself, and not the web page located on any server."), cleverly attempts to obfuscate the issue over by first disputing the PFOF then admitting there was no dispute ("Undisputed that AutoLink inserts the anchor tag into a DOM representation of the webpage."). (Dkt. No. 131 at 17-18 (HyP Reply to Google's PFOF).) Similarly, there was no genuine dispute

---

[2] HyperPhrase violates confidential settlement discussions with Microsoft to assert that counsel for Google was aware of the settlement in 2004. This is misdirection and was addressed in the earlier briefing on this issue, where Google pointed out that HyperPhrase: (1) used the settlement agreement in its damages report; (2) refused to produce the settlement agreement to Google until days before Judge Shabaz ruled on summary judgment; and (3) amended its infringement theory in 2008 *after remand* to include "joint infringement" by licensed users of Microsoft's Internet Explorer. (*See generally* Dkt. No. 114, and at 6-7 regarding the new "joint infringement" theory.) Whether the agreement was known before 2008 is beside the point: if HyperPhrase could add its "joint infringement" theory requiring a licensed third party products in 2008 to create an alleged direct infringement, then Google should have been permitted to defend itself against this theory using the license agreement.

4

that AutoLink does not operate in real-time (an issue the Court did not reach, but could have).
But again, this was not immediately apparent from HyperPhrase's response disputing Google
PFOF No. 56, (*id.*), which stated "if the browser user does not select the AutoLink button, then
nothing further happens and neither a first URL nor an anchor tag is created." HyperPhrase's
disingenuous "dispute" was stated as "[u]ndisputed that if the browser user does not select the
AutoLink button neither a first URL nor an anchor tag is created. Otherwise disputed." (*Id.* at
18; cites omitted.) Regardless of whether this issue was ultimately reached by the court, no
genuine dispute existed. (*See generally* Dkt. No. 137 (Google's Reply to Its PFOF) (identifying
the lack of any genuine dispute in the PFOF) and Dkt. No. 138 (Google's Response to
HyperPhrase's APFOF) at 1-2 (general objections).)

> D. **HyperPhrase Offers No Legitimate Excuse For Its Attempts to Rewrite the Federal Circuit's Settled Claim Construction of "Data Reference"**

HyperPhrase first argues that its various rewrites of the term "data reference" were
harmless because the Court did not base its non-infringement finding on them. The fact that the
Court was not deceived is no defense to HyperPhrase's attempted deception. HyperPhrase's
rewriting of the settled construction forced Google and the Court to waste resources tackling
rejected claim constructions on numerous fronts (invalidity, infringement, and the corresponding
expert reports). (*See, e.g.*, Dkt. No. 136 at 4-6.) Moreover, the exceptional case holdings do not
turn on whether the fact finder was <u>actually</u> deceived by the attempts to evade or obscure the
Federal Circuit's construction. *See, e.g., Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
534 F. Supp. 2d 224, 225-227 (D. Mass. 2008) ("The only legitimate options available to the
defendants were to proceed with a theory of the case that was consistent with the Federal
Circuit's claim construction or abandon a doctrine of equivalents defense and focus on
ensnarement and damages. Instead, the defendants elected to proceed with a defense that

5

*threatened* to mislead and confuse the jury.") (emphasis added). HyperPhrase provides no basis for distinguishing these cases because the misconduct here was directed at a judge instead of a jury, and there should be none.

Moreover, the construction of "data reference" by the Federal Circuit was the law of the case, a doctrine which "generally bars retrial of issues that were previously resolved." *AFG Indus., Inc. v. Cardinal IG Co., Inc.,* 375 F.3d 1367, 1372 (Fed. Cir. 2004) *citing Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697 (Fed. Cir. 2001). There are recognized exceptions to the law of the case doctrine, but none of them apply here, nor has HyperPhrase raised any. *See Intergraph*, 253 F.3d at 698. HyperPhrase was well aware of this "mandate rule" prohibiting it from re-litigating the Federal Circuit's claim construction, having itself improperly cited it against Google's license defense. (*See* Dkt. No. 136 at n.3 (noting this irony).)

The Federal Circuit established the meaning of "data reference" and remanded to determine the second step of the infringement analysis, the application of the rest of the claim requirements to the accused device. The case cited by HyperPhrase, *Becton Dickinson & Co. v. Syntron Bioresearch, Inc.*, dealt not with refusing to abide by the claim construction of the case, but with whether the plaintiff could change its infringement contentions following claim construction. 1998 U.S. Dist. LEXIS 22082, at *44-46 (S.D. Cal., Dec. 19, 1998). *Dickinson* provides no defense to HyperPhrase's rewrite of the Federal Circuit's claim construction.

HyperPhrase next spins its inconsistent opinions as a mere readjustment of its infringement analysis. (HyP Br. at 15.) But the inconsistency was not just in HyperPhrase's infringement allegations, it was also in its claim construction positions. And not only were HyperPhrase's claim constructions inconsistent with the prior Federal Circuit order, they were

6

internally inconsistent because HyperPhrase pursued one set of constructions of "data reference" for infringement while grasping at another to survive invalidity.

