

Not Reported in F.Supp.2d, 2008 WL 192321 (N.D.Ill.)
**(Cite as: 2008 WL 192321 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Jenny RUBIN, et al., Plaintiffs-Judgment Creditors,
v.
The ISLAMIC REPUBLIC OF IRAN, et al., Defendants-Judgment Debtors,
v.
The University of Chicago, et al., Citation Third-Party Respondents.
No. 03 C 9370.

Jan. 18, 2008.

David J. Strachman, Robert S. Parker, McIntyre, Tate, Lynch & Holt, Providence, RI, Daniel A. Shmikler, Robert David Cheifetz, Sperling & Slater, Chicago, IL, for Plaintiffs-Judgment Creditors.

Laina C. Wilk, Thomas G. Corcoran, Berliner, Corcoran & Rowe, LLP, Washington, DC, Michael D. McCormick, Renee Helen Wiszowaty, Litchfield Cavo LLP, Chicago, IL, for Defendants-Judgment Debtors.

Thomas Anthony Doyle, Matthew G. Allison, Richard M. Franklin, Baker & McKenzie LLP, Hillary Paige Krantz, Freeborn & Peters, LLP, Chicago, IL, for Citation Third-Party Respondents.

### *MEMORANDUM OPINION AND ORDER*

MARTIN C. ASHMAN, United States Magistrate Judge.

**\*1** Currently before the Court is the Islamic Republic of Iran's "Motion for Clarification on Rulings Regarding Plaintiffs' Motion to Compel, or in the Alternative, Motion for Protective Order." Iran's motion asks the Court to "clarify" its discovery order of April 17, 2007, by stating that the April 17 order allowed Plaintiffs to engage in continued discovery only to the extent necessary to gather sufficient information to oppose Iran's "Motion to Declare Property Exempt" from execution, which is currently pending before the Court. In the alternative, Iran moves this Court for a protective order barring certain discovery requests by Plaintiffs relating to the Herzfeld and Chogha Mish artifact collections, as well as Plaintiffs' attempts discover all of Iran's assets within the United States. After considering the arguments of the parties, as well as a Statement of Interest prepared by the Department of Justice on behalf of the United States, the Court finds for the reasons stated below that the Plaintiffs are entitled to discovery pursuant to Federal Rule of Civil Procedure 56(f), as provided in the Court's April 17 order, and also to general discovery of Iran's assets in the United States pursuant to Federal Rule of Civil Procedure 69(a). Therefore, both prongs of Iran's motion are denied.

### I. *Background*

**A. Factual Framework**

Although the Court has recited the facts of this case several times in previous opinions, the Court will review them once more here in order to provide context for the discussion that follows. In September 2003, Plaintiffs Jenny Rubin, Deborah Rubin, Daniel Miller, Abraham Mendelson, Stuart E. Hersch, Renay Frym, Noam Rozenman, Elena Rozenman, and Tzvi Rozenman ("Plaintiffs"), obtained a default judgment against the Islamic Republic of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani, and Ali Fallahian-Khuzestani

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Dockets.Justia.com

Not Reported in F.Supp.2d, 2008 WL 192321 (N.D.Ill.)
**(Cite as: 2008 WL 192321 (N.D.Ill.))**

for damages they suffered when three suicide bombers affiliated with the terrorist organization Hamas detonated bombs in a pedestrian mall on Ben Yehuda street in downtown Jerusalem. *See Campuzano v. Islamic Republic of Iran,* 281 F.Supp, 2d 258, 261-68. Iran's liability and that of the individual defendants in that case, who were high-ranking officials of the Iranian government, was premised on the court's finding that Iran was actively funding Hamas's terrorist activities and that the bombing that injured the Plaintiffs would not have occurred without the involvement of Iran and its officials. *Id.* at 262. The *Campuzano* court found that Iran's support for Hamas brought Iran within the jurisdiction of the United States Courts pursuant to a provision of the Foreign Sovereign Immunities Act ("FSIA") that creates an exception to sovereign immunity for certain acts of "extrajudicial killing." *Id.* at 269-272. The total amount of damages awarded to the Plaintiffs in the instant case was in excess of 200 million dollars. *Id.* at 275-77, 279.

**\*2** In an attempt to enforce their judgment against Iran, the Plaintiffs instituted a citation proceeding in this Court against Citation Respondents the University of Chicago, Gil Stein, and the Field Museum of Natural History, seeking execution or attachment of Persian artifacts belonging to Iran that are currently in the Citation Respondents' possession. *Rubin v. Islamic Republic of Iran,* 349 F.Supp.2d 1108, 1110-1111 (N.D.Ill.2004) (*"Rubin I"*). These artifacts fall into three groups: the Persepolis Collection, the Chogha Mish Collection, and the Herzfeld Collection. *Rubin v. Islamic Republic of Iran,* No. 03 C 9370, 2007 WL 1169701, at \*2 (N.D.Ill. April 17, 2007) (*"Rubin III"*). The Citation Respondents resisted execution and attachment, arguing that the artifacts were immune from execution under the provisions of the FSIA governing the enforcement of judgments against foreign sovereigns. *Rubin v. Islamic Republic of Iran,* 408 F.Supp.2d 549, 551 (N.D.Ill.2005) (*"Rubin II"*).

After this Court ruled that the defense of sovereign immunity under the FSIA was personal to Iran and could not be raised by the Citation Respondents, Iran entered the case in order to file a motion before this Court asserting that the artifacts are immune from execution under the FSIA. *Rubin III,* 2007 WL 1169701, at \*1. The parties and the Court treated this motion as the equivalent of a motion for summary judgment by Iran. *Id.* The Plaintiffs opposed Iran's motion and argued that they were entitled, under Federal Rule of Civil Procedure 56(f), to further discovery in order to support their theory that the artifacts are amenable to attachment pursuant to provisions of the FSIA and the Terrorist Risk Insurance Act ("TRJA"), Specifically, the Plaintiffs sought discovery regarding whether the artifacts are "blocked" assets amenable to attachment under the TR1A or were used for commercial purposes by the University of Chicago acting as Iran's agent, rendering them amenable to attachment under the FSIA's "commercial use" exception to immunity. *Id.* at \*4-8. In its April 17 opinion, which was subsequently affirmed by Judge Manning on July 26, 2007, this Court agreed with the Plaintiffs that further discovery was needed regarding the Plaintiffs' TRIA and FSIA theories and granted the Plaintiffs' Rule 56(f) motion while declining to rule on the merits of Iran's motion. *Id.* at \*11. In the same opinion, this Court rejected Iran's argument that it had made only a "special and limited appearance" for the sole purpose of asserting its FSIA sovereign immunity defense. *Id.* at \*11-13. Therefore, the Court held that Iran was not immune from merits discovery while its motion for summary judgment was pending. *Id.* at \*12-13.

In the wake of this ruling, the Plaintiffs reiterated their demand that Iran produce documents and deposition testimony in connection with a number discovery requests that the Plaintiffs had propounded upon Iran shortly after its entry into the case. Iran objected and ultimately filed the instant motion. In its motion and the accompanying memorandum, Iran specifically objects to Plaintiffs' Deposition

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 192321 (N.D.Ill.)
**(Cite as: 2008 WL 192321 (N.D.Ill.))**

Topic 3(a) and Document Category 10(a), which seek information regarding any of Iran's assets "that are or were the subject of any proceedings brought in the Iran-United States Claims Tribunal." (Iran's Mem. at 7.) Iran also objects to Plaintiffs' Deposition Topics 2(a)-(c) and Document Categories 4-6 as they relate to the Chogha Mish collection. Iran argues that these requests seek information regarding the existence of an agency relationship between Iran and the University of Chicago and are irrelevant because the only issue concerning the Chogha Mish collection is whether it is a "blocked" asset subject to attachment under the TRIA. (Iran's Mem. at 26-27.) Next, Iran objects to Plaintiffs' Deposition Topic 3(b), which seeks testimony regarding Iran's assets that are listed in the United Stales Treasury Department's 2005 "Terrorist Assets Report," arguing that the United States is the proper deponent on that topic. (Iran's Mem. at 25.) Iran's final specific objection is to Plaintiffs' Document Categories 8 and 9, which seek information about the famed archaeologist Ernst Herzfeld, including the circumstances under which he removed artifacts from Iran and the reasons for the termination of his employment relationship with the University of Chicago. (Iran's Mem. at 27.) Iran argues that these requests are beyond the scope of discovery provided for in the Court's April 17 order because they are not necessary in order for the Plaintiffs to oppose Iran's motion for summary judgment.