Worse still, HyperPhrase pursued its infringement claims knowing full well that under HyperPhrase's attempted validity-saving construction on remand, infringement by Google was impossible because Google operated on the hidden and separate DOM file. (*See, e.g.,* Dkt. No. 136 particularly at 4-6 (explaining in detail why Google could not infringe under HyperPhrase's new construction) and Dkt. No. 137 (Google's Reply to Its PFOF) at no. 55 (HyperPhrase disputing the PFOF but admitting: "Undisputed that AutoLink inserts the anchor tag into a DOM representation of the webpage.").) HyperPhrase makes no attempt to address this frivolity in its opposition. Instead, it resorts again to attorney argument that because the Court did not address validity, or expressly find that HyperPhrase's construction had no merit, its conduct cannot be grounds for finding the case exceptional.

HyperPhrase's elastic and inconsistent claim constructions needlessly complicated expert reports and discovery, forced summary judgment briefing on frivolous matters, and increased the time and expense of the litigation.

E. **HyperPhrase's Infringement Arguments Were Built Entirely on Baseless Claim Construction Positions**

HyperPhrase asserts that while non-infringement may be clear now, it was less than a foregone conclusion prior to summary judgment. The alleged premise for this argument is that claim construction is hard, and HyperPhrase could not have reasonably known that the Court would reject every one of HyperPhrase's proposed claim construction positions that it

7

examined.[3] In fact, however, it was plainly evident from the Court's opinion that each of these claim constructions was baseless.

On remand, the Court held that HyperPhrase's claim constructions were, for example, "unrealistically broad" and that consideration of the specification and prosecution history leads to the "inescapable conclusion" that Google's construction was correct. (*See, e.g.*, Dkt. No. 141 at 14, 19.) HyperPhrase knew or should have known that its constructions, as well as its infringement positions in general, were indefensible from even a superficial examination of the claims, prosecution history, and HyperPhrase's own infringement chart, which HyperPhrase repeatedly attached to its filings with the Court. (*See, e.g.*, Dkt. No. 141 at 19, 21; *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 809 (Fed. Cir. 1990); and Dkt. No. 129-04 (Thompson infringement charts) at 31-37). The Court found no less than three elements not satisfied in a single independent claim in the '889 patent alone. (*See* Dkt. No. 141 at 13-22.)

Regardless of whether HyperPhrase's statistics on the reversal rate of claim constructions are correct, the real issue is whether the claim construction positions taken by HyperPhrase in this case had some substantial bases. Here, not only did the Court reject HyperPhrase's constructions, even HyperPhrase could not maintain consistent claim constructions between its infringement and validity positions.

### F. Google's Case Law Underscores the Relevance of HyperPhrase's Conduct To Finding this Case Exceptional

HyperPhrase finds fault with almost every case Google uses to show the types of misconduct that are relevant to finding a case exceptional. It dismisses each case as inapposite because it examined a slightly different mix of misconduct than that presented here, and because

---

[3] HyperPhrase acknowledges that Google prevailed on five of the eight claim construction issues noted in HyperPhrase's opposition brief, and that the Court's holdings on these five issues were based on Google's claim interpretation arguments. (HyP Br. at 6.) Of the remainder, the Court

some were tried to a jury instead of a judge. HyperPhrase does not explain why these purported differences are meaningful, nor does it deny that these cases together underscore the relevance of every one of the aspects of HyperPhrase's conduct here and the fee shifting provisions of § 285. Indeed, one of the few cases that HyperPhrase takes no issue with emphasizes that "in assessing whether a case qualifies as exceptional, the district court must look at the totality of the circumstances." *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000). Each of the diverse acts of misconduct courts have looked at in the cases cited by Google, and the course of conduct by HyperPhrase here, warrant finding this case exceptional.

> **G. The Numerous Additional Grounds of Non-infringement Further Strengthen Google's Assertion that Non-infringement Was Clear, and the Federal Circuit's Decision Does Nothing to Weaken It**

Nothing in the Federal Circuit's decision indicates that non-infringement was unclear. The remand was a product of the appeals court's lack of *access* to evidence and briefing, not a lack of evidence itself. The Federal Circuit is, after all, a court of appeal and not a court of first instance. The Federal Circuit could not have held that Google did not infringe because the only issue before it was the "data reference" limitation.

HyperPhrase also ignores the fact that how AutoLink works was not genuinely in dispute upon remand, nor does it justify why it still pressed, in particular, infringement of the '889 patent, which this Court found failed to satisfy multiple limitations of the single asserted independent claim. Indeed, HyperPhrase perversely concludes that the numerous bases for this Court's summary judgment ruling somehow prove that its infringement case had merit. (*See* HyP Br. at 9-10.)

---

did not reach item 6 (real-time), nor item 7 (subject matter tag pair), but only reached item 8 (specifying reference), where it disagreed with both parties' constructions.

9

### III. CONCLUSION

For all of the foregoing reasons, Google respectfully requests that the Court grant its motion to find this case exceptional and enter an order awarding Google its attorneys' fees and expenses pursuant to 35 U.S.C. § 285.

Dated: February 23, 2009                         FISH & RICHARDSON P.C


/s/ Jason W. Wolff
Jason W. Wolff (wolff@fr.com)
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Defendant GOOGLE INC.

# CERTIFICATE OF SERVICE

I hereby certify that on the February 23, 2009, a true and correct copy of the following document: **REPLY IN SUPPORT OF GOOGLE'S MOTION TO FIND THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285 AND TO AWARD POST-REMAND ATTORNEYS' FEES AND EXPENSES** was filed with the Clerk of the Court using the ECF filing system which will send notification of such filing to counsel of record for HyperPhrase Technologies, LLC and HyperPhrase, Inc., including Raymond P. Niro, Kim Grimmer, and Jennifer L. Amundsen.

/s/ Jason W. Wolff
Jason W. Wolff