**\*3** Iran also argues more broadly that it is not subject to general discovery of its assets within the United States. In support of this position, Iran maintains that the Court's April 17 order permits discovery only on topics that are relevant to the Plaintiffs' opposition to Iran's motion for summary judgment. In the alternative, Iran argues that: (a) general asset discovery is not permitted under the FSIA or the TRIA; (b) general asset discovery is barred by the executive agreement between the United States and Iran that brought an end to the hostage crisis of 1979-81, known as the Algiers Accords; (c) Iran is protected from general asset discovery by customary international law and principles of comity; (d) general discovery is inappropriate in this case because the underlying judgment is subject to question; (e) Iran was not properly served with notice of the default judgment in the underlying case and has not been properly served with the Plaintiffs' discovery requests; and (I) the provisions of the FSIA and the TRIA that the Plaintiffs rely on in attempting to enforce their judgment may be unconstitutional. For these reasons, Iran asks the Court to issue a protective order declaring that Iran is not obligated to provide general discovery regarding its assets in the United States.

**B. Legal Framework**

I. *Federal Rules of Civil Procedure*

Notwithstanding the many layers of complexity in this case, at its heart the instant motion arises out of a discovery dispute. Therefore, the Court begins by discussing the applicable procedural rules.

a. *Rule 69*

Federal Rule of Civil Procedure 69, which governs execution proceedings in the federal courts, was the subject of amendments that became effective on December 1, 2007.[FN1] Rule 69(a), the only portion of the rule relevant to this case, is now subdivided into two parts. Rule 69(a)(1) provides that:

> FN1. A fact surprisingly not addressed in either party's briefs.

A money judgment is enforced by a writ of execution .... The procedure on execution-and in proceedings supplementary to and in aid of judgment or execution-must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Fed.R.Civ.P. 69(a)(1). The second part of Rule 69(a) addresses discovery issues in execution proceedings, stating that:

In aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person-including the judgment debtor-as provided in these rules or by the procedure of the state where the court is located.

Fed.R.Civ.P. 69( a)( 2).

While the Advisory Committee Notes to the 2007 amendments indicate that the changes "are intended to be stylistic only," the separation of the section governing discovery from the section governing enforcement procedures appears to codify the distinction already recognized by federal courts between the portion of Rule 69(a) providing for discovery and the portion dealing with enforcement rules. *See, e.g., In re Clerici,* 481 F.3d 1324, 1336 n. 17 (11th Cir.2007) (interpreting pre-amendment Rule 69(a)'s requirement of state procedures to apply to the second sentence of 69(a) (governing execution procedures) and not to the third sentence (governing discovery in aid of execution)); *Consolidated Freightways Corp. of Delaware v. Kresser Motor Serv., Inc.,* No. 94 C 0323, 1995 WL 683587, at *1 (N.D.Ill. November 16, 1995) (distinguishing between rules governing enforcement procedures and rules governing discovery procedures under Rule 69(a)); *Blaw Knox Corp. v. AMR Indus., Inc.,* 130 F.R.D. 400, 402 (E.D.Wisc.1990) (same).

**\*4** Because the instant dispute involves discovery issues, the second prong of 69(a) applies, and Plaintiffs are entitled to conduct discovery "as provided in [the Federal Rules of Civil Procedure] *or* by the procedure of the state where the court is located." Fed.R.Civ.P. 69( a)( 2) (emphasis added). *See also Consolidated Freightways,* 1995 WL 683587, at *1 ("[T]he language of Rule 69(a) 'clearly contemplates that plaintiff has a choice between using the federal discovery rules and using the practice of the state.' ") (*quoting Evans v. Chicago Football Franchise Ltd. P'ship,* 127 F.R.D. 492, 493 (N.D.Ill.1989).) When, as in this case, a plaintiff chooses to use the federal rules, "the post-judgment discovery proceeds according to the federal rules governing pre-trial discovery." *Consolidated Freightways,* 1995 WL 683587, at *1 (*citing Natural Gas Pipeline Co. v. Energy Gathering Inc.,* 2 F.3d 1397, 1405 (5th Cir.1993)). This is consistent with the Advisory Committee Notes to the 1970 amendment to Rule 69(a), which state that one purpose of the rule is to assure that "in aid of execution on a judgment, all discovery procedures provided in the [federal] rules are available." FN2 It is clear, therefore, that the parameters of discovery in this enforcement proceeding are defined by the Federal Rules of Civil Procedure in conjunction with the applicable rules of substantive law, which the Court addresses in Section 2 below.

> FN2. While the rule has been amended twice since the 1970 amendment, both the 1987 amendment and the 2007 amendment make clear that the changes in those years were stylistic or technical only, and did not change the substance of the rule.

b. *Rule 26*

Federal Rule of Civil Procedure 26(b) governs the scope of discovery and represents the baseline from which the Court begins its analysis. Rule 26(b)(1) states that:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The rule "vests this Court

Not Reported in F.Supp.2d, 2008 WL 192321 (N.D.Ill.)
**(Cite as: 2008 WL 192321 (N.D.Ill.))**

with broad discretion in determining the scope of discovery, which the Court exercises mindful that the standard for discovery ... is 'widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts.' " *Scott v. Edinburg,* 101 F.Supp.2d 1017, 1021 (N.D.Ill.2000) (quoting *Craig v. Exxon Corp.,* No. 97 C 8936, 1998 WL 850812, at *1 (N.D.Ill. December 2, 1998)). Therefore, a discovery request is relevant "if there is any possibility that the information sought may be relevant to the subject matter of the action," *Rubin I,* 349 F.Supp.2d at 1111. Given the broad scope of discovery, courts seldom place significant restrictions upon the discovery process, and the burden rests with the objecting party to show that a particular request is improper. *Id.*

2. *Substantive Legal Standards*

**\*5** Because Rule 26(b)(1) allows discovery regarding "any matter ... that is relevant to the claim or defense of any party," the scope of discoverable information in any case depends on the applicable substantive law. As the instant case is a proceeding to enforce a money judgment against the government of Iran, the applicable substantive law is the law that governs execution or attachment of property belonging to foreign sovereigns-the FS1A and TRIA. Only information that may be relevant to a "claim or defense" that is cognizable under those statutes can be discovered in this case.

a. *The FSIA*

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.,* enacted in 1976, displaced an earlier regime in which the federal courts "abided by 'suggestions of immunity' from the State Department" with "a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities." *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 488, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). § 1604 of the FSIA provides that foreign states are generally immune from the jurisdiction of the courts of the United States, but that immunity is qualified by a number of exceptions that are listed in § 1605 of the statute. The district court that granted the judgment the Plaintiffs seek to enforce here found that it had jurisdiction over Iran by virtue of the exception provided in § 1605(a)(7) for extrajudicial killings committed by or supported by a "state sponsor of terrorism." *Campuzano,* 281 F.Supp.2d at 269-72. § 1606 provides that a foreign state that is not immune because it falls within one of the exceptions in § 1605 is "liable in the same manner and to the same extent as a private individual," except that it cannot be held liable for punitive damages. 28 U.S.C. § 1606.

The jurisdictional immunity provided in § 1604 of the FSIA is complemented by § 1609, which provides that "the property in the United States of a foreign state shall be immune from attachment arrest and execution," subject to a series of exceptions listed in § 1610 of the statute, 28 U.S.C. § 1609. Therefore, a plaintiffs ability to obtain a judgment does not necessarily entail the right to enforce that judgment; in some cases, the FSIA may create a right without a remedy. *See Letelier v. Republic of Chile,* 748 F.2d 790, 798 (2d Cir.1984) (finding that, because property owned by a foreign state was immune from execution, plaintiff had a right without a remedy under the FSIA), In this case, the Plaintiffs seek to enforce their judgment against Iran pursuant to the exception provided by § 1610(a) for "property in the United States of a foreign state ... used for a commercial activity in the United States." Under § 1610(a)(7), this property is amenable to execution in cases where the underlying judgment is based on 28 U.S.C. § 1605(a)(7), as is the case here. Therefore, the crucial issue with respect to the FSIA is whether Iran has property within the United States that has been used for

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

commercial activity.

*b. The TRIA*

***6** The Terrorism Risk Insurance Act, enacted in 2002 and codified at 28 U.S.C. § 1610 note, provides another mechanism for the enforcement of judgments against foreign states in cases where liability for the underlying judgment was predicated on the "state sponsor of terrorism" exception to immunity codified in § 1605(a) (7) of the FSIA. § 201(a) of the TRIA provides that "in every case in which a person has obtained a judgment ... on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) ... the blocked assets of that terrorist party ... shall be subject to execution or attachment in aid of execution ...." TRIA § 201(a), codified at 28 U.S.C. § 1610 note. "Blocked assets" are defined as "any asset seized or frozen by the United States under ... sections 202 and 203 of the International Emergency Economic Powers Act." TRIA § 201(d) (2), codified at 28 U.S.C. § 1610 note.

Executive Order No. 12,170, issued on November 14, 1979, blocked all Iranian assets within the United States. Exec. Order No. 12,170, 44 Fed.Reg. 65, 729 (Nov. 14, 1979). Executive Order No. 12,281 subsequently provided that all "properties" of Iran should be transferred according to the wishes of the Iranian government, effectively unblocking them. Exec. Order No. 12,281, 46 Fed.Reg. 7,923 (Jan. 19, 1981). The Treasury Department regulations implementing this order defined the "properties" that were unblocked as "all uncontested and non-contingent liabilities and property interests of the Government of Iran"; "contested" properties continued to be blocked. 31 C.F.R. § 535.333(a). The regulations provide that a property is "contested" if the holder of the property believes, based on the bona fide written opinion of an attorney, that Iran "does not have title or has only partial title to the asset." 31 CF.R. § 535.333(c). Therefore, with respect to the TRIA, the crucial issue in this case is whether Iran has property within the United States that was blocked in 1979 and that remained blocked because title was "contested" as that term is defined in the Treasury Department regulations.

## II. *Discussion*

In light of the substantive and procedural rules discussed in the preceding section, it would appear that the Plaintiffs are authorized by Rule 69( a)( 2) to use all of the discovery tools provided by the federal rules to seek information that meets Rule 26(b)'s lax relevancy standard because it is "reasonably calculated" to lead to the discovery of admissible evidence regarding whether Iran has property in the United States that has been used for commercial purposes (under the FSIA) or that remains blocked due to a title dispute (under the TRIA). However, Iran raises a number objections to the Plaintiffs' discovery requests. Iran has the burden of showing that the Plaintiffs' requests are improper, *Rubin I,* 349 F.Supp.2d at 1111. As a threshold matter, the Court will address the Plaintiffs' argument that Iran's motion should be denied as untimely. The Court then addresses each of Iran's objections in turn, moving from the more specific objections to the more general.

### A. Timeliness

**\*7** The Plaintiffs urge the Court to deny Iran's motion summarily. Plaintiffs argue that Iran's objections are untimely and accuse Iran of filing serial motions based on arguments that should have been raised in the context of its motion for summary judgment. (Pls.' Mem. at 4-6.) The Plaintiffs note that they served Iran with the disputed discovery requests in July and early August 2006, and argue that Iran is a year late in moving for a protective order, The Court disagrees and finds that Iran's motion is not untimely.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Plaintiffs are correct that the party moving for a protective order "must obtain the protective order before the date set by [the] Federal Rules of Civil Procedure for compliance with the discovery request." *Stewart v. Kaplan,* No. 87 C 3720, 1988 WL 10883, at *1 (N.D.Ill. February 8, 1988) (*citing* 8 Wright & Miller, Federal Practice and Procedure: Civil, § 2035, at 262-63 (1970).). However, the Court finds that Iran did raise a timely objection when it filed for a protective order on August 10, 2006. (Dkt.182.) Furthermore, while the instant motion raises objections to the same discovery requests that Iran objected to in its original motion for a protective order, the Court finds that the instant motion is not barred as a "serial" motion. At the time of Iran's first motion for a protective order, the parties and the Court were focused on discovery issues relating to the Persepolis, Herzfeld, and Chogha Mish collections and their immunity under the FSIA and TRIA. Iran appears to have been operating under the assumption that all of the discovery issues were resolved by this Court's April 17 order until the current disagreement became apparent in August 2007. (Iran's Mem. at 5.) Therefore, this case is distinguishable from those cases in which "serial" motions are filed "one at a time ... to suit a litigant's convenience." *Divane v. Krull Elec. Co., Inc.,* No. 95 C 6108, 2002 WL 31844987, at *1 (N.D.Ill. December 18, 2002). The Court has broad discretion to manage its docket and allow successive motions for "good reasons." *See Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir.1995). Because "good reasons" exist for Fran to raise the issues in this motion again, Iran's motion is not barred.

**B. Assets Listed in the 2005 Terrorist Assets Report**

Iran objects to the Plaintiffs' Deposition Topic 3(b), which seeks testimony "[i]dentifying and describing ... [a]ll assets of Iran ... referred to in the 2005 'Terrorist Assets Report' published by the United States Department of the Treasury." The relevance of this information for discovery purposes is clear: obtaining information regarding this property may enable the Plaintiffs to determine whether any of it is subject to execution or attachment under the FSIA or the TRIA. Iran's objection rests on the fact that the United States, not Iran, prepared the report, which does not specifically name any property. (Iran's Mem, at 25.) Iran also claims that, with respect to any blocked property, the United States is technically in possession because "[t]o seize or freeze assets transfers possessory interest in the property." *Smith v. Fed. Reserve Bank of New York,* 346 F.3d 264, 272 (2d Cir.2003). Therefore, Iran argues, the Plaintiffs must serve a citation on the United States and seek discovery regarding the assets in the Report from the Treasury Department. The Court disagrees.

**\*8** The fact that an executive order blocking or seizing property creates a possessory interest in the government may be relevant if and when the Plaintiffs actually seek to enforce their judgment by executing against the property listed in the Report.[FN3] At this stage of the proceeding, however, the Plaintiffs are merely seeking to discover information about the assets. The Plaintiffs, as judgment creditors, are entitled under Rule 69(a) to a "very thorough examination of the judgment debtor," *OHM Res. Recovery Corp. v. Indus. Fuels & Res., Inc.,* No. S90-511, 1991 WL 146234, at *3 (N.D.Ind. July 24, 1991), and the assets referred to in the Report belong to Iran. The fact that the United States compiled the Report is irrelevant. Iran does not argue that supplying the information poses an undue burden, which might be grounds for denying the Plaintiffs' request. *See* Fed.R.Civ.P. 26(c). Iran merely argues that the United States is in a better position to identify the properties. The Plaintiffs have no obligation to seek discovery from any other entity merely because that entity could provide the information more easily. The assets are Iran's; it is not as though Iran is a patently improper source for this information. If Iran truly cannot

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

identify the properties referred to in the Report, it may say so. If Iran can identify them, it is obligated to provide this relevant information and may not shift its burden to the United States.

> FN3. The Court notes that a "possessory interest" in an asset is not the same as actual possession, which may be more relevant for the purposes of an enforcement proceeding.

**C. Discovery Regarding the Existence of an Agency Relationship Between Iran and the University of Chicago With Respect To the Chogha Mish Collection**

Iran next objects to the Plaintiffs' Deposition Topics 2(a)-(c) and Document Categories 4-6. Iran argues that these discovery requests are improper in that they seek information regarding a possible agency relationship between Iran and the University of Chicago with respect to the loan of the Chogha Mish collection. Because the Plaintiffs seek to execute against the Chogha Mish artifacts pursuant to the TRIA's exception for blocked property rather than the FSIA's exception for property used for commercial purposes, Iran argues that the issue of agency is irrelevant. (Iran's Mem. at 26-27.) The Plaintiffs admit that they do not seek to execute against the Chogha Mish collection under the FSIA and agree that discovery regarding the existence of an agency relationship with respect to the Chogha Mish collection is irrelevant. Therefore, the Plaintiffs have withdrawn Deposition Topics 2(b) and (c) and Document Requests 5 and 6.

Notwithstanding their abandonment of the agency argument, the Plaintiffs argue that Deposition Topic 2(a) and Document Request 4 are within the scope of discovery. The Plaintiffs assert that these requests may be relevant to whether the Chogha Mish artifacts are "blocked assets" under § 201 of the TR1A because title to the artifacts is contested. The Court agrees. While Deposition Topics 2(b) and (c) clearly focus on the relationship between the parties to the loan and the use of the artifacts in the United States, Deposition Topic 2(a) relates to the "terms, conditions, nature and purpose of the loan," and may be relevant to the existence of a dispute over title to the collection. Similarly, Document Requests 5 and 6 relate to the use of the artifacts in the United States and the relationship between Iran and the University of Chicago, while Document Request 4 seeks more general information about the nature and terms of the loan that may be relevant to whether Iran's title to the artifacts is in question. Therefore, the Plaintiffs are entitled to the information requested in Deposition Topic 2(a) and Document Request 4.

**D. Document Requests Regarding Ernst Herzfeld**

*9 Iran objects to the Plaintiffs' Document Requests 8 and 9, which seek all documents pertaining to the alleged theft or unauthorized removal of artifacts from Iran by Ernst Herzfeld and documents regarding Herzfeld's employment relationship with the University of Chicago. Iran's argument appears to be that the Plaintiffs' requests are improper because the information they seek is not necessary in order for the Plaintiffs to respond to Iran's motion for summary judgment. (Iran's Mem. at 27.) The Court disagrees.

As discussed more fully in the next section of this opinion, the fact that Iran has filed a motion for summary judgment and the Court has granted the Plaintiffs' motion for additional discovery in order to respond to Iran's motion does not mean that all other discovery has been stayed. Therefore, the Plaintiffs continue to be entitled to discovery from Iran on all relevant topics. The Plaintiffs believe that Herzfeld may have illegally removed the artifacts that form the Herzfeld collection from Iran. The Plaintiffs believe that the effect of Herzfeld's

Not Reported in F.Supp.2d, 2008 WL 192321 (N.D.Ill.)
**(Cite as: 2008 WL 192321 (N.D.Ill.))**

alleged "predations" is that the artifacts in the Herzfeld collection remain the property of Iran. Therefore, documents pertaining to Herzfeld's employment and termination by the University of Chicago and his possible theft or improper removal of artifacts from Iran may demonstrate the existence of a bona fide question regarding their ownership, which in turn may be relevant to whether they are subject to execution as blocked assets under the TRIA. Because the information sought may be relevant to an issue in this case, Document Requests 8 and 9 are proper.

**E. The Court's April 17, 2007 Order**

Iran argues that the Plaintiffs' discovery requests are improper to the extent that they seek information that is not necessary in order to address the specific issues raised by Iran's pending motion for summary judgment. In making this argument, Iran relies on this Court's order of April 17, 2007, which was subsequently upheld by Judge Manning on July 26, 2007. The April 17 order dealt with Iran's motion for summary judgment, which was predicated on Iran's argument that the Persepolis, Chogha Mish, and Herzfeld collections are immune from execution as a matter of law, and the Plaintiffs' Rule 56(f) motion for a continuance to conduct further discovery in order to respond to Iran's motion. This Court held that the Plaintiffs were "entitled to discover information to support their arguments under the FSIA and the TRIA," and granted their motion to continue discovery. *Rubin III,* 2007 WL 1169701, at *1. In overruling Iran's objections to this Court's order, Judge Manning wrote on July 26, 2007, that "[the Court] recently granted the plaintiffs' requests for discovery they allegedly needed to adequately respond to a motion for summary judgment." *Rubin v. Islamic Republic of Iran,* No. 03 C 9370, 2007 WL 2219105, at *1 (N.D. Ill. July 26, 2007). In light of this language, Iran argues that the Plaintiffs are entitled only to discovery that relates to the issues raised by Iran's motion for summary judgment, i.e., whether the Persepolis, Chogha Mish, and Herzfeld collections are immune from attachment under the FSIA and TRIA.

**\*10** Iran's argument is lacking in several respects. Iran appears to assume that, with the exception of the discovery specifically allowed by the Court, discovery was automatically stayed by the filing of Iran's motion for summary judgment. This is incorrect. *See Bodnar v. John Hancock Funds, Inc.,* No. 2:06 CV 87, 2007 WL 1577914, at *2 (N.D.Ind. May 30, 2007) ("The filing of a motion to dismiss or for summary judgment by itself does not mandate a stay of discovery pending resolution of that motion."). Rather, a stay of discovery is appropriate when "the material facts are undisputed," *Walsh v. Heilmann,* 472 F.3d 504, 505 (7th Cir.2006), or when the discovery sought will not help to resolve a motion that may dispose of the claim to which the discovery relates. *See Sprague v. Brook,* 149 F.R.D. 575, 577-78 (N.D.Ill.1993).

This Court's earlier opinion and Judge Manning's opinion focused on the Plaintiffs' need for discovery regarding the immunity of the Persepolis, Chogha Mish, and Herzfeld collections. Before the Court at that time were Iran's motion to declare those specific properties exempt and the Plaintiffs' request, under Rule 56(f), for more time to carry on discovery before answering that motion. The Court granted the Plaintiffs' Rule 56(f) motion, effectively continuing Iran's motion. *See* Fed.R.Civ.P. 56(f) (authorizing the court to "order a continuance to permit ... discovery to be had"). Had Iran argued that *all* of its assets were immune from execution as a matter of law, the Court would have had occasion to address general asset discovery in its order of April 17. As the case now stands, the requests that Iran objects to-regarding assets other than the Persepolis, Chogha Mish, and Herzfeld collections---explore claims that cannot possibly be resolved by Iran's pending motion for summary judgment because they concern properties that have yet to be identified. Therefore, as to Iran's other assets, this

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

is not a situation where the material facts are undisputed-they are unknown-or where additional discovery will be rendered moot if Iran's motion for summary judgment is granted. Therefore, the Court's April 17 order does not limit the Plaintiffs to discovery related to the issues raised in Iran's motion for summary judgment.

**F. Iran's Objections To General Discovery**

The bulk of Iran's brief is devoted to a raft of arguments in support of the proposition that Iran should not be required to answer the Plaintiffs' requests for general information regarding Iran's assets in the United States. As a threshold issue, Iran maintains that it was not properly served with notice of the default judgment in the underlying case and that it has not been properly served with the Plaintiffs' requests to discover its assets. Moving on to substantive objections, Iran first argues that the Plaintiffs' attempts to obtain general discovery of Iran's assets, if successful, will create a lien on those assets in violation of the Algiers Accords. (Iran's Mem. at 7-10.) Next, Iran argues that general asset discovery is prohibited under the FSIA and the TRIA. (*Id.* at 13-17.) Iran then argues that the Court should exercise its discretion to deny general discovery because allowing such discovery would be unprecedented and would contradict principles of customary international law. (*Id.* at 18-20.) Finally, Iran argues that the Court should not allow general discovery because the underlying judgment is flawed and because Iran believes that the FSIA and the TRIA are unconstitutional. (*Id.* at 20-23.)

1. *Sufficiency of Service*

**\*11** Iran argues that general discovery is inappropriate because Iran was not properly served with notice of the default judgment that the Plaintiffs seek to enforce in this proceeding. § 1608(a) of the FSIA, which "delineates the 'exclusive procedures' for effecting service of process upon a foreign state," lists four methods for service. *Alberti v. Empresa Nicaraguense De La Carne,* 705 F.2d 250, 253 (7th Cir.1983). Because § 1608(a) "lists the methods in descending order of preference," a plaintiff must use the first option if it is possible before moving on to the second, and so on. *Doe I v. State of Israel,* 400 F.Supp.2d 86, 101 (D.D.C.2005). § 1608(e) provides that a plaintiff who obtains a default judgment must send a copy to the foreign state defendant "in the manner prescribed for service in this section." Because § 1610(c) of the FSTA prohibits a court from allowing attachment or execution until "a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e)," Iran argues that the Plaintiffs' failure to properly give notice of the default judgment precludes attachment or execution in aid of the judgment and renders discovery of its assets improper and unnecessary. The Court disagrees with this interpretation of § 1608(e)'s notice requirement.

In this case, the parties agree that the first two methods of service provided for in § 1608(a)-delivery of the summons in accordance with a bilateral arrangement for service and delivery in accordance with an international convention-were not available to the Plaintiffs. After the Plaintiffs were unsuccessful in their attempt to serve Iran by mail (the third option under § 1608(a)), the Plaintiffs served Iran through diplomatic channels (the final option under § 1608(a)). The district court in the underlying case ruled that the Plaintiffs had properly served Iran with notice of their lawsuit and ordered them to serve Iran with notice of the default judgment by the same means. *Campuzano,* 281 F.Supp.2d at 272, (Pls.' Mem., Ex. C.). Because the Plaintiffs did not attempt to give notice of the default judgment by mail before using diplomatic channels, Iran believes that they violated the order of preference established by § 1608(a) and, by extension, violated § 1610(e).

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

To accept this argument, the Court would have to interpret § 1608(e)'s requirement that notice of default be given "in the manner prescribed for service in this section" to mean that, regardless of the means by which the summons was served, a plaintiff must follow § 1608(a)'s order of preference when giving notice of a default judgment. In a case like this one, that would mean attempting to give notice by mail even though service by mail had already failed. Evidently the Washington, D.C., district court, which ordered the Plaintiffs to skip this likely futile step, did not interpret § 1608(e) this way, and neither does this Court. The most natural interpretation is that "in the manner prescribed for service in this section" means "using the method that was prescribed by § 1608(a) for service of the summons." In other words, whatever method of service was appropriate in initiating the suit is appropriate in giving notice of the default judgment. Here, the method prescribed by § 1608(a) was service through diplomatic channels, since there was no applicable treaty or international agreement and service by mail failed. Therefore, that same method-service through diplomatic channels-was appropriate in giving notice of the default judgment.

**\*12** This reading also has the advantage of being sensible: why would the statute require a plaintiff to go through the empty formality of trying "preferable" methods of service that have already proven futile? As this Court interprets the statute, it does not. This is consistent with other courts' holdings that "the purpose of the FSTA is to ensure actual notice to foreign states of the fact and substance of pending litigation," not to mire plaintiffs in a labyrinth of procedural requirements. *Antoine v. Alias Turner, Inc.,* 66 F.3d 105, 109 (6th Cir.1995) (internal quotes omitted). Because service by mail failed and service of the summons through diplomatic channels was proper, notice of the default judgment through diplomatic channels was sufficient to satisfy § 1608(e) and § 1610(c).

Iran also argues that it need not provide the requested discovery because it has not been properly served with the Plaintiffs' requests. Iran's argument is predicated on its assumption that the Plaintiffs' discovery requests must be served in accordance with Illinois state law governing execution or the stringent service requirements of the FSIA. With respect to the FSTA, however, the Seventh Circuit has noted that "[n]othing in the FSIA explicitly requires that notice of a motion ... be given in accordance with the procedures for serving process," and has looked to the federal rules in determining the appropriate standard for service in that context. *Autotech Technologies LP v. Integral Research & Development Corp.,* 499 F.3d 737, 747-49 (7th Cir.2007). The FSIA is similarly silent with respect to discovery requests. Therefore, the Court follows the Seventh Circuit's lead and looks to the federal rules. This approach is further supported by the text of Rule 69( a)( 2), which governs the Plaintiffs' discovery requests in this case. Under Rule 69( a)( 2), "post-judgment discovery proceeds according to the federal rules governing pre-trial discovery." *Consolidated Freightways,* 1995 WL 683587, at \*1. Under the federal rules governing pre-trial discovery, service of a deposition notice on a party's attorney is sufficient. This rule has been applied in the context of Rule 69(a) discovery requests. *Cerami v. Robinson,* 85 F.R.D. 371, 372 (S.D.N.Y.1980). Therefore, the Court finds that the Plaintiffs' discovery requests were properly served on Iran's attorney, whose appearance for Iran in this case is a matter of record.

2. *The Algiers Accords*

Iran urges the Court to deny the Plaintiffs' requests for general asset discovery because to allow such discovery would violate the United States' obligations under the Algiers Accords, the bilateral agreement that resolved the 1979 hostage crisis. Pursuant to the Accords, the United States and Iran formed the Iran-United States Claims Tribunal to facilitate neutral third-party arbitration of claims that were

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

then pending in the United States Courts against Iran and its state enterprises. *See Dames & Moore v. Regan,* 453 U.S. 654, 664-65, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981). While Article VII of the Claims Settlement Declaration provides that claims brought before the Claims Tribunal are "excluded from the jurisdiction of the courts of Iran, or of the United States," the Supreme Court has held that the Accords did not alter the jurisdiction of the federal courts but rather "effected a change in the substantive law governing the lawsuit." *Id.* at 685. Therefore, the pendency of a claim before the Claims Tribunal provides a substantive defense to a suit based on the same claim in a federal court. *Id.*

**\*13** Within this framework, Iran makes two arguments. First, Iran argues that the Plaintiffs' request for discovery regarding Iran's assets "that are or were the subject of any proceedings brought in the Iran-United States Claims Tribunal" must be denied because the Claims Tribunal's jurisdiction over such assets is exclusive. However, Iran's own brief acknowledges the Supreme Court's holding in *Dames & Moore,* quoted above, that the Algiers Accords did not actually strip the federal courts of jurisdiction over claims to assets that are the subject of claims before the Tribunal, but merely provided a substantive defense. It may be the case that the assets the Plaintiffs seek to discover with this request will ultimately be immune from attachment and execution because they are the subject of claims before the Claims Tribunal. This immunity does not imply that the Plaintiffs may not inquire as to what these assets are in their attempt, authorized by Rule 69( a)( 2), to get a picture of Iran's assets in the United States in order to learn how they might enforce their judgment. Therefore, the Plaintiffs are entitled to discovery regarding Iran's assets that are or have been the subject of claims before the Claims Tribunal.

Iran also raises a second, broader argument based on the Algiers Accords. Pointing to the language of the Accords, Executive Order No. 12,281 (which unblocked Iranian assets in the United States), and several decisions of the Claims Tribunal, Iran claims that all liens on Iranian assets in the United States are prohibited, Iran then argues that discovery requests issued pursuant to Rule 69(a) create a lien on the properties that they seek to discover. Combining these two propositions, Iran argues that all of the Plaintiffs' discovery requests must be denied because they would create forbidden liens upon Iranian assets within the United States. These arguments are unpersuasive.

Iran premises its argument that the Algiers Accords forbid all liens on any Iranian property in the United States on Executive Order No. 12,281, which implemented the Accords by unblocking Iranian property in the United States and prohibiting the exercise of "any right, power, or privilege ... with respect to the properties ... referred to in Section 1-101 of this Order," Exec. Order No. 12,281, 46 Fed.Reg. 7,923. Section 1-101 in turn refers to "[a]ll persons ... in possession or control of properties ... owned by Iran." *Id.* Read together, these sections make clear that any prohibition contained in the order applies to those properties of Iran that were in the "possession or control" of persons subject to the jurisdiction of the United States on January 19, 1981, the date of the order. Thus there is no basis in the order for a blanket prohibition of discovery regarding all assets. Tran also relies on a Claims Tribunal decision stating that the United States' promise in the Accords to "remove and bar claims against Iran in the U.S. courts and instead to bring them before the Tribunal" would "best be effected by ... preventing the exercise of liens, as was done by ... Executive Order No. 12281 .... " Iran-U.S. Claims Tribunal Award No. 529-A15-FT at ¶ 49 (May 6, 1992). The Tribunal's references to the Algiers Accords and Executive Order No. 12,281 indicate that its statement about liens concerned properties that were the subject of claims that Iran and the United States referred to the Tribunal, not the entire universe of Iranian assets regardless of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

when they were acquired. Therefore, the Court does not agree that the Algiers Accords forbid all liens against all Iranian assets in the United States, as Iran seems to believe.

**\*14** The question of whether the Algiers Accords forbid liens on Iranian properties and the scope of that prohibition are not essential to the resolution of the instant dispute, however, because there is a much simpler reason for rejecting Iran' argument: Rule 69( a)( 2) discovery requests do not create a lien on the property they seek to discover. Iran argues that the Plaintiffs' discovery requests are a "citation to discover assets" under Illinois law, which provides that "the judgment or balance due on judgment becomes a lien when a citation is served ...." 735 ILCS 5/2-1402(m). In making this argument, Iran relies on Rule 69(a) (1), which provides that "[t]he procedure on execution ... and in proceedings on and in aid of execution shall be in accordance with [the law of the state where the district court sits]." However, as discussed in Section I.B. 1.a above, it is the second prong of Rule 69(a) (now codified separately as Rule 69( a)( 2)) that governs matters of discovery. This Court agrees with other courts that have interpreted the second prong of Rule 69(a) that "the post-judgment discovery proceeds *according to the federal rules* governing pre-trial discovery." *Consolidated Freightways,* 1995 WL 683587, at \*1 (emphasis added).

Anticipating this conclusion, Iran argues that even if the Plaintiffs' discovery requests are governed by the federal rules, they nonetheless create a lien upon the assets they seek to discover. Iran does not identify any case in which a court has held that a discovery request pursuant to Rule 69(a) automatically creates a lien. Rather, Iran relies on similarities in the "purpose and effect" of Rule 69(a) and 735 ILCS 5/2-1402(m) as well as the similar language of the statutes, arguing that "except in name, one cannot be distinguished from the other." (Iran's Mem. at 9.) In fact, the Court finds another distinction: while 735 ILCS 5/2-1402(m) expressly provides that "the judgment or balance due on judgment becomes a lien when a citation is served," Rule 69( a)( 2) contains no such language referring to a lien. Iran provides no reason why the Court should ignore this crucial difference in the plain language of the statutes, which is the starting point of all interpretation. Furthermore, because the Court has already found that this issue is governed by the federal rules rather than state law, there is no reason to accord any special significance to an analogous Illinois statute. It cannot be the case that the meaning of the federal rules changes from district to district in light of the procedural law of the state where each court sits. This issue is governed by Federal Rule 69( a)( 2), and the Court declines Iran's invitation to read Illinois law into the federal rules. Therefore, the Plaintiffs' discovery requests do not create a lien on the assets they seek to discover. Because there is no lien, Iran's argument that the Algiers Accords bar any liens on any Iranian property is irrelevant, and the Plaintiffs are entitled to the discovery they seek.

3. *The FSIA and TRIA*

**\*15** Iran also argues that the Plaintiffs are not entitled to general asset discovery because "there is no basis under the FSIA or TRIA for discovery of 'all' assets." (Iran's Mem. at 13.) The crux of Iran's argument is that, because the FSIA and TRIA limit the assets against which the Plaintiffs can enforce their judgment, the Plaintiffs are not entitled to discover all of Iran's assets. This argument appears to conflate the substantive law of the FSIA and TRIA, which defines the subset of Iran's assets that is susceptible to attachment or execution, with the federal rules of procedure, which define the scope of discovery to which the Plaintiffs are entitled. The Court does not agree with the Plaintiffs that the FSIA and TRIA are irrelevant; as discussed above, the substantive law of immunity defines what information may be "relevant," and therefore discov-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

erable, under Rule 26(b). At the same time, the Plaintiffs are entitled to discover all information that is reasonably calculated to lead to admissible evidence. By inquiring about Iran's assets generally, the Plaintiffs, and ultimately the Court, will be able to determine which of those assets fall within the domain of assets that are amenable to attachment and execution under the FSIA and TRIA. The Court will not limit the Plaintiffs' discovery requests to those categories of assets that are reachable under the FSTA and TRIA, allowing Iran to be the judge of which assets are immune before providing any discovery. That determination goes to the merits of the case and will be made by the Court alone.

4. *Challenges to the Underlying Judgment*

Iran urges the Court to deny general discovery on the basis that "the underlying judgment is subject to serious question," and proceeds to identify several aspects of the *Campuzano* court's decision on the merits with which it disagrees. (Iran's Mem. at 20, 21.) Specifically, Iran disagrees with that court's holding that § 1605(a)(7) of the FSIA creates a private cause of action against a foreign state and its holding that the Plaintiffs' common law tort claims were valid bases for recovery. (*Id.* at 20, 21.) Because Iran failed to appear in the underlying case, the only basis upon which it may now challenge the judgment is a lack of personal or subject-matter jurisdiction in the rendering court. *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1034-35 (7th Cir.2000). Iran does not dispute that it was properly served with notice of the initial lawsuit, creating personal jurisdiction. Furthermore, Iran's attacks on the underlying judgment amount to an allegation that the Plaintiffs failed to state a claim upon which relief could be granted, which is an affirmative defense that is waiveable and therefore non-jurisdictional. *See* Fed.R.Civ.P. 12(b)(6). Because they do not address personal or subject matter jurisdiction, Iran's challenges to the underlying judgment are non-cognizable collateral attacks on a final judgment.

*16 It appears that Iran's purpose in highlighting the alleged weaknesses of the court's ruling in the underlying case is not so much to negate that ruling as to persuade this Court that it should not allow general discovery against Iran to enforce a "questionable" judgment. As Iran states in its brief; "We are not certain that there will ever be a case in which to set this precedent, but we submit that *this case* is not it." (Iran's Mem. at 20 (emphasis in original).) The Court will not entertain this argument. The Seventh Circuit has repeatedly recognized that vital societal interests are served by finality in litigation. *See, e.g ., Robinson v. City of Harvey,* 489 F.3d 864, 869 (7th Cir.2007) (referring to "the long-recognized public interest in the finality of litigation"); *Hurley v. Motor Coach Indus., Inc.,* 222 F.3d 377, 379-80 (7th Cir.2000) (noting the "strong interests in finality, efficiency, and economy that attach to a completed trial"); *Bell v. Eastman Kodak Co.,* 214 F.3d 798, 800-01 (7th Cir.2000) (stating that "collateral attack, especially in civil cases, is disfavored because of the social interest in expedition and finality in litigation"). Finality would cease to be a meaningful concept if courts were to give greater effect to judgments they agreed with on the merits and less effect to those they disagreed with. Therefore, the alleged weaknesses of the judgment in the underlying case, being non-jurisdictional, are irrelevant to the enforcement of the judgment in this Court.

5. *Constitutional Challenges to the FSIA and TRIA*

Iran also argues that the FSIA and TRIA are unconstitutional. As discussed above, arguments regarding the merits of the underlying judgment that are not relevant to either personal or subject matter jurisdiction cannot be the basis for a collateral attack. However, the FSIA and TRIA are relevant to this enforcement proceeding because they define which

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

of Iran's properties in the United States may be amenable to attachment and execution. If the statutes were unconstitutional, the Plaintiffs would have no basis for executing against Iran's assets and no need for discovery. Therefore, the Court briefly addresses Iran's constitutional arguments.

The kernel of Iran's disagreement with both the FSIA and the TRIA is that under each statute the immunity of a foreign state's property depends on whether it has been designated a "sponsor of terrorism" by the State Department. (Iran's Mem. at 22.) Iran's first argument is that, by making immunity contingent on a determination by the executive branch, Congress improperly delegated its legislative authority and violated the doctrine of separation of powers. The Seventh Circuit has expressed doubt that Congress can delegate the power to define the jurisdiction of the federal courts to the executive branch, *See United States v. Mitchell,* 18 F.3d 1355, 1360 n. 7 (7th Cir.1994). In this case, however, the Court finds that there is no delegation issue because both § 1605(a)(7) of the FSIA and the TRIA were enacted *after* Iran was designated as a state sponsor of terrorism by the State Department.[FN4] Because Iran was already designated as a state sponsor of terrorism, its immunity was stripped by an act of Congress when Congress incorporated the existing list of terrorist states compiled by the State Department into the FSIA and the TRIA. *See Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748, 764 (2d Cir.1998) (holding that Libya's loss of immunity under § 1605(a) (7) was the result of a legislative act of Congress because Libya was on the list of state sponsors of terrorism when § 1605(a)(7) was enacted). Iran's loss of immunity was not the result of an executive exercise of delegated authority, and therefore Iran's separation of powers argument fails.

> FN4. Section 1605(a)(7) was enacted in 1996; the TRIA was enacted in 2002. Iran was designated a "State Sponsor of Terrorism" on January 19, 1984.

**\*17** Iran next argues that its rights under the Due Process Clause have been violated because the FSIA and TRIA make the immunity of its property in the United States contingent on a "politically motivated" determination by the State Department that Iran is a state sponsor of terrorism. While the Seventh Circuit has not taken a position on whether a foreign sovereign has rights under the Due Process Clause, courts in the District of Columbia Circuit have addressed the issue and held that a foreign state is not a "person" for the purposes of the Due Process Clause. *See Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 96 (D.C.Cir.2002) (holding that "foreign states are not 'persons' protected by the Fifth Amendment"); *Wyatt v. Syrian Arab Republic,* 362 F.Supp.2d 103, 115 (D.D.C.2005) (citing *Price* and holding that Syria could not raise a due process challenge to the exercise of jurisdiction by a federal court). The logic of *Price* is persuasive. First, the Supreme Court has expressed an "understanding that in common usage the term 'person' does not include the sovereign." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (internal quotes omitted). The Supreme Court has also held that States of the Union are not "persons" for Due Process purposes. *See South Carolina v. Katzenbach,* 383 U.S. 301, 323-24, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). In light of these holdings, this Court agrees with the D.C. Circuit that "it would be highly incongruous to afford greater Fifth Amendment rights to foreign nations, who are entirely alien to our constitutional system, than are afforded to the states." *Price,* 294 F.3d at 96. Therefore, Iran's due process argument fails.

Iran next argues that the FSIA and TRIA, to the extent that they prescribe different treatment for Iran as a state sponsor of terrorism, violate Iran's right to equal protection of the laws. Iran does not take issue with Congress's decision to treat state sponsors of terrorism differently than other sovereigns. Rather, Iran argues that it has been denied equal

protection because it has been designated a state sponsor of terrorism while other unnamed states that also provide material support for terrorist activity have not. (Iran's Mem. at 22.) Because it challenges the unequal application of the classification to itself and not the classification *per se,* Iran's claim is best categorized under Seventh Circuit precedent as a "class of one" equal protection claim. A "class of one" claim "may be brought where (1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the different treatment is a totally illegitimate animus toward the plaintiff ....' " *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 638 (7th Cir.2007) (internal quotes and citations omitted).

As a threshold matter, the logic of *Price* suggests that Iran, as a foreign sovereign, is not a "person" for equal protection purposes any more than it is a "person" with due process rights. This is particularly clear when "foreign sovereign" is substituted for "person" in the text of the Fourteenth Amendment [FN5], rendering it incomprehensible: "No State shall ... deny any [foreign state] within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, § 1. The Court need not decide that issue, however, because Iran's claim is doomed for a more mundane reason: Iran cannot make the necessary showing for its "class of one" equal protection claim. First, despite its vague allusions to "other states" that fund extra-judicial killings in violation of international law, Iran has not identified a similarly situated state that has been left off of the list of state sponsors of terrorism. Moving to the second prong of the standard articulated in *St. John's,* Iran does not argue that its differential treatment is lacks a rational basis, only that it is "politically motivated." This falls short of the required showing that its treatment results from "totally illegitimate animus." Because Iran's allegations fail to meet both prongs of the Seventh Circuit's standard for "class of one" equal protection claims, Iran's equal protection challenge to the FSIA and TRIA fails.

> FN5. While the Fourteenth Amendment does not apply to the federal government, the Fifth Amendment has been interpreted to contain a guarantee of equal protection under federal law, and the Supreme Court's approach to Fifth Amendment equal protection claims has been "precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

**\*18** Iran's next argument is that § 1605(a)(7) of the FSIA violates customary international law because it "permit[s] jurisdiction over terrorist acts that have no nexus to the United States." [FN6] This argument ignores an important nexus between acts that give rise to jurisdiction under § 1605(a)(7) and the United States: sovereign immunity is lifted under this section only when either the claimant or the victim was a United States national at the time of the act that gives rise to the claim. *See* 28 U.S.C. § 1605(a) (7)(B)(ii). It is entirely conventional for the United States or any other nation to assert legislative jurisdiction over conduct that has an effect on its own nationals. *See* Restatement (Third) of Foreign Relations Law of the United States, § 402(2). Furthermore, while Congress is presumed to intend to comply with international legal norms, *F. Hoffmann-La Roche Ltd. v. Empagran S.A.,* 542 U.S. 155, 164, 124 S.Ct. 2359, 159 L.Ed.2d 226 (2004), "customary international law is not applicable in domestic courts when there is a controlling legislative act" to the contrary. *Bradvica v. I.N.S.,* 128 F.3d 1009, 1014 n. 5 (7th Cir.1997). Therefore, Iran's arguments based on principles of customary international law are not persuasive.

> FN6. Iran's brief includes the TRIA in this argument; because the TRIA addresses en-

forcement of judgments rather than jurisdiction, the Court assumes Iran meant this argument to apply to the FSIA only.

6. *Comity*

Iran's final argument is that principles of comity, along with the potential impact on U.S. foreign relations of an order granting the Plaintiffs' discovery requests, indicate that the Court should not allow general asset discovery in this case. The United States, in its Third Statement of Interest, makes a similar point, urging the Court to "exercise circumspection in light of the potential foreign policy implications of requiring broad discovery of a foreign sovereign." (United States' Statement of Interest at 2.) While the Court respects Iran's sovereignty and that of all foreign states, the Court finds that comity does not negate the Plaintiffs' right to general asset discovery in this case.

The Supreme Court has stated that foreign sovereign immunity is a matter of "grace and comity on the part of the United States." *Verlinden,* 461 U.S. at 486, To that end, the FSIA provides that foreign sovereigns are generally immune from suit, 28 U.S.C. § 1604, and that the property of foreign sovereigns in the United States is generally immune from attachment or execution, 28 U.S.C. § 1609. In enacting the FSIA, however, Congress codified exceptions to these general rules, establishing that these immunities were not limitless. *See Verlinden,* 461 U.S. at 488 ("For the most part, the Act codifies, as a matter of federal law, the restrictive theory of sovereign immunity."). In enacting § 1605(a)(7) and the TRIA, Congress further limited foreign sovereigns' immunity from suit and enforcement of judgments. The exceptions are as much a part of the legal landscape that the Court and the parties must navigate as the general rule, and if they are to have any meaning, the Plaintiffs and the Court must be able to determine when they apply. Therefore, general asset discovery is necessary in this case in order to determine whether particular property falls within the exceptions to the general rule of immunity.

**\*19** Iran argues that the FSIA demonstrates Congress's intent to prevent foreign sovereigns from bearing the "burdens of litigation," including discovery. (Iran's Mem, at 15.) But Iran's citation to the Seventh Circuit's opinion in *Enahoro v. Abubakar* is inapposite, because *Enahoro* dealt with a district court's denial of the appellant's claim that he was immune from the jurisdiction of the district court under the FSIA. 408 F.3d 877, 880 (7th Cir.2005). The Seventh Circuit held that a denial of sovereign immunity may be immediately appealed in order to prevent the party claiming immunity from facing the burden of trial only to discover on appeal that the trial never should have happened. *Id.* In this case, a court has already determined that Iran was not immune from suit, a conclusion that Iran does not contest. *Campuzano,* 281 F.Supp.2d at 269-72. Congress obviously did not intend Iran to be free from the burdens of litigation in cases such as this, where an express exception to immunity applied. Now that the Plaintiffs have a judgment, the question is whether any of Iran's property in the United States falls within an exception to the general rule of immunity from attachment and execution. Iran's immunity from the burdens of litigation is no longer at issue.

The Court respects the interests of the United States and its right to make its position known in cases with important foreign policy ramifications. *See Republic of Austria v. Altmann,* 541 U.S. 677, 714, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (recognizing that the United States may enter a statement recommending dismissal in a variety of factual scenarios). The United States' Statement of Interest advises the Court that "[c]ourts confronted with the issue of post-judgment discovery in cases arising under the FSTA generally have exercised their discretion to carefully limit such discovery so as to avoid intruding on the sovereignty of a foreign state." (United

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

States' Statement of Interest at 3.) However, the cases it cites are not particularly relevant to the factual and procedural situation the Court faces here. In *Connecticut Bank of Commerce v. Republic of Congo,* the Fifth Circuit stated in a footnote that the district court in an enforcement proceeding "should order discovery circumspectly and only to verify allegations of specific facts crucial to [the] immunity determination." 309 F.3d 240, 260 n. 5 (5th Cir.2002) (internal quotes omitted; brackets in original), In *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.,* the Ninth Circuit quoted this language with approval 475 F.3d 1080, 1095-96 (9th Cir.2007). However, in each case the plaintiffs had specifically identified property that they sought to attach and the only issue was the amenability of that property to enforcement proceedings. *See Connecticut Bank,* 309 F.3d at 247-48 (amenability of garnishees' debts owed to the Congo to garnishment); *Af-Cap,* 475 F.3d at 1085 (amenability of specific intangible obligations owed to the Congo to attachment). If the immunity of the artifacts that are the subject of Iran's pending motion to dismiss were the only issue in this case, the Court would follow those courts in limiting the scope of discovery. However, as discussed above, the Plaintiffs have exercised their right as judgment creditors to discovery under Rule **69**( **a**)( **2**), expanding the scope of this proceeding.

**\*20** This Court has already held that when Iran appeared in this Court to assert its defense of sovereign immunity with respect to the three collections of artifacts in Citation Respondents' possession, it made a general appearance. *Rubin III,* 2007 WL 1169701, at \*11-13. In doing so, Iran availed itself of this forum and took the risk that the Plaintiffs might expand their inquiries beyond the three sets of artifacts then at issue in order to satisfy their hefty outstanding judgment. As discussed above, nothing prohibits them from doing so. While the Court respects Iran's sovereignty and recognizes that it has discretion to limit the scope of discovery, it cannot limit discovery to the point of nullifying Congressional intent. Congress has decided that judgment creditors are entitled to broad discovery of judgment debtors' assets. Congress has also decided that the "grace and comity" generally extended to foreign sovereigns should be limited in specific ways, particularly when those sovereigns promote terrorist acts that injure U.S. nationals. *See Reins. Co. of America, Inc. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275, 1283-84 (7th Cir.1990) (Easterbrook, J., concurring) (general principles of international law, such as those found in the Restatement of Foreign Relations, are subsumed by the specific provisions of the FSIA). If the limitations Congress enacted in the FSIA and the TRIA are to have any practical effect, the Plaintiffs must be allowed to use the tools of discovery to ascertain whether Iran has attachable properties in the United States. *See id.* at 1284 (Easterbrook, J., concurring) (Romania's interest in protecting state secrets could not preclude Rule 69 discovery when to do so would frustrate enforcement under the FSIA).

Finally, contrary to Iran's assertion, there is precedent for broad discovery of the assets of foreign governments and their instrumentalities in enforcement proceedings. *See, e.g., Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1471 (9th Cir.1992) (upholding district court's order granting discovery of *worldwide* assets of Beijing Ever Bright Industrial Co., described as "an arm of the [Chinese] government."); *First City, Texas-Houston, N.A. v. Rafidain Bank,* 281 F.3d 48, 49-50 (2d Cir.2002) (ordering district court to permit judgment creditor "to conduct full discovery" pursuant to Rule 69 against Rafidain, an "alter ego" of the Central Bank of Iraq). As in those cases, broad discovery is required in this case in order to give the Plaintiffs and the Court a meaningful opportunity to ascertain whether Iran has any property within the United States against which the Plaintiffs may enforce their judgment.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 192321 (N.D.Ill.)
**(Cite as: 2008 WL 192321 (N.D.Ill.))**

### III. *Conclusion*

For the reasons set forth above, Iran's motion for clarification and for a protective order is denied. Iran will comply with the Plaintiffs' requests for general asset discovery. The Court notes that it has been nearly five years since this case began and eighteen months since Iran entered the proceeding, yet the litigation is still at the discovery stage. The Court believes that the parties have had ample opportunity to litigate the scope of discovery. Therefore, no further motions objecting to discovery may be filed without leave of the Court.

**\*21 ENTER ORDER.**

N.D.Ill.,2008.
Rubin v. Islamic Republic of Iran
Not Reported in F.Supp.2d, 2008 WL 192321 (N.D.Ill.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